1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2    Robert M. Schwartz (Bar No. 117166)
     robertschwartz@quinnemanuel.com
3    Bomie Lee (Bar No. 356618)
     bomielee@quinnemanuel.com
4  865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017
5  Telephone:   (213) 443-3000
   Facsimile:    (213) 443-3100
6

7    William Burck (*pro hac vice*)
     williamburck@quinnemanuel.com
8    Kurt Wolfe (*pro hac pending*)
     kurtwolfe@quinnemanuel.com
9    Kristin Casey (*pro hac vice*)
     kristincasey@quinnemanuel.com
10  1300 I Street NW
   Washington, DC 20005
11  Telephone: (202) 538-8000
   Facsimile:  (202) 538-8100
12

13  Attorneys for Defendants

14              **UNITED STATES DISTRICT COURT**

15      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

16

17  ANDREW LEFT and CITRON          Case No. 2:25-cv-10432−SPG (JCx)
    CAPITAL, LLC,
18                                   **DEFENDANTS' NOTICE OF**
                  Plaintiffs,        **MOTION AND MOTION TO:**
19                                   **(1) STRIKE THE COMPLAINT**
          vs.                        **PURSUANT TO CALIFORNIA'S**
20                                   **ANTI-SLAPP STATUTE (C.C.P.**
    ANSON FUNDS MANAGEMENT LP,       **§ 425.16), OR IN THE**
21  ANSON ADVISORS, INC., MOEZ       **ALTERNATIVE, (2) DISMISS THE**
    KASSAM, and SUNNY PURI,          **COMPLAINT PURSUANT TO**
22                                   **RULE 12(b)(6);  MEMORANDUM**
                  Defendants.        **OF LAW IN SUPPORT THEREOF**
23
                                     **REDACTED VERSION OF**
24                                   **DOCUMENT PROPOSED TO BE**
                                     **FILED UNDER SEAL**
25
                                     Judge: Hon. Sherilyn Peace Garnett
26
                                     Hearing Date:    February 25, 2026
27                                   Hearing Time:    1:30 pm
                                     Location:        Courtroom 5C
28

# NOTICE OF MOTION

**TO THE CLERK OF THE COURT AND PLAINTIFFS AND THEIR COUNSEL:**

PLEASE TAKE NOTICE that, on February 25, 2026, at 1:30 pm, or as soon thereafter as this matter may be heard by the Honorable Sherilyn Peace Garnett, in Courtroom 5C of the United States District Court for the Central District of California, Western Division, 350 W. 1st Street, Los Angeles, CA 90012, or such location as the Court may set, Defendants Anson Funds Management LP, Anson Advisors, Inc. (together "Anson"), Moez Kassam, and Sunny Puri (collectively "Defendants"), hereby move the Court for an order: (1) striking the Complaint pursuant to § 425.16 of the California Code of Civil Procedure (California's anti-SLAPP statute), or in the alternative, (2) dismissing Plaintiffs' Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants also respectfully request an award of reasonable attorneys' fees and costs pursuant to § 425.16(c)(1) of the Cal. Code Civ. P., as well as any other relief the court deems appropriate.

Defendants move to strike Plaintiffs' Complaint pursuant to California's anti-SLAPP statute, Cal. Code Civ. P. § 425.16, because Plaintiffs' defamation and business disparagement claims arise from protected activity, and Plaintiffs cannot carry their burden to demonstrate the probability of succeeding on the merits of either claim.

Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Fed. R. of Civ. P., as the allegedly false statements are privileged under California's absolute litigation privilege, Plaintiffs' defamation claim is time-barred, and Plaintiffs otherwise fail to state a claim upon which relief can be granted.

Defendants reserve their right to challenge other aspects of the Complaint, or any amended version of it, in later proceedings in this case.

This Motion to Dismiss and Special Motion to Strike ("Motion") is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities in support thereof, Defendants' separately filed Request for Judicial Notice, the separately filed Declaration of Robert M. Schwartz in Support of the Motion ("Schwartz Decl."), documents in this Court's docket for this action, documents of which this Court may take judicial notice or are incorporated by reference, and other evidence and arguments that may be presented to this Court.

**Compliance with L.R. 7-3 (Pre-Filing Conference of Counsel):** Counsel for the Defendants met and conferred with Plaintiffs' counsel of record via Zoom videoconference on November 4, 2025, pursuant to Local Rule 7-3. Attorneys Eric Rosen, Michael Homer, and Yusef Al-Jarani attended for Plaintiffs. Defendants were represented by Robert M. Schwartz and Kristin Casey. The parties thoroughly discussed the substance and potential resolution of the Motion, including the issues and arguments set forth in a letter that Defendants' attorney William Burck had written to Mr. Rosen on October 20, 2025 that outlined grounds for the Motion. Plaintiffs declined to voluntarily dismiss this action. *See* Schwartz Decl. ¶ 4.

DATED:  December 30, 2025          Respectfully submitted,

QUINN EMANUEL URQUHART
& SULLIVAN, LLP


By _____/s/ Robert M. Schwartz_____
          Robert M. Schwartz
          Attorneys for Defendants

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

FACTS ALLEGED IN THE COMPLAINT .......................................................... 3

    A.    The Government's Investigations And Charges Against Left.............. 3

    B.    ██████████████████████████. ........................................ 5

    C.    This Litigation: Plaintiffs' Attempt To Rewrite The Narrative............ 6

LEGAL STANDARDS ......................................................................................... 7

ARGUMENT ........................................................................................................ 8

I.    THE COURT SHOULD STRIKE PLAINTIFFS' COMPLAINT
    UNDER CALIFORNIA'S ANTI-SLAPP STATUTE. ................................ 8

    A.    Defendants' Conduct Arises From Protected Activity. .................... 8

    B.    Plaintiffs Cannot Establish That They Are Likely To Prevail.............. 9

        1.    Defendants' Statements Are Absolutely Privileged. ................... 9

        2.    Plaintiffs' Claims Are Time-Barred. ......................................... 11

        3.    The Complaint Fails To State A Claim. ..................................... 14

            (a)    Plaintiffs Fail To Allege The Statements Are
                 Provably False. ..................................................... 14

            (b)    Plaintiffs Fail To Allege That Defendants'
                 Statements Were Defamatory Or Defamatory *Per
                 Se*. ..................................................................... 15

            (c)    Plaintiffs Fail to Allege That The Statements Refer
                 To And Clearly Derogate Plaintiffs' Business................. 17

            (d)    Plaintiffs Fail To Allege That The Statements Were
                 "Unprivileged." ..................................................... 17

            (e)    Plaintiffs Fail To Allege Actual Malice. .......................... 17

            (f)    Plaintiffs Fail To Allege Monetary Loss And
                 Special Damages. ................................................. 18

II.    ALTERNATIVELY, THE COURT SHOULD DISMISS THE
    COMPLAINT UNDER RULE 12(B)(6) ................................................... 20

    A.    Plaintiffs' Claims Are Barred By The Absolute Litigation
        Privilege. ...................................................................... 20

    B.    Plaintiffs' Defamation Claim Is Time-Barred. ...................................... 21

C.    Plaintiffs Fail To State A Claim For Defamation Or Trade Libel........21

CONCLUSION.............................................................................................21

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

**Cases**

4
5
*Alvarez v. L.A. Cnty.*,
   2025 WL 1167364 (C.D. Cal. Apr. 22, 2025)...................................................... 12

6
7
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................7

8
9
*Barker v. Fox & Assocs.*,
   240 Cal.App.4th 333 (2015) .............................................................................. 16

10
*Bartholomew v. YouTube, LLC.*,
   17 Cal.App.5th 1217 (2017) .............................................................................. 18

11
12
*Bergstrom v. Zions Bancorporation, N.A.*,
   78 Cal.App.5th 387 (2022) ................................................................................ 12

13
14
*Bullard v. City of N.Y.*,
   2004 WL 875730 (S.D.N.Y. Apr. 23, 2004) .................................................9, 11

15
16
*Burrill v. Nair*,
   217 Cal.App.4th 357 (2013) .............................................................................. 16

17
18
*City of Costa Mesa v. D'Alessio Invs., LLC*,
   214 Cal.App.4th 358 (2013) .................................................................14, 15, 17

19
20
*ComputerXpress, Inc. v. Jackson*,
   93 Cal.App.4th 993 (2001) ...................................................................8, 17, 19

21
*Cummins v. Lollar*,
   2013 WL 12123771 (C.D. Cal. Apr. 30, 2013) ................................................ 16

22
23
*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
   47 Cal.App.4th 777 (1996) ..................................................................................9

24
25
*Engineer.ai Corporatio v. Kaufman*,
   2022 WL 4596575 (C.D. Cal. Sept. 9, 2022)......................................................9

26
27
*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal.4th 797 (2005) ....................................................................................... 13

28

Case No. 2:25-cv-10432−SPG (JCx)

DEFENDANTS' MOTION TO STRIKE PURSUANT TO CALIFORNIA'S
ANTI-SLAPP STATUTE & RULE 12(B)(6) MOTION TO DISMISS

*People ex rel. Gallegos v. Pac. Lumber Co.*,
    158 Cal.App.4th 950 (2008), *as modified* (Feb. 1, 2008) ................................. 10

*Garcia v. City of Merced*,
    637 F. Supp. 2d 731 (E.D. Cal. 2008) ............................................................. 16

*Gilbert v. Sykes*,
    147 Cal.App.4th 13 (2007) ............................................................................... 15

*Gopher Media LLC v. Melone*,
    154 F.4th 696 (9th Cir. 2025) ........................................................................... 7

*Gopher Media LLC v. Melone*,
    2023 WL 8790266 (S.D. Cal. Dec. 19, 2023) ................................................. 20

*Greka Integrated, Inc. v. Lowrey*,
    133 Cal.App.4th 1572 (2005) ........................................................................... 8

*Guess, Inc. v. Superior Ct.*,
    176 Cal.App.3d 473 (1986) ............................................................................. 11

*Hagberg v. Cal. Fed. Bank*,
    32 Cal.4th 350 (2004) ..................................................................................... 10

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) ........................................................................... 9

*Kashian v. Harriman*,
    98 Cal.App.4th 892 (2002) ........................................................................ 10, 11

*Laker v. Bd. of Trustees. of Cal. St. U.*,
    32 Cal.App.5th 745 (2019) ........................................................................ 10, 20

*Letter Carriers v. Austin*,
    418 U.S. 264 (1974) ....................................................................................... 14

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) ........................................................................... 5

*McGarry v. U. of San Diego*,
    154 Cal.App.4th 97 (2007) ............................................................................. 14

*Morales v. Coop. of Am. Physicians, Inc., Mut. Prot Tr.*,
    180 F.3d 1060 (9th Cir. 1999) ....................................................................... 21

Case No. 2:25-cv-10432−SPG (JCx)

DEFENDANTS' MOTION TO STRIKE PURSUANT TO CALIFORNIA'S
ANTI-SLAPP STATUTE & RULE 12(B)(6) MOTION TO DISMISS

*Mosafer Inc. v. Broidy*,
  2022 WL 793029 (C.D. Cal. Feb. 4, 2022), *aff'd*, 2023 WL 8295921
  (9th Cir. Dec. 1, 2023) ....................................................... 17

*Muddy Waters, LLC v. Superior Ct.*,
  62 Cal.App.5th 905 (2021) ................................................. 19

*Navellier v. Sletten*,
  29 Cal.4th 82 (2002) ........................................................... 8

*Next Vietnam Projects Found., Inc. v. Koster Films, LLC*,
  751 F. Supp. 3d 1005 (C.D. Cal. 2024) .............................. 20

*NPK Indus. v. Hunter*,
  2015 WL 5461667 (N.D. Cal. Sept. 16, 2015) .................... 19

*O'Hara v. Storer Commc'ns, Inc.*,
  231 Cal.App.3d 1101 (1991), *reh'g denied and opinion modified*
  (July 24, 1991) ................................................................... 18

*Palm Springs Tennis Club v. Rangel*,
  73 Cal.App.4th 1 (1999) ..................................................... 16

*Reader's Dig. Assn. v. Superior Ct.*,
  37 Cal. 3d 244 (1984) ......................................................... 17

*Regalia v. The Nethercutt Collection*,
  172 Cal.App.4th 361 (2009) ............................................... 16

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
  302 F. Supp. 3d 1005 (N.D. Cal. 2017) .............................. 18

*Roche v. Hyde*,
  51 Cal.App.5th 757 (2020), *as modified on denial of reh'g* (July 29,
  2020) ........................................................................... 12, 13

*Sandoval v. Pali Inst., Inc.*,
  113 Cal.App.5th 616 (2025) ................................................. 9

*Santana v. Cnty. of Yuba*,
  2016 WL 1268107 (E.D. Cal. Mar. 31, 2016) ...................... 9

*Shively v. Bozanich*,
  31 Cal.4th 1230 (2003), *as modified* (Dec. 22, 2003) ......... 13

*Silberg v. Anderson*,
    50 Cal.3d 205 (1990) .......................................................................... 10, 11

*Taus v. Loftus*,
    40 Cal. 4th 683 (2007) ............................................................................. 14

*Wise v. Thrifty Payless, Inc.*,
    83 Cal.App.4th 1296 (2000) ............................................................... 10, 20

*Wynn v. Chanos*,
    75 F. Supp. 3d 1228 (N.D. Cal. 2014) ................................................ 15, 18

*Yeager v. Bowlin*,
    693 F.3d 1076 (2012) ............................................................................... 14

*Young v. Cnty. of Marin*,
    195 Cal.App.3d 863 (1987) ..................................................................... 10

*Zucchet v. Galardi*,
    229 Cal.App.4th 1466 (2014) ..................................................................... 8

**Statutes**

Cal. Civ. Code § 45 ...................................................................................... 16

Cal. Civ. Code § 46 ...................................................................................... 16

Cal. Civ. Code § 47 .............................................................. 1, 2, 9, 10, 11

Cal. Civ. Code § 2332 .................................................................................. 12

Cal. Code Civ. P. § 340(c) ................................................................... 11, 21

Cal. Code Civ. P. § 425.16 ................................................................ 1, 2, 7, 8

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...................................................................... 7, 20, 21

**PRELIMINARY STATEMENT**

Plaintiffs' Complaint is a textbook Strategic Lawsuit Against Public Participation ("SLAPP") that California Code of Civil Procedure § 425.16 was designed to strike down. It alleges two state law claims for relief: defamation and business disparagement. These arise from oral and written statements that Defendants made to the SEC in official government investigations, █████████████. That renders Plaintiffs' claims dead on arrival. ███████ ████████████████████████ they are absolutely privileged under California's litigation privilege, Civil Code § 47(b), and cannot form the basis of a claim for relief.

Plaintiff Left is a well-known short seller. ██████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
████████████████████

As explained below, his allegations do not withstand legal scrutiny. But as a threshold matter, the Court may—and should—take notice of the contrary judicial admissions that Left made in his criminal case. There, in seeking dismissal, Left admitted that his prosecution stems from his conduct as a public doomsayer about companies whose stock he was shorting. As he wrote: "[T]he government charge[d] Andrew Left ***solely*** for expressing price opinions about 17 securities, which it claims were false ***only*** because Left traded at different prices than his opinions." *See* Ex. 1, at 1 (emphasis in original).[1] In Left's own words: "The government's theory of the case is that Andrew Left committed securities fraud because (a) he published negative opinions about various stocks, effectively encouraging readers to sell, and (b) his

---

[1]  All exhibits are attached to the Schwartz Decl. unless noted otherwise.

1

opinions could not have been 'sincerely held,' because Left, after publishing those opinions, traded in a manner that was arguably inconsistent with them." Ex. 2, at 7.

███████████████████████████████████████████████████

███████████████████████████████

Left's statements in his criminal case cannot be reconciled with his allegations here. They destroy any causal link between Defendants' allegedly false testimony ███████████ and Left's indictment and SEC lawsuit.

In reality, Left filed this lawsuit to coerce Defendants into ███████████ ███████ to make it more favorable to him. Before filing it, Left sent Defendants a draft of the Complaint and offered not to file it if Defendants would agree to ██████ ███████████. In response, Defendants sent a letter identifying the legal defects outlined above, cautioning against attempts to tamper with or coerce witness testimony, and warning that filing the lawsuit may subject Plaintiffs and their counsel to sanctions. Plaintiffs were undeterred.

The Court should not tolerate Plaintiffs' manipulation of the judicial system. As detailed below, Defendants meet their burdens under the anti-SLAPP statute and Plaintiffs cannot meet theirs. To begin, Defendants readily satisfy the initial step in the anti-SLAPP analysis: Their statements were "made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." Cal. Code Civ. P. § 425.16(e). Accordingly, the burden shifts to Plaintiffs to demonstrate that their claims have minimal merit. Plaintiffs cannot do so.

***First***, ███████████████ is absolutely privileged under Cal. Civ. Code § 47(b), which immunizes statements made in official proceedings. This absolute privilege bars Plaintiffs' claims as a matter of law, regardless of the statement's truth or falsity, and regardless of the speaker's intent or motive.

***Second***, Plaintiffs' defamation claim is barred by California's one-year statute of limitations for such claims. ████████████████████████████████ ███████████████████████████████. Plaintiffs knew the substance of the ████████ as

early as May 2023, and obtained █████████████ in November 2023. At the latest, the limitations period began running in July 2024, when the SEC and DOJ publicly filed enforcement proceedings against Left, incorporating █████████ ██████. Plaintiffs filed this lawsuit in October 2025—outside the one-year statute of limitations by any calculation. Plaintiffs cannot plead around the fact that they had access to ████████ for years. They attempt to muddy the waters with allegations about the content of █████████████████. But those submissions only repeated Defendants' time-barred ███████████ to the same audience, and thus cannot revive the claim. Because Plaintiffs' claims arise from statements made no later than April 2023, the same principles also bar Plaintiffs' disparagement claim, which is subject to a two-year limitations period.

*Third*, Plaintiffs failed to adequately plead essential elements of their claims, and cannot cure those defects, including that: (a) ██████████████ was false; (b) Defendants' statements were defamatory or defamatory per se; (c) Defendants' statements were derogatory as to Plaintiffs' business; and (d) Defendants' statements proximately caused the government to indict Left and file enforcement proceedings against him, in turn causing him special damages. In addition, Left is a public figure. He built his career orchestrating media and public relations campaigns to influence public opinion. Thus, as a prima facie element of both claims, Plaintiffs must plausibly allege that Defendants acted with actual malice—knowledge of falsity or reckless disregard for the truth. Plaintiffs did not and cannot do so.

## FACTS ALLEGED IN THE COMPLAINT

### A.    <u>The Government's Investigations And Charges Against Left.</u>

Andrew Left is an activist short seller who built his brand—and his fortune—by leveraging the media to influence markets. *See* Compl. ¶ 1. Operating under the name "Citron Research," Left launched websites, published reports, flooded Twitter with carefully timed posts, and cultivated relationships with news outlets to drive investor sentiment. *See, e.g.*, *id.* ¶¶ 44-48. He positioned himself as a crusader

against corporate fraud. But according to the SEC and the DOJ, Left was actually scheming to deceive investors through false and misleading statements while concealing his true trading positions and intentions from the investing public. *See* Ex. 3.[2] Prosecutors say that Left did not just trade stocks; he orchestrated media campaigns to profit from the market reactions he manufactured. *See id.* ¶ 6.

In July 2024, both the SEC and DOJ brought charges against Left for his allegedly fraudulent conduct. The DOJ indicted Left on 18 counts of securities fraud and one count of making false statements to federal investigators. *See* Ex. 3. Fatal to Plaintiffs' claims here, the criminal indictment does not include as an element of any crime ███████████████████████████████████████████████████████ ██████████████████████████████████████████████ .

Instead, the indictment alleged that Left had engaged in a multi-year scheme to defraud investors by publishing false and misleading statements and concealing his trading activity. *Id.* The DOJ also charged Left with lying to federal law enforcement officials by falsely stating that he: (1) did not share Citron's reports with hedge funds before those reports became public, and (2) "never, never, never" exchanged compensation with a hedge fund after consulting with that hedge fund in advance of the issuance of a Citron report. *Id.* ¶ 113.

The SEC's complaint alleged that Left systematically deceived investors through false and misleading statements about his positions in the stocks he was trading. Left misrepresented that his recommendations were based on genuine analyses and convictions, when in fact they were designed to move stock prices in directions favorable to his undisclosed trading positions. *See* Ex. 4. The SEC also alleged that Left took steps to conceal his financial arrangements with hedge funds like Anson. *Id.* ¶ 211(f). The SEC charged Left with securities fraud through a pattern

---

[2]    As explained in Defendants' Request for Judicial Notice, the Court may take judicial notice of the DOJ's indictment and SEC's civil complaint. *See* Ex. 4, ¶ 6.

of deceptive trading and public statements involving numerous companies. *See id*. ¶¶ 1-5. Here, too, ███████████████████████████████████████████ ███████████████████████████ .

As noted above, Plaintiff has judicially admitted these matters in his filings. *See* Ex. 1 (DOJ Dkt., ECF No. 45, at 1 (Left's Reply ISO Motion to Dismiss)); Ex. 2 (DOJ Dkt., ECF No. 60, at 7 (Left's Memo ISO Motion to Dismiss for Selective Prosecution)); *see also* Ex. 5 (SEC Dkt., ECF No. 23 (Left's Reply ISO Motion to Dismiss SEC Complaint), at 1 ("[T]he SEC's fraud and scheme theories distill down to the unsupported claim that failure to disclose private trading strategies when publishing opinions about securities is per se illegal.") and 5 (the SEC's "fraud theory is based exclusively on 'contra-recommendation trading'")).

**B.** ████████████████████████████████████████

The SEC and DOJ began an investigation ████████████████████ *See* Compl. ¶ 87. The FBI turned its eyes on Left. As part of the broad-based investigation, █ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ *Id.* ¶ 90. ████████████████████████████████████████████████ ██████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ Ex. 6, ████████████████████████████████████████

─────────────────────

[3] The Court can consider the transcripts under the doctrine of incorporation by reference. █████████████████████████████████████████████████████ ████████████████████████████████████████████ . *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy.").

1  ██████████████████████████████████████████████████████

2  ██████████████████████████████████████████████████████

3  ██████████████████████████████████████████████████████

4  █████████████████

5        ████████████████████████████████████████████████

6  ██████████████████████████████████████████████████████

7  ██████████████████████████████████████████████████████

8  ████████████████████ Ex. 7, ████████████████████████████

9  ██████████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████

11 ███

12       In fall 2023, in connection with its investigation, the SEC sent Wells notices to

13 Left ██████████████████ *See* Compl. ¶ 11. It alleges further that ████████████

14 ██████████████████████████████████████████████████████

15 █████████████████ *See id.* ¶¶ 108-112.

16     **C.    This Litigation: Plaintiffs' Attempt To Rewrite The Narrative.**

17       On October 30, 2025—more than 15 months after the DOJ indicted Left and

18 30 months after ██████████████████—Plaintiffs filed this lawsuit against Defendants.

19 The Complaint alleges that █████████████████████████████ was false and

20 caused Left to be criminally indicted and civilly sued. *See, e.g.*, *id.* ¶¶ 108-09, 114-

21 119, 124, 127.

22       The Complaint places outsized emphasis on ██████████████████████████

23 ██████████████████. Plaintiffs allege █████████████ was and is a necessary

24 element of the government's ability to prove its case. *See id.* ¶¶ 13-14, 115, 117-19,

25 125. Left alleges he was indicted "at least in part because of Defendants' lies to the

26 SEC and the DOJ." *Id.* ¶ 127. But Plaintiffs do not allege that ████████████████

27 ██████████████████ *caused* the SEC or DOJ to bring charges. The government

28 charged Left with securities fraud based on a multi-year scheme to deceive investors

1   through false public statements about multiple companies. That conduct had nothing

2   to do with ████████████████████████████████████████████████████ .

## LEGAL STANDARDS

4       ***California's Anti-SLAPP Statute.*** "A cause of action against a person arising

5   from any act of that person in furtherance of the person's right of petition or free

6   speech under the United States Constitution or the California Constitution in

7   connection with a public issue shall be subject to a special motion to strike, unless the

8   court determines that the plaintiff has established that there is a probability that the

9   plaintiff will prevail on the claim." Cal. Code Civ. P. § 425.16(b)(1).

10      Courts conduct a two-step analysis when determining whether an anti-SLAPP

11  motion should be granted. First, courts consider "whether the defendant has made a

12  threshold showing that the challenged cause of action is one arising from protected

13  activity." *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002).

14      Once a defendant has "ma[d]e a threshold showing that the challenged claims

15  arise from protected activity," the burden shifts to the plaintiff to demonstrate that

16  each challenged claim "is legally sufficient and factually substantiated." *Litinsky v.*

17  *Kaplan*, 40 Cal.App.5th 970, 979-80 (2019) (internal quotation marks omitted); Cal.

18  Code Civ. P. § 425.16(b)(1).

19      The Ninth Circuit has recognized the availability of a special motion to strike

20  in federal court proceedings. *See, e.g.*, *Planned Parenthood Fed'n of Am., Inc. v. Ctr.*

21  *for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir.

22  2018); *Gopher Media LLC v. Melone*, 154 F.4th 696, 702-03 (9th Cir. 2025).

23      Where an anti-SLAPP motion is based on the insufficiency of the pleadings,

24  the court is to "apply the Federal Rule of Civil Procedure 12(b)(6) standard and

25  consider whether a claim is properly stated." *Planned Parenthood*, 890 F.3d at 834.

26      **Rule 12(b)(6).** "To survive a motion to dismiss, a complaint must contain

27  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

28  on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Case No. 2:25-cv-10432−SPG (JCx)

# ARGUMENT

## I.    THE COURT SHOULD STRIKE PLAINTIFFS' COMPLAINT UNDER CALIFORNIA'S ANTI-SLAPP STATUTE.

### A.    <u>Defendants' Conduct Arises From Protected Activity.</u>

Under California's anti-SLAPP statute, protected activity includes: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, [and] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law. Cal. Code Civ. P. § 425.16(e). "[T]he critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." *Navellier v. Sletten*, 29 Cal.4th 82, 89 (2002) (emphasis in original).

Each of Defendants' statements at issue here—Defendants' statements ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████—qualifies as a statement "made before … any other official proceeding authorized by law." Cal. Code Civ. P. § 425.16(e)(1)-(2); *see Zucchet v. Galardi*, 229 Cal.App.4th 1466, 1477 (2014) (finding that "as a general matter, trial testimony and statements made to prosecutors preparing for a trial" are protected as "any ... oral statement ... made in connection with an issue under consideration or review by a legislative, executive, or judicial body.") (internal quotation marks omitted); *Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1580 (2005) (disclosure of information "to authorities and in deposition and trial testimony in response to subpoenas…. [were] all protected activities."); *see also ComputerXpress, Inc. v. Jackson*, 93 Cal.App.4th 993, 1009-10 (2001) (noting that SEC proceedings, whether public or not, are official proceedings and the filing of a complaint with the SEC is protected activity).

1  As such, ██████████████████████████████████

2  ████████████████████████████████████████████████

3  ██████████ are protected activity. *See Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,

4  47 Cal.App.4th 777, 784 (1996) (protected activity includes "communications

5  preparatory to or in anticipation of the bringing of an action or other official

6  proceeding"); *Santana v. Cnty. of Yuba*, 2016 WL 1268107, at *9–10 (E.D. Cal. Mar.

7  31, 2016) (noting "litigation activities," including finding evidence to support a

8  criminal prosecution, are "protected by the anti-SLAPP statute"). The same is true for

9  ██████████████████████. It is a "written submission" to the SEC "to persuade

10  the SEC that either no violation has occurred or that any violation that has occurred

11  is not as serious as the SEC may believe." *Bullard v. City of N.Y.*, 2004 WL 875730,

12  at *3 (S.D.N.Y. Apr. 23, 2004).

13  **B.   <u>Plaintiffs Cannot Establish That They Are Likely To Prevail.</u>**

14  Because Plaintiffs' claims arise from protected activity, the burden shifts to

15  them to demonstrate that their claims have legal merit. *See Hilton v. Hallmark Cards*,

16  599 F.3d 894, 908 (9th Cir. 2010). To satisfy this burden, Plaintiffs must establish

17  that their claims are "legally sufficient." *Sandoval v. Pali Inst., Inc.*, 113 Cal.App.5th

18  616, 633 (2025). Plaintiffs cannot carry that burden.

19  **1.   Defendants' Statements Are Absolutely Privileged.**

20  As this Court held in a similar situation, where business disparagement claims

21  are based on an attorney's letters that concerned litigation between the parties, the

22  claims "are barred as a matter of law by California's litigation privilege." *Engineer.ai*

23  *Corporatio v. Kaufman*, 2022 WL 4596575, at *10 (C.D. Cal. Sept. 9, 2022) (granting

24  anti-SLAPP motion).

25  Cal. Civ. Code § 47(b) extends an absolute privilege to communications made

26  as part of judicial or quasi-judicial proceeding "to protect citizens from the threat of

27  litigation for communications to government agencies whose function it is to

28

investigate and remedy wrongdoing." *Wise v. Thrifty Payless, Inc.*, 83 Cal.App.4th 1296, 1302-03 (2000).

The litigation privilege is broadly interpreted and applies to oral and written communications: "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990).

"[J]udicial or quasi-judicial" proceedings include "administrative, legislative and other official proceedings." *People ex rel. Gallegos v. Pac. Lumber Co.*, 158 Cal.App.4th 950, 958 (2008), *as modified* (Feb. 1, 2008) (internal quotation marks omitted). The privilege applies to investigations by law enforcement agencies. *See Kashian v. Harriman*, 98 Cal.App.4th 892, 930 (2002) ("an 'official proceeding' includes a complaint to or a resulting investigation by the Attorney General."); *Laker v. Bd. of Trustees. of Cal. St. U.*, 32 Cal.App.5th 745, 770 (2019) ("The official proceeding privilege has been interpreted broadly to protect communication to or from governmental officials which may precede the initiation of formal proceedings.").

Because the alleged defamatory statements were made ███████████████ ████████████████████████████████████████████████████████ ███████████████████████████ they are absolutely privileged. *See Hagberg v. Cal. Fed. Bank*, 32 Cal.4th 350 (2004) (litigation privilege "bars all tort causes of action except a claim of malicious prosecution."). Section 47(b) also extends to the Wells submissions. *Young v. Cnty. of Marin*, 195 Cal.App.3d 863, 873 (1987) (§ 47(b) privilege extends to pre-lawsuit communications to "agencies designed to induce or influence their actions.").

That Plaintiffs allege that ████████████████████████████████ makes no difference; "communications made in connection with litigation do not necessarily fall outside the privilege simply because they are, or are alleged to be,

fraudulent, perjurious, unethical, or even illegal." *Kashian*, 98 Cal.App.4th at 920. As the California Supreme Court has noted, there have been "numerous cases in which fraudulent communications or perjured testimony have nevertheless been held privileged." *Silberg*, 50 Cal.3d at 218 (listing cases).

Plaintiffs may claim that ███████████████████████ falls within a carve-out to § 47(b) that the Legislature adopted in 2020 for knowingly or recklessly false reports of a crime to law enforcement. *See* Cal. Civ. Code § 47(b)(5) (exempting "a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report."). Plaintiffs are wrong. The Legislature added subsection 5 because of concerns that the 911 emergency system was being "used to harass people of color … and put[ting] law enforcement in danger by requiring them to arrive at a tense, racially charged situation in which they would not otherwise intervene." *See* Ex. 8, at 3.

That exception does not apply here. Messrs. Kassam and Puri were not making a 911 call, reporting a crime, or making a report requiring law enforcement intervention. Plaintiffs do not even allege what "crime" was being "reported." *See* Compl. ¶¶ 94, 97. Mr. Puri ██████████████████████████████ ████, and Defendants were ████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████. Such ██████████ cannot fairly be construed as "reporting a crime." Nor were Anson and Mr. Puri reporting a crime ████████████████████████████████████████ ████████████████. *See Bullard*, 2004 WL 875730, at *3.

### 2.    Plaintiffs' Claims Are Time-Barred.

Plaintiffs' defamation claim is subject to a one-year statute of limitations. *See* Cal. Code Civ. P. § 340(c). The trade libel claim is subject to a two-year statute of limitations. *See Guess, Inc. v. Superior Ct.*, 176 Cal.App.3d 473, 479 (1986). "A claim

for defamation accrues when the defendant publishes a defamatory statement by communicating it to a third person who 'understands its defamatory meaning as applied to the plaintiff.'" *Alvarez v. L.A. Cnty.*, 2025 WL 1167364, at *5 (C.D. Cal. Apr. 22, 2025).

The Complaint alleges that Defendants Kassam and Puri defamed Plaintiffs ███ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████. *See* Compl. ¶¶ 93-99. It alleges further that ███████████████████████████████████████████████████████ ██████████████████. *Id.* ¶¶ 106-11. But Plaintiffs did not file this lawsuit until October 2025. By then, the claims were time-barred.

To avoid this obvious defect, ████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████, and that Plaintiffs did not get access ██████████████████ █████████████. *Id.* ¶¶ 123-25. Even accepting that as true, none of it matters. The Complaint admits that Defendants' lawyer sent ████████████████ to Plaintiffs' lawyer in November 2023. *See id.* ¶ 122.

These allegations bar Plaintiffs' defamation claim. An attorney's possession, knowledge, or awareness of alleged defamatory statements may be imputed to his client. "[A]n attorney is his client's agent, and ... the agent's knowledge is imputed to the principal even where ... the agent does not actually communicate with the principal, who thus lacks actual knowledge of the imputed fact." *Roche v. Hyde*, 51 Cal.App.5th 757, 797 (2020), *as modified on denial of reh'g* (July 29, 2020) (internal quotation marks omitted); Cal. Civ. Code § 2332 ("As against a principal, both principal and agent are deemed to have notice of whatever either has notice of...."); *see also Bergstrom v. Zions Bancorporation, N.A.*, 78 Cal.App.5th 387, 399 (2022) (agents have "a legal duty to disclose information obtained in the course of the agency and material to the subject matter of the agency, and the agent will be presumed to

12

Case No. 2:25-cv-10432−SPG (JCx)
DEFENDANTS' MOTION TO STRIKE PURSUANT TO CALIFORNIA'S
ANTI-SLAPP STATUTE & RULE 12(B)(6) MOTION TO DISMISS

1    have fulfilled this duty."). This presumption of knowledge is "irrebuttable." *Roche*,

2    51 Cal.App.5th at 797.

3        Plaintiffs may ask the Court to apply the discovery rule, which delays "the

4    accrual of a cause of action in tort … until the plaintiff discovered (or reasonably

5    should have discovered or suspected) the factual basis for his or her claim." *Shively*

6    *v. Bozanich*, 31 Cal.4th 1230, 1248 (2003), *as modified* (Dec. 22, 2003). It does not

7    help Plaintiffs here. "A plaintiff has reason to discover a cause of action when he or

8    she 'has reason at least to suspect a factual basis for its elements.'" *Fox v. Ethicon*

9    *Endo-Surgery, Inc*., 35 Cal.4th 797, 807 (2005). But even under the discovery rule,

10   "suspicion of one or more of the elements of a cause of action, coupled with

11   knowledge of any remaining elements, will generally trigger the statute of limitations

12   period." *Id.* Courts "look to whether the plaintiffs have reason to at least suspect that

13   a type of wrongdoing has injured them." *Id.*

14       Even ignoring Plaintiffs' possession of ▓▓▓▓▓▓▓▓ by November 2023,

15   they should have known about or reasonably discovered the allegedly defamatory

16   ▓▓▓▓▓ by June 2024, when the SEC announced a settled enforcement action

17   against Anson that describes the third-party payment arrangement. *See* Compl.

18   ¶¶ 113-14; Ex. 9. And even if that were not sufficient, Plaintiffs should have known

19   about or reasonably discovered the allegedly defamatory ▓▓▓▓▓ by July 2024,

20   when the DOJ indicted Left and when the SEC sued him in a complaint that alleged

21   that Left had directed the payments through a third party. *See* Compl. ¶¶ 117-18.

22       Plaintiffs also had reason to suspect the alleged "defamation" by at least June

23   11, 2024, when the SEC announced that it had settled an enforcement action against

24   Anson, which included the finding that "[Left] asked Anson Advisors to send him his

25   share of trading profits through a third-party intermediary, to which [Anson] agreed."

26   Compl. ¶ 114; Ex. 10.

27       Similarly, when the DOJ indicted Left a few weeks later, it alleged that

28   "defendant LEFT directed a third party to create false invoices requesting payments

1   for research services." Ex. 3 ¶¶ 19, 102; *see also* Compl. ¶¶ 117-18. The SEC filed a

2   separate complaint against Left the following day alleging that Left "took steps to

3   conceal that he was being compensated by Anson in connection with using his Citron

4   Research platform by asking Anson to send him his share of trading profits through

5   Third-Party Intermediary, to which Anson agreed." Ex. 4 ¶ 175; *see also* Compl.

6   ¶ 119.

7        Defendants' ████████████████████████████████████████

8   ███████████████████, cannot revive Plaintiffs' time-barred claims. Any alleged

9   defamatory statements in them were not made to some new party ███████. *See*

10  *Yeager v. Bowlin*, 693 F.3d 1076, 1082 (2012) ("a statement is republished when it is

11  'repeat[ed] or recirculate[d] ... to a new audience.'").

### 3.    The Complaint Fails To State A Claim.

13       To state a claim for defamation, Plaintiffs must allege the existence of "(a) a

14  publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a

15  natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th

16  683, 720 (2007). A public figure plaintiff must also sufficiently allege that the speaker

17  acted with actual malice in making the alleged defamatory statements. *See McGarry*

18  *v. U. of San Diego*, 154 Cal.App.4th 97, 114 (2007).

19       To state a claim for business disparagement or trade libel, Plaintiffs must show

20  that: (1) the defendant made a statement disparaging Plaintiffs' product; (2) the

21  disparaging statement was couched as fact and not opinion; (3) it was false; (4) it was

22  made with malice; and (5) the statement caused monetary loss. *See City of Costa Mesa*

23  *v. D'Alessio Invs., LLC*, 214 Cal.App.4th 358, 376 (2013).

24       Plaintiffs have not—and cannot—plead the elements of either claim.

### (a)    Plaintiffs Fail To Allege The Statements Are Provably False.

26

27       "'The sine qua non of recovery for defamation … is the existence of

28  falsehood.'" *McGarry*, 154 Cal.App.4th at 112 (quoting *Letter Carriers v. Austin*, 418

U.S. 264, 283 (1974)). A "'provably false factual assertion' … is indispensable to any claim for defamation." *Gilbert v. Sykes*, 147 Cal.App.4th 13, 32 (2007). The same is true for a claim for a business disparagement. *See City of Costa Mesa*, 214 Cal.App.4th at 376.

Plaintiffs fail to "show[] that the defendant[s] made a factual assertion … that was false." *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1233 (N.D. Cal. 2014). Plaintiffs allege in "sum and substance" that ███████████████████████████ ████████████████████████████████████████████████ ████████████████████████ Compl. ¶ 124. But the Complaint fails to demonstrate that ███████████████████████ are false statements of fact. For instance, ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████████████

According to the Complaint: (1) Anson paid Left through Falcon Research; (2) false invoices were used; and (3) this arrangement concealed the payments' true nature. *See* Compl. ¶¶ 59, 62-63. The only dispute is whose idea it was. But ████████████████████████████████████████████████ █████████████████████, *see, e.g., id.* ¶ 93, ██████████████████ █████████████, cannot be proven true or false.

**(b)    Plaintiffs Fail To Allege That Defendants' Statements Were Defamatory Or Defamatory *Per Se*.**

Plaintiffs' allegations that Defendants' statements were defamatory or defamatory *per se*, *id.* ¶¶ 138-142, are insufficient. In California, defamation "involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Gilbert*, 147 Cal.App.4th at 27 (internal quotation marks omitted).

Plaintiffs do not properly allege that the alleged defamatory statements have a "natural tendency to injure" such that they "expose[] any person to hatred, contempt,

[or] ridicule" or have "a tendency to injure him in his occupation." *Cummins v. Lollar*, 2013 WL 12123771, at \*4 (C.D. Cal. Apr. 30, 2013) (quoting Cal. Civ. Code § 45) (internal quotation marks omitted). Nor do Plaintiffs sufficiently plead special damages. *See infra* Section I(B)(3)(f).

A statement is defamatory *per se* if "a defamatory meaning appears from the language itself without the necessity of explanation or the pleading of extrinsic facts." *Palm Springs Tennis Club v. Rangel*, 73 Cal.App.4th 1, 5 (1999); *see also Garcia v. City of Merced*, 637 F. Supp. 2d 731, 755-56 (E.D. Cal. 2008). A statement accusing the plaintiff of committing a crime is defamatory *per se*. *See Burrill v. Nair*, 217 Cal.App.4th 357, 382-83 (2013) (quoting Civ. Code § 46). Statements that tend "directly to injure [plaintiff] in respect to his office, profession, trade or business" constitute defamation *per se*. Cal. Civ. Code § 46(3).

The Complaint fails to satisfy these standards. The allegedly defamatory statements about ███████████████████████████ are not accusations of criminal conduct or statements that, on their face, directly injure Plaintiffs in their business. Nor do the statements, standing alone, "'clearly convey a meaning'" that is defamatory. *Regalia v. The Nethercutt Collection*, 172 Cal.App.4th 361, 369 (2009) (citation omitted). The statements require substantial extrinsic context to carry any defamatory meaning. *Cf. Barker v. Fox & Assocs.*, 240 Cal.App.4th 333, 351 (2015) (test is whether a reader, "without extrinsic aid beyond his or her own intelligence and common sense," would perceive the statement as defamatory). Only by layering on extensive background about securities laws, ██ ███████████████████████ can Plaintiffs construct a defamatory interpretation. *See* Compl. ¶¶ 28-101 (devoting 20+ pages to this context). This dependency on extrinsic facts renders the statements not defamatory *per se*. *See Palm Springs Tennis Club*, 73 Cal.App.4th at 5.

**(c)      Plaintiffs Fail to Allege That The Statements Refer To And Clearly Derogate Plaintiffs' Business.**

In a trade libel or business disparagement case, courts require that "'the defendant's false or misleading statement have a degree of specificity,'" namely, that "'[a] false or misleading statement (1) must specifically refer to the plaintiff's product or business, and (2) must clearly derogate that product or business.'" *Mosafer Inc. v. Broidy*, 2022 WL 793029, at *7 (C.D. Cal. Feb. 4, 2022), *aff'd*, 2023 WL 8295921 (9th Cir. Dec. 1, 2023). The alleged statements do not clearly derogate or disparage Plaintiffs' business; they do not "concern[] the quality of services or product of [the] business." *ComputerXpress*, 93 Cal.App.4th at 1010.

**(d)      Plaintiffs Fail To Allege That The Statements Were "Unprivileged."**

Because California's litigation privilege—an absolute privilege—applies to the alleged defamatory statements, *see supra* Section I(B)(1), Plaintiffs cannot allege that the alleged defamatory statements are unprivileged.

**(e)      Plaintiffs Fail To Allege Actual Malice.**

To prevail on their trade libel claim, Plaintiffs must allege actual malice. *See City of Costa Mesa*, 214 Cal.App.4th at 376. The same is true for purposes of Plaintiffs' defamation claim because Left is a public figure. He and his company, Citron Research, have been the subject of numerous articles in established news outlets, such as NPR and *The Wall Street Journal. Business Insider* referred to him as a "world-famous short seller." Ex. 11. Thus, Plaintiffs must allege actual malice by clear and convincing evidence to recover damages.

A defamatory statement is made with actual malice when it is made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Reader's Dig. Assn. v. Superior Ct.*, 37 Cal. 3d 244, 256 (1984) (internal quotation marks omitted). Statements that Defendants merely lied ███████████ ████████████████████████████. Pleading actual malice requires more than alleging falsity; the plaintiff must allege supporting facts

17

to satisfy the "'demanding burden' for pleading actual malice." *Wynn*, 75 F. Supp. 3d at 1239. "To determine whether a plaintiff adequately pleads actual malice, the court must disregard the portions of the complaint where [the Plaintiff] alleges in a purely conclusory manner that the defendants had a particular state of mind in publishing the statements…. [T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements are insufficient." *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017).

Construing the Complaint in the light most favorable to Plaintiffs, they have failed to meet this standard. Although the Complaint repeatedly alleges that Defendants' statements about Plaintiffs were false, *see e.g.*, Compl. ¶¶ 10, 12, 15, the closest it comes to satisfying the pleading standard for actual malice is the conclusory allegation that Defendants were "aware" that Left had not told them to route his payments through Falcon. *Id.* ¶ 99. That is a conclusory, threadbare recital of the elements that the caselaw does not tolerate.

### (f)    Plaintiffs Fail To Allege Monetary Loss And Special Damages.

If a statement is not defamatory *per se*, a plaintiff must allege "'that he has suffered special damage as a proximate result thereof.'" *Bartholomew v. YouTube, LLC.*, 17 Cal.App.5th 1217, 1226 (2017). Special damages "must be proved to a reasonable certainty; and [] no special damages are recoverable if they are deemed remote." *O'Hara v. Storer Commc'ns, Inc.*, 231 Cal.App.3d 1101, 1113 (1991), *reh'g denied and opinion modified* (July 24, 1991).

By Plaintiffs' own account, their alleged consequential injuries—reputational harm, lost income, and legal fees—flow from the SEC and DOJ's investigations and Left's indictment for securities fraud, not from Defendants' testimony. *See* Compl. ¶ 126 ("The DOJ's and SEC's public law enforcement actions … have resulted in severe damage to Plaintiffs."). The investigations into Left and other short sellers began in 2018. *See id.* ¶ 87. By at least July 2023, Left had gone public about them.

In one published interview, he complained that he was "living in limbo, waiting to learn if the [DOJ] and [SEC] plan to charge him in their sweeping investigations of tactics used by activist short sellers" and noted that "'[i]t's cost me a lot of money, a lot of stress.'" Ex. 12.

Even ignoring these facts, Plaintiffs cannot plausibly allege that, ████ ████████████████████████████████████████████, his business would have been undiminished and he would not face criminal charges. The DOJ indicted Left on 19 counts—17 of which are unrelated to the payment arrangement—alleging that he engaged in a multi-year scheme stock manipulation scheme. *See* Ex. 3. The vast majority of these charges have nothing to do with Defendants or the Falcon Research payment arrangement.

Plaintiffs' claims suffer another insurmountable defect in pleading the causal link necessary to prove harm. Left has repeatedly admitted in the government's cases against him that the cases arise from his public comments about companies and his undisclosed trading in their stock without any mention of Defendants' allegedly defamatory statements. In the DOJ case, Left has said that: "The government's theory of the case is that Andrew Left committed securities fraud because [] he published negative opinions about various stocks…, and [] his opinions could not have been 'sincerely held.'" Ex. 2, at 7. And Left himself moved to strike all references to false invoices and payment arrangements from the DOJ's Indictment as irrelevant—the very indictment Plaintiffs claim resulted from Defendants' statements. Ex. 13, at 6.

Finally, Plaintiffs cannot allege that Defendants' statements were intended to cause the business financial harm and did so. *See ComputerXpress*, 93 Cal.App.4th at 1010; *NPK Indus. v. Hunter*, 2015 WL 5461667, at *4 (N.D. Cal. Sept. 16, 2015) ("'[A] cause of action for damages for trade libel requires pleading and proof of special damages in the form of pecuniary loss.'"); *Muddy Waters, LLC v. Superior Ct.*, 62 Cal.App.5th 905, 925 (2021) ("[T]he plaintiff must prove in all cases that the publication has played a material and substantial part in inducing others not to deal

with him, and that as a result he has suffered special damages.") (internal quotation marks omitted). If Plaintiffs cannot "identify particular customers and transactions of which it was deprived as a result of the libel...., they must plead general business loss with reasonable certainty and eliminate other causes." *Gopher Media LLC v. Melone*, 2023 WL 8790266, at *11 (S.D. Cal. Dec. 19, 2023) (finding that the defendants failed to "allege sufficient facts to show, with reasonable certainty, general business loss or loss of the markets" and that "other factors did not cause their loss or specify what portion of the loss is attributable to the alleged libelous statements"). Indeed, Plaintiffs state, without specificity: "***Because of the enforcement actions*** and the attention they drew, Plaintiffs had to cut back on trading and divert their efforts to defending themselves" and that "Plaintiffs lost millions of dollars in probable earnings as a result." Compl. ¶ 129 (emphasis added). Plaintiffs have not pled general business losses attributable to the alleged defamatory statements with reasonable certainty. And they fail to identify how even a portion of the potential loss of "millions" in "probable earnings" is attributable to the alleged defamatory statements, as opposed to the DOJ and SEC enforcement actions and resulting media attention.

## II.    ALTERNATIVELY, THE COURT SHOULD DISMISS THE COMPLAINT UNDER RULE 12(B)(6)

### A.    Plaintiffs' Claims Are Barred By The Absolute Litigation Privilege.

As a preliminary matter, California's litigation privilege applies to Defendants' testimony. *See supra* Section I(B)(1). ██████████████████████████████████ ████████████████████████████████████████████████████████, which is considered an official proceeding. Those communications are thus protected by the litigation privilege. Defendant ███████████████████████████████████████ ██████████████████████████████████. *See Wise*, 83 Cal.App.4th 1296 at 1303; *Laker*, 32 Cal.App.5th at 770. Because California's litigation privilege is absolute, Plaintiffs' claims are barred and must be dismissed. *See, e.g.*, *Next Vietnam Projects Found., Inc. v. Koster Films, LLC*, 751 F. Supp. 3d 1005, 1012 (C.D. Cal. 2024)

1  (dismissing conversion claim that arose from communications protected by

2  California's litigation privilege); *Morales v. Coop. of Am. Physicians, Inc., Mut. Prot.*

3  *Tr.*, 180 F.3d 1060, 1062-64 (9th Cir. 1999) (finding plaintiff's suit for negligent and

4  intentional misrepresentation barred by California's litigation privilege on appeal of

5  12(b)(6) motion to dismiss).

6  **B.    Plaintiffs' Defamation Claim Is Time-Barred.**

7  Moreover, as discussed above, Plaintiffs' claim is time-barred as the one-year

8  statute of limitations for a defamation claim ran over a year ago, after Left's counsel

9  ████████████████████████████████████████████████

10  ██████████ in November 2023. *See* Cal. Code Civ. P. § 340(c); *see supra* Section

11  I(B)(2). Left, at a minimum, had reason to investigate in June 2024 when the SEC's

12  settlement with Anson was announced publicly, which included information about the

13  Falcon arrangement. *See supra* Section I(B)(2). Plaintiffs' defamation claim must be

14  dismissed as time-barred.

15  **C.    Plaintiffs Fail To State A Claim For Defamation Or Trade Libel.**

16  As noted in the anti-SLAPP discussion above, *supra* Section I(B)(3), Plaintiffs

17  have failed to state a claim for defamation or trade libel. Those arguments apply with

18  equal force to a Rule 12(b)(6) motion.

19  **CONCLUSION**

20  For the foregoing reasons, the Court should grant Defendants' motion.

21

22  DATED: December 30, 2025         Respectfully submitted,

23                                   QUINN EMANUEL URQUHART

24                                      & SULLIVAN, LLP

25

26                                   By    */s/ Robert M. Schwartz*

27                                        Robert M. Schwartz
                                          Attorneys for Defendants

28

1

## <u>CERTIFICATE OF L.R. 11-6.2 COMPLIANCE</u>

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,840 words, which complies with the word limit of L.R. 11-6.1.

DATED:  December 30, 2025          QUINN EMANUEL URQUHART
                                                        & SULLIVAN, LLP


By   _/s/ Robert M. Schwartz_____
                Robert M. Schwartz
             Attorneys for Defendants

22

Case No. 2:25-cv-10432−SPG (JCx)
DEFENDANTS' MOTION TO STRIKE PURSUANT TO CALIFORNIA'S
ANTI-SLAPP STATUTE & RULE 12(B)(6) MOTION TO DISMISS