**DYNAMIS LLP**
ERIC S. ROSEN (*pro hac vice*)
erosen@dynamisllp.com
(617) 802-9157
MICHAEL B. HOMER (*pro hac vice*)
mhomer@dynamisllp.com
(617) 693-9732
175 Federal Street, Suite 1200
Boston, Massachusetts 02110

YUSEF AL-JARANI (Cal Bar No. 351575)
yaljarani@dynamisllp.com
(213) 283-0685
1100 Glendon Ave., 17th Floor
Los Angeles, California 90024

*Attorneys for Plaintiffs Andrew Left and Citron Capital, LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW LEFT and CITRON CAPITAL, LLC, | Case No. 2:25-cv-10432-SPG (JCx) |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE** |
| v. | <span style="color:red">REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL.</span> |
| ANSON FUNDS MANAGEMENT LP, ANSON ADVISORS INC., MOEZ KASSAM, and SUNNY PURI, | |
| Defendants. | Date:     February 25, 2026<br>Time:     1:30 p.m.<br>Ctrm:     5C<br>Judge:   Hon. Sherilyn Peace Garnett |

1

## <u>TABLE OF CONTENTS</u>

2

INTRODUCTION ....................................................................................... 1

3

FACTUAL BACKGROUND ...................................................................... 1

4

LEGAL STANDARD.................................................................................. 3

5

ARGUMENT............................................................................................... 4

6

I.    DEFENDANTS FAIL TO CARRY THEIR BURDEN ON THEIR ANTI-SLAPP MOTION. ............................................................................... 4

7

8

    A.    The Litigation Privilege Does Not Protect False Reports of Criminal Activity to Law Enforcement. ................................................. 4

9

        1.    Defendants Bear the Burden on Their Privilege Defense. ........... 4

10

        2.    The Litigation Privilege Became a Qualified Privilege in 2021, Yet Defendants Rely on Outdated Caselaw. .................................. 4

11

12

        3.    Defendants Fail to Do the Work of Interpreting the Statutory Privilege They Rely On.................................................................. 5

13

        4.    The Complaint Alleges Defendants "Reported" a "Crime" or Activity "Requiring Law Enforcement Intervention.".................. 7

14

15

    B.    The Limitations Period Should Be Tolled Because Plaintiffs Were Prevented from Accessing Defendants' False Statements. .................. 10

16

        1.    Defendants Bear the Burden on Their Limitations Defense. ..... 10

17

        2.    Plaintiffs Plausibly Alleged They Did Not Have Access to the Defamatory Statements Until October 2024. ............................. 11

18

19

        3.    Counsel's Access to Transcripts in November 2023 Has No Effect on the Business Disparagement Claim and Cannot Be Imputed. .................................................................................. 12

20

        4.    The Discovery Rule and Equitable Tolling Operate to Toll Plaintiffs' Claims Through October 8, 2024............................. 13

21

22

        5.    ███████████ blished the Defamatory Statements in Their ████████.................................................................. 14

23

        6.    Defendants' Arguments Demonstrate Why Discovery Is Needed. .................................................................................. 15

24

25

26

27

28

Case No. 2:25-cv-10432-SPG (JCx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS THE COMPLAINT

C.  The Complaint More Than Plausibly Alleges Defamation and Business Disparagement. ............................................................................ 16

    1.  Plaintiffs Plausibly Alleged Falsifiable Statements. .................. 16

    2.  Plaintiffs Plausibly Alleged Defendants' Statements Were Defamatory and Defamatory *Per Se*. .......................................... 17

    3.  Plaintiffs Plausibly Alleged Defendants' Statements Derogated the Character of Plaintiffs' Business. .......................................... 19

    4.  Defendants Failed to Establish Their Statements Were Privileged. ...................................................................................... 20

    5.  Plaintiffs Plausibly Alleged Defendants Acted with Malice. ...... 20

    6.  Plaintiffs Plausibly Alleged They Suffered Special Damages. ... 21

II.  DEFENDANTS' RULE 12(B)(6) MOTION FAILS ALONG WITH THEIR ANTI-SLAPP MOTION. .............................................................. 23

III.  PLAINTIFFS SHOULD BE ALLOWED TO AMEND IF NECESSARY. .. 23

CONCLUSION .............................................................................................. 23

- ii -

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Appel v. Wolf,*
   839 F. App'x 78 (9th Cir. 2020)..................................................................17

5

6

*Balla v. Hall,*
   273 Cal. Rptr. 3d 695 (Cal. Ct. App. 2021) ..............................................18

7

*Bauer v. Athletic Media Co.,*
   2022 WL 18586268 (C.D. Cal. 2022) .......................................................18

8

9

*Bekins v. AstraZeneca Pharms. LP,*
   739 F. App'x 884 (9th Cir. 2018)...............................................................13

10

*Bennett v. C. R. Bard, Inc.,*
   2025 WL 1132825 (9th Cir. 2025)........................................................13, 14

11

12

*Bently Rsrv. LP v. Papaliolios,*
   160 Cal. Rptr. 3d 423 (Cal. Ct. App. 2013) ..........................................17, 19

13

*Bergstrom v. Zions Bancorporation, N.A.,*
   293 Cal. Rptr. 3d 458 (Cal. Ct. App. 2022) ...............................................12

14

*Bostock v. Clayton Cnty., Georgia,*
   590 U.S. 644 (2020) .....................................................................................5

15

16

*Botosan v. Fitzhugh,*
   13 F. Supp. 2d 1047 (S.D. Cal. 1998) ........................................................22

17

*Brunozzi v. Cable Commc'ns, Inc.,*
   851 F.3d 990 (9th Cir. 2017).........................................................................8

18

19

*Capelouto v. Muse,*
   2025 WL 3898875 (C.D. Cal. 2025) ........................................................4, 20

20

*Ceja v. Scribner,*
   2016 WL 4035665 (C.D. Cal. 2016) ...........................................................12

21

*Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dep't,*
   387 F. Supp. 2d 1084 (N.D. Cal. 2005) ......................................................11

22

*Comstock v. Humphries,*
   786 F.3d 701 (9th Cir. 2015)........................................................................22

23

24

*Delaney v. Delaney,*
   2023 WL 8442213 (Cal. Ct. App. 2023).....................................................10

25

*Dep't of Corr. & Rehab. v. Workers' Comp. Appeals Bd.,*
   563 P.3d 1099 (Cal. 2025) ............................................................................5

26

27

28

- iii -

*Edward v. Ellis,*
   287 Cal. Rptr. 3d 467 (Cal. Ct. App. 2021) ................................................ 3

*Favila v. Katten Muchin Rosenman LLP,*
   115 Cal. Rptr. 3d 274 (Cal. Ct. App. 2010) ............................................... 11

*Flowers v. Carville,*
   310 F.3d 1118 (9th Cir. 2002) ........................................................... 20, 21

*Fox v. Ethicon Endo-Surgery, Inc.,*
   110 P.3d 914 (Cal. 2005) .................................................................... 13

*Fulkerson v. Unum Life Ins. Co. of Am.,*
   36 F.4th 678 (6th Cir. 2022) .................................................................. 7

*Gallagher v. Philipps,*
   563 F. Supp. 3d 1048 (S.D. Cal. 2021) ................................................. 22

*Garcia v. Brockway,*
   526 F.3d 456 (9th Cir. 2008) ............................................................... 13

*Goldberg v. Ruano,*
   2023 WL 8143521 (C.D. Cal. 2023) ............................................... 3, 4, 7

*Gralow v. City of Palos Verdes,*
   *Ests.*, 2024 WL 3001475 (C.D. Cal. 2024) .................................... 4, 5, 10

*Gressett v. Contra Costa Cnty.,*
   2013 WL 6671795 (N.D. Cal. 2013) ..................................................... 21

*Gwire v. Blumberg,*
   2013 WL 5493399 (Cal. Ct. App. 2013) ............................................... 19

*Hartford Cas. Ins. Co. v. Swift Distribution, Inc.,*
   326 P.3d 253 (Cal. 2014) .................................................................... 19

*Henley v. Jacobs,*
   2019 WL 8333524 (N.D. Cal. 2019) ..................................................... 20

*Hudacko v. Regents of the Univ. of California,*
   2024 WL 3925716 (N.D. Cal. 2024) ....................................................... 4

*Implicit Conversions, Inc. v. Stine,*
   2025 WL 360744 (N.D. Cal. 2025) .................................................. 5, 10

*In re Kavanaugh,*
   275 Cal. Rptr. 3d 696 (Cal. Ct. App. 2021) ............................................. 7

*Johnson v. Altamirano,*
   418 F. Supp. 3d 530 (S.D. Cal. 2019) .............................................. 11, 12

*Jolly v. Eli Lilly & Co.,*
   751 P.2d 923 (Cal. 1988) .................................................................... 13

- iv -

*Kovesdy v. Kovesdy*,
  2010 WL 3619826 (N.D. Cal. 2010)..............................................................19, 20

*Mace v. JPMorgan Chase Bank, N.A.*,
  2022 WL 3013173 (C.D. Cal. 2022)....................................................................10

*Maloney v. T3Media, Inc.*,
  94 F. Supp. 3d 1128 (C.D. Cal. 2015).................................................................23

*Manzari v. Associated Newspapers Ltd.*,
  830 F.3d 881 (9th Cir. 2016)...................................................................18, 20, 21

*Martinez v. Regents of Univ. of California*,
  241 P.3d 855 (Cal. 2010) ....................................................................................5, 6

*Mascorro v. City of Nat'l City*,
  2025 WL 3205520 (S.D. Cal. 2025) ...................................................................5, 10

*Milkovich v. Lorain J. Co.*,
  497 U.S. 1 (1990) ...................................................................................................17

*Moser v. Triarc Co.*,
  2007 WL 1111245 (S.D. Cal. 2007) .................................................................14, 15

*MouseBelt Labs Pte. Ltd. v. Armstrong*,
  674 F. Supp. 3d 728 (N.D. Cal. 2023).................................................................12

*Nguyen v. W. Digital Corp.*,
  177 Cal. Rptr. 3d 897 (Cal. Ct. App. 2014) ........................................................9

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
  161 Cal. Rptr. 3d 29 (Cal. Ct. App. 2007) ........................................................17

*Pagel v. Dairy Farmers of Am., Inc.*,
  986 F. Supp. 2d 1151 (C.D. Cal. 2013)................................................................6

*Pentalpha Macau Com. Offshore Ltd. v. Reddy*,
  2004 WL 2738925 (N.D. Cal. 2004).....................................................................18

*People v. Harrison*,
  339 Cal. Rptr. 3d 865 (Cal. Ct. App. 2025) ........................................................6

*People v. Lawson*,
  161 Cal. Rptr. 7 (Cal. Ct. App. 1979) ..................................................................9

*People v. Lopez*,
  286 P.3d 469 (Cal. Ct. App. 2012) .......................................................................9

*People v. McCune*,
  553 P.3d 136 (Cal. 2024) ...................................................................................5, 6

*People v. Seijas*,
  114 P.3d 742 (Cal. 2005) .......................................................................................9

*Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018)..................................................................4

*Powertech Tech., Inc. v. Tessera, Inc.*,
   872 F. Supp. 2d 924 (N.D. Cal. 2012) ...................................................11

*Premium Plus Partners, L.P. v. Goldman, Sachs & Co.*,
   648 F.3d 533 (7th Cir. 2011)..................................................................9

*Pulver v. Avco Fin. Servs.*,
   227 Cal. Rptr. 491 (Cal. Ct. App. 1986) ...............................................22

*Ramirez v. Midland Credit Mgmt., Inc.*,
   2023 WL 2277108 (N.D. Cal. 2023).......................................................22

*Raymond v. Am. Airlines Grp., Inc.*,
   2025 WL 1415332 (C.D. Cal. 2025)........................................................5

*Relator LLC v. Lim*,
   2025 WL 4052367 (N.D. Cal. 2025)........................................................8

*RingCentral, Inc. v. Nextiva, Inc.*,
   2021 WL 2476879 (N.D. Cal. 2021).......................................................23

*Roche v. Hyde*,
   265 Cal. Rptr. 3d 301 (Cal. Ct. App. 2020) ..........................................12

*San Francisco Unified School Dist. v. W.R. Grace & Co.*,
   37 Cal. App. 4th 1318 (Cal. Ct. App. 1995) ..........................................15

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
   563 U.S. 401 (2011) ...............................................................................8

*SEC v. Left*,
   2025 WL 2684201 (C.D. Cal. 2025)...............................................3, 7, 23

*SEC v. Sands*,
   902 F. Supp. 1149 (C.D. Cal. 1995).......................................................10

*SEC v. Sands*,
   142 F.3d 1186 (9th Cir. 1998)................................................................10

*Soukup v. L. Offs. of Herbert Hafif*,
   139 P.3d 30 (Cal. 2006) ..........................................................................3

*Storm Mfg. Grp. Inc. v. Weather Tec Corp.*,
   2013 WL 5352698 (C.D. Cal. 2013)........................................................21

*Thee Aguila, Inc. v. Penn Star Ins. Co.*,
   2020 WL 6743594 (C.D. Cal. 2020)........................................................19

*Triple A Mgmt. Co. v. Frisone*,
   81 Cal. Rptr. 2d 669 (Cal. Ct. App. 1999) ............................................12

- vi -

*United States v. Gerrans,*
  477 F. Supp. 3d 1035 (N.D. Cal. 2020) .......................................................... 7

*Urbano v. Timberlake,*
  2023 WL 2628232 (C.D. Cal. 2023) ............................................................ 12

*Verizon Delaware, Inc. v. Covad Commc'ns Co.,*
  377 F.3d 1081 (9th Cir. 2004) ..................................................................... 23

*Visant Corp. v. Barrett,*
  2013 WL 3450512 (S.D. Cal. 2013) ............................................................ 17

*Ward v. Westinghouse Canada, Inc.,*
  32 F.3d 1405 (9th Cir. 1994) ................................................................ 13, 16

*Weller v. Am. Broad. Companies, Inc.,*
  283 Cal. Rptr. 644 (Cal. Ct. App. 1991) ..................................................... 17

*Wilson v. Murillo,*
  78 Cal. Rptr. 3d 214 (Cal. Ct. App. 2008) .................................................... 9

*Yeager v. Bowlin,*
  693 F.3d 1076 (9th Cir. 2012) .............................................................. 14, 15

*Yelp Inc. v. Superior Ct.,*
  224 Cal. Rptr. 3d 887 (Cal. Ct. App. 2017) ................................................ 19

*ZL Techs., Inc. v. Does 1–7,*
  220 Cal. Rptr. 3d 569 (Cal. Ct. App. 2017) ................................................ 16

**Statutes**

18 U.S.C. § 2 ............................................................................................................ 8

18 U.S.C. § 371 ....................................................................................................... 8

18 U.S.C. § 1956(a)(2)(A) ...................................................................................... 8

Cal. Civ. Code § 47(b) ............................................................................................ 5

Cal. Civ. Code § 47(b)(5) .................................................................................... 5, 6

Cal. Penal Code § 148.5 .......................................................................................... 9

**Rules**

Fed. R. Crim. P. 15 .................................................................................................. 9

Fed. R. Civ. P. 9(b) ............................................................................................... 20

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 4

Fed. R. Civ. P. 15(a) ........................................................................................... 4

Cal. Rule of Court 8.1115 .................................................................................. 11

**Other Authorities**

Rest. 2d Torts § 577A ........................................................................................ 15

1

## **INTRODUCTION**

2      Defendants ▮▮▮▮▮▮▮ to federal law enforcement agencies. These were

3  not ministerial misstatements—they falsely accused Plaintiffs of ▮▮▮▮▮▮

4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The government relied on ▮▮▮▮

5  to indict Andrew Left (DOJ) and sue him and Citron Capital (SEC). Caught red-

6  handed, Defendants ask this Court to immunize them from accountability for ▮▮▮

7  that upended Plaintiffs' lives and livelihoods. This Court should decline.

8      Defendants' motion rests on three arguments, all meritless.

9      *First*, they claim absolute privilege protects even knowing ▮▮▮▮

10 ▮▮▮▮▮▮▮▮▮▮. They are wrong—California amended the law in

11 2021, stripping protection from exactly this type of false reporting.

12     *Second*, Defendants claim Plaintiffs' limitations periods expired, ignoring that

13 Plaintiffs had no access to the defamatory statements until October 2024, tolling their

14 claims until well past when they filed. Defendants barred earlier disclosure of the

15 statements to Plaintiffs, defeating any inquiry-notice theory.

16     *Third*, Defendants claim the Complaint fails to state a claim, despite detailed

17 allegations of provably false statements accusing Plaintiffs of ▮▮▮▮▮—

18 defamation *per se* and disparagement under any standard, let alone the "minimal

19 merit" standard applicable here.

20     The Motion should be denied.

21

## **FACTUAL BACKGROUND**

22     Andrew Left is a short seller who, through his firm Citron Capital, LLC

23 ("Citron"), publishes research exposing corporate fraud and takes short positions in

24 companies he believes are overvalued. Compl. ¶¶ 1, 17. In 2018, Left concluded that

25 Namaste Technologies, Inc. ("Namaste") was engaged in a massive fraud and its stock

26 would collapse. *Id.* ¶¶ 2–3, 38–39.

27

28

- 1 -

Because Namaste was a Canadian issuer trading primarily outside the United States, Left could not borrow sufficient shares to short the stock. *Id.* ¶¶ 3, 36. Defendants Moez Kassam and Sunny Puri—principals of hedge fund Anson—offered to short Namaste on Plaintiffs' behalf through Anson's Canadian operations. *Id.* ¶¶ 4, 35, 40–42. Anson would distribute a portion of any profits to Plaintiffs; Plaintiffs would bear any losses. *Id.* ¶¶ 4–5, 43.

In September 2018, Anson shorted Namaste stock while Plaintiffs published research exposing Namaste's fraud. The trade successfully yielded millions in profits, including $840,000 owed to Plaintiffs. *Id.* ¶¶ 5, 49–51. Unbeknownst to Plaintiffs, Defendants ████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████. *Id.* ¶¶ 6–9, 52–65.

Defendants knew paying a short seller to expose Namaste's fraud while ████████████████████████, and trading for a third party in investor funds, created conflicts of interest with severe regulatory consequences. As ████████ later testified, ██████████████████████████████████████ *Id.* ¶¶ 8, 53, 61–63. And as ████████████ warned, ████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████. *Id.* ¶ 58.

Later, the SEC, working in parallel with the DOJ, opened investigations into short sellers' work with hedge funds, including Anson. *Id.* ¶¶ 87–92. In those investigations, Defendants voluntarily ██████████████████████████████ ████████████. *Id.* ¶¶ 90–92. Defendants falsely ██████████████████ ██████████████████████████████████████. *Id.* ¶¶ 10–12, 94–99. Defendants' ████████████ allowed them to avoid charges, resolving the investigation through a cease-and-desist order. *Id.* ¶ 12.

- 2 -

1    In July 2024, relying on ████████████████, the DOJ indicted Left

2    and the SEC filed an enforcement action against Plaintiffs, both alleging Plaintiffs

3    had orchestrated the false-invoice scheme. *Id.* ¶¶ 13–15. The charging instruments

4    treated the invoices as central evidence of fraudulent intent. *Id.* ¶¶ 13–14. ████████

5    ████████████████ was repeated in the Indictment, SEC Complaint, and this

6    Court's decision denying Plaintiffs' motion to dismiss. *SEC v. Left*, 2025 WL

7    2684201, at *2 (C.D. Cal. 2025) (Garnett, J.).

8    Plaintiffs did not learn these allegations were based on ████████████

9    ████████ until October 2024, when the ████████ transcripts were produced in

10    discovery. *Id.* ¶¶ 121–24. Although Defendants shared certain transcripts with

11    Plaintiffs' former counsel in November 2023, they prohibited counsel from disclosing

12    their contents to Plaintiffs. *Id.* ¶¶ 121–23.

13    Defendants republished their defamatory statements in ████████████

14    ████, which Plaintiffs did not receive until September 2025. *Id.* ¶¶ 107–12. Within

15    weeks of learning of Defendants' false statements, Plaintiffs filed this action. *Id.*

16    ¶¶ 124–27, 132.

17    **LEGAL STANDARD**

18    California's anti-SLAPP law establishes "a two-step process." *Soukup v. L.*

19    *Offs. of Herbert Hafif*, 139 P.3d 30, 51 (Cal. 2006) (citation omitted). First, defendants

20    must make "a threshold showing" that the claims arise from "protected activity," *id.*,

21    and "defendants bear the burden of proof when asserting an affirmative defense."

22    *Goldberg v. Ruano*, 2023 WL 8143521, at *9 (C.D. Cal. 2023). Second, "[t]he

23    plaintiff need only establish that his or her claim has 'minimal merit,'" *Soukup*, 139

24    P.3d at 51 (citation omitted)—a "low standard." *Edward v. Ellis*, 287 Cal. Rptr. 3d

25    467, 477 (Cal. Ct. App. 2021).

26

27

28

- 3 -

When an anti-SLAPP motion "challenges only the legal sufficiency of a claim," a court must "apply the Federal Rule of Civil Procedure 12(b)(6) standard." *Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). That is true here. Mot. 7. Thus, "the court must accept as true all of the factual allegations contained in the complaint," "[v]iewing the allegations in the light most favorable to Plaintiffs." *Capelouto v. Muse*, 2025 WL 3898875, at *3–4 nn.1–2 (C.D. Cal. 2025). The Court "need not consider [Defendants]' evidentiary submissions" (*see* Pls.' Mot. to Strike), but Plaintiffs address them. *Id.* at *4 n.2.

## ARGUMENT

### I.    DEFENDANTS FAIL TO CARRY THEIR BURDEN ON THEIR ANTI-SLAPP MOTION.

#### A.    The Litigation Privilege Does Not Protect False Reports of Criminal Activity to Law Enforcement.

Defendants incorrectly argue their statements are protected by the litigation privilege. Mot. 9–11.

##### 1.    Defendants Bear the Burden on Their Privilege Defense.

"[T]he litigation privilege is an affirmative defense," so "Defendants bear the burden of showing it applies." *Goldberg*, 2023 WL 8143521, at *9; *see Gralow v. City of Palos Verdes Ests.*, 2024 WL 3001475, at *4 (C.D. Cal. 2024), *report and recommendation adopted*, 2024 WL 3088666 (C.D. Cal. 2024).

##### 2.    The Litigation Privilege Became a Qualified Privilege in 2021, Yet Defendants Rely on Outdated Caselaw.

"[D]efendants have failed to meet their burden…." *Hudacko v. Regents of the Univ. of California*, 2024 WL 3925716, at *4 (N.D. Cal. 2024). Defendants argue statements in official proceedings are absolutely privileged, yet admit (Mot. 10–11) California amended the law in 2021 to exclude from that privilege "**any communication between a person and a law enforcement agency in which the person makes a false report that another person has committed … a criminal act**

- 4 -

**or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report**." Cal. Civ. Code § 47(b)(5). Thus, "section 47(b)(5) now provides only a qualified privilege." *Gralow*, 2024 WL 3001475, at *5. This amendment was effective January 1, 2021, rendering caselaw addressing "pre-2021 conduct" "not persuasive." *Raymond v. Am. Airlines Grp., Inc.*, 2025 WL 1415332, at *2 (C.D. Cal. 2025).

Yet, every case Defendants cite on the privilege issue (Mot. 9–11) "erroneously relies on authorities predating the 2021 amendment of section 47(b)." *Gralow*, 2024 WL 3001475, at *5. Post-2020 cases recognize the privilege is now *qualified* for false reports to law enforcement. *See Mascorro v. City of Nat'l City*, 2025 WL 3205520, at *14 n.10 (S.D. Cal. 2025); *Raymond*, 2025 WL 1415332, at *2; *Implicit Conversions, Inc. v. Stine*, 2025 WL 360744, at *6 (N.D. Cal. 2025); *Gralow*, 2024 WL 3001475, at *5. Defendants' argument is based on dead law.

        3.    <u>Defendants Fail to Do the Work of Interpreting the Statutory Privilege They Rely On.</u>

With no relevant cases, Defendants skip the statute entirely, jumping straight to cherry-picked legislative history from a single committee report. Mot. 11. But statutory interpretation "begin[s] with the text," not with what a committee staffer might have written in a report. *Dep't of Corr. & Rehab. v. Workers' Comp. Appeals Bd.*, 563 P.3d 1099, 1103 (Cal. 2025). Only if the text is ambiguous may courts consult legislative history—and even then, committee reports are unreliable. *See Martinez v. Regents of Univ. of California*, 241 P.3d 855, 865 (Cal. 2010); *see also Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 673–74 (2020) (when meaning of "statute's terms is plain," courts' "job is at an end").

Defendants do not argue the statute is ambiguous. They cannot, because "its meaning is clear." *People v. McCune*, 553 P.3d 136, 143 (Cal. 2024). Section 47(b)(5) covers "*any* communication"—not "911 calls only." *See Implicit Conversions*, 2025

- 5 -

1    WL 360744, at *6 (section 47(b)(5) applies to "***a communication*** … ***such as*** a 911

2    call" (emphasis added)). It says "false report"—not "unsolicited report." It applies to

3    reports that someone engaged in "criminal activity" or "activity requiring law

4    enforcement intervention"—███████████████████████████████████████████

5    ████████████████████████████████████████.

6         "Even if there were a need to consult legislative history," California courts "are

7    not inclined to accept an isolated reference in a legislative committee report." *People*

8    *v. Harrison*, 339 Cal. Rptr. 3d 865, 876 (Cal. Ct. App. 2025). Doing so "give[s]

9    unrepresentative committee members—or, worse yet, unelected staffers and

10   lobbyists—both the power and the incentive to attempt strategic manipulations of

11   legislative history." *Martinez*, 241 P.3d at 865 (citation omitted). That seems evident

12   here, where the statute does not mention "911" or limit itself to situations involving

13   "harass[ment]" of "people of color," as Defendants argue it does. Mot. 11.

14        The committee report does not "alter [that] conclusion." *McCune*, 553 P.3d at

15   143. *First*, the bill amends both the generic privilege provision at issue here and the

16   Ralph Civil Rights Act addressing violent threats based on protected status, so it is

17   unclear what portions of the sentence Defendants rely on apply to which statute. Ex. 8

18   at 3. *Second*, the report notes the law is intended to cover "911 ***or other***

19   ***communications***." *Id.* (emphasis added). *Third*, the Senate Judiciary Committee

20   commented that section 47(b)(5) now "preclude[s]" the "defense that the report is

21   privileged" in response to "defamation" suits by victims of "bad faith" "report[s] [of]

22   crimes to" a "regulatory agency." *Id.* at 4. This is why legislative history, and

23   "committee reports … particularly," are "unreliable." *Pagel v. Dairy Farmers of Am.,*

24   *Inc.*, 986 F. Supp. 2d 1151, 1160 (C.D. Cal. 2013).

25

26

27

28

CASE NO. 2:25-CV-10432-SPG (JCx)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS THE COMPLAINT

1

          4.   <u>The Complaint Alleges Defendants "Reported" a "Crime" or Activity "Requiring Law Enforcement Intervention."</u>

2      Defendants do not even dispute their statements were "false"

3  "communications," or that the SEC is a "law enforcement agency," but argue they did

4  not "report" a "crime" or activity "requiring law enforcement intervention." Mot. 11.

5  This assertion without authority must be rejected. *Cf. Goldberg*, 2023 WL 8143521,

6  at *8–9 (denying motion to strike defamation and trade-libel claims because plaintiff

7  alleged reports "were falsified" and defendants cited no cases to "me[e]t their burden"

8  on "privilege").

9      The argument is also meritless. Because the statute does not define "crime" or

10  "report," this Court must "presume the words were intended to be understood in their

11  ordinary sense," *i.e.*, their "dictionary definitions." *In re Kavanaugh*, 275 Cal. Rptr.

12  3d 696, 712–13 (Cal. Ct. App. 2021) (cleaned up).

13      *First*, "the plain meaning of 'crime' is 'an illegal act for which someone can be

14  punished by the government.'" *Fulkerson v. Unum Life Ins. Co. of Am.*, 36 F.4th 678,

15  681 (6th Cir. 2022). The Complaint alleges Defendants knew the SEC, DOJ, and FBI

16  were jointly investigating potential criminal activity when they ███████████

17  ██████████. Defendants knew they could be indicted for the very thing they

18  accused Plaintiffs of doing. It's why they lied. It is inconceivable, in a case where Left

19  has been ***criminally charged*** and the substance of the defamatory statements is ████

20  ████████, that Defendants now pretend they did not allege criminal conduct.

21      Even if Left had not been charged with a crime based on Defendants'

22  statements, they would still plausibly allege criminal activity. Securities fraud and

23  wire fraud are obvious candidates. *See Left*, 2025 WL 2684201, at *2–3 (fraudulent

24  invoice scheme was key part of securities fraud charge); *United States v. Gerrans*,

25  477 F. Supp. 3d 1035 (N.D. Cal. 2020) (wire fraud involving fraudulent invoices),

26  *aff'd*, 2022 WL 73051 (9th Cir. 2022). As is money laundering given Anson is a

27

28

Canadian fund. *See* 18 U.S.C. § 1956(a)(2)(A) (criminalizing international transfers with intent to promote unlawful activity). Left could be charged with aiding and abetting or causing Citron to violate those statutes. 18 U.S.C. § 2. Given third-party Falcon's involvement, a conspiracy charge is also possible. 18 U.S.C. § 371.

At minimum, the statements allege activity "requiring law enforcement intervention." Indeed, the DOJ and SEC ***actually intervened*** by charging Left and suing Plaintiffs based on ███████████. The SEC also intervened and ordered Anson to cease and desist from using false invoices, citing as its sole example the invoices at issue here. Ex. 10 at 2 (¶¶ 2–3), 5 (¶¶ 18, 21–22), 7–8.

*Second*, as the Supreme Court explained, "report" has a "broad ordinary meaning," encompassing "'something that gives information' or a 'notification,' or '[a]n official or formal statement of facts or proceedings.'" *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 407–08 (2011) (quoting dictionaries). The Ninth Circuit similarly found "[t]he ordinary meaning of the verb 'report' is 'to give an account of: NARRATE, RELATE, TELL.'" *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 999 (9th Cir. 2017) (same). It could also mean "'to make a charge of misconduct against [another]' or 'to make known to the proper authorities: give notification of.'" *Id.* Section 47(b)(5)'s text confirms it adopts the broadest meaning of report as "giving information"—it excludes "any ***communication*** … in which the person makes a false report," not any ***report*** containing a false communication. The concern is not the *form* or *manner* of communication, but *what* was communicated. Defendants' statements "provide[d] information" and thus were "report[s]." *Relator LLC v. Lim*, 2025 WL 4052367, at *2 (N.D. Cal. 2025).

Even under a slightly narrower view of "report" as a "formal statement of facts" or "making known to the proper authorities," Defendants admit they were making a "disclosure of information to authorities" in "formal proceedings." Mot. 8, 10–11; *see*

- 8 -

1    *also Premium Plus Partners, L.P. v. Goldman, Sachs & Co.*, 648 F.3d 533, 534 (7th

2    Cir. 2011) ("*Wells* notices" are "formal"); *People v. Lopez*, 286 P.3d 469, 486 (Cal.

3    Ct. App. 2012) ("formal depositions").

4        Defendants suggest that because their ███████ statements were either

5    █████████████████ those statements cannot be "reports." Mot. 11. But

6    Puri's ██████ was voluntary; Defendants do not say they were asked, let alone

7    forced, to make *false* statements; and reports are made upon request all the time. *See,*

8    *e.g.*, *Wilson v. Murillo*, 78 Cal. Rptr. 3d 214, 218 (Cal. Ct. App. 2008) (deponent "[i]n

9    his deposition testimony … reported that…"). Moreover, Defendants are now taking

10    the *opposite* position in Left's criminal case; they refuse to appear for Rule 15

11    depositions, arguing the Court has no jurisdiction over them.

12        If Defendants' suggestion is the only way to report a crime is to seek out the

13    authorities, the statute doesn't say that, and the ordinary meaning of "report" doesn't

14    support it. Even if the statute were ambiguous, any ambiguity would be quickly

15    cleared up by looking at "related statutes." *Nguyen v. W. Digital Corp.*, 177 Cal. Rptr.

16    3d 897, 916 (Cal. Ct. App. 2014). California has a law criminalizing knowingly false

17    reports of crimes to law enforcement. Cal. Penal Code § 148.5. The California

18    Supreme Court has held that "[a] person who voluntarily supplies information about

19    a purported crime to a law enforcement officer makes a report," whether "in response

20    to a police inquiry or [] unsolicited." *People v. Lawson*, 161 Cal. Rptr. 7, 11 (Cal. Ct.

21    App. 1979). That is because "defamation of innocent reputations … is just as likely

22    to occur" in both scenarios. *Id.*; *accord People v. Seijas*, 114 P.3d 742, 752 (Cal.

23    2005). Defendants "may not have expected or intended that law enforcement officers

24    would" ████████████, but "they took advantage of the situation … to attempt

25    to implicate [Plaintiffs] in a criminal act." *Lawson*, 161 Cal. Rptr. at 11.

26

27

28

CASE NO. 2:25-CV-10432-SPG (JCX)
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS THE COMPLAINT



1    Defendants' wooden reading of "report" also leads to absurd results. Under

2    their interpretation, a person could falsely ████ someone committed a crime, cause

3    that person to be indicted, and escape all civil liability simply because they were

4    "responding to questions" rather than calling 911. If anything, false ████████

5    ████ is more dangerous than a false 911 call, as it carries the imprimatur of the ██.

6    Defendants' ████████████ were also voluntary, formal reports. *See SEC v.*

7    *Sands*, 902 F. Supp. 1149, 1167 (C.D. Cal. 1995) (referring to "a 'Wells' report"),

8    *aff'd*, 142 F.3d 1186 (9th Cir. 1998). Defendants dispute that their ████████

9    reported a crime by noting the purpose of ████████████████████

10    ████████████ Mot. 11. Plaintiffs agree Defendants tried to convince ████

11    ████████ against ***them*** by suggesting ████████ against ***Plaintiffs***

12    instead. That is why we're here.

13    Because the Complaint "alleges sufficient plausible facts … potentially within

14    the scope of section 47(b)(5)'s exception," it would be inappropriate "to dismiss the

15    claims related to [Defendants'] report[s] at this stage." *Mace v. JPMorgan Chase*

16    *Bank, N.A.*, 2022 WL 3013173, at *3 (C.D. Cal. 2022); *see, e.g.*, *Mascorro*, 2025 WL

17    3205520, at *14 n.10; *Implicit Conversions*, 2025 WL 360744, at *6; *Gralow*, 2024

18    WL 3001475, at *4–5 (all denying anti-SLAPP motions to strike defamation claims

19    based on alleged false reports).

20    **B.    The Limitations Period Should Be Tolled Because Plaintiffs Were**
        **Prevented from Accessing Defendants' False Statements.**

21

22    Defendants also erroneously argue the statutes of limitations on Plaintiffs'

       claims have run. Mot. 11–14.

23

24            1.    Defendants Bear the Burden on Their Limitations Defense.

25    "As the statute of limitations is an affirmative defense, [Defendants] bear[] the

26    burden of proving" it. *Delaney v. Delaney*, 2023 WL 8442213, at *5 (Cal. Ct. App.

27

28                                          - 10 -

2023);[1] *see, e.g.*, *Powertech Tech., Inc. v. Tessera, Inc.*, 872 F. Supp. 2d 924, 936 (N.D. Cal. 2012) (denying anti-SLAPP motion because it is unlikely "[defendant] will be able to prove that [plaintiff] delayed in bringing [its] claims").

The parties agree Plaintiffs' defamation claim is subject to a one-year limitation period and their business-disparagement claim to a two-year period, and the claims may be tolled from the date of publication through when the plaintiff discovers or should have discovered it. Mot. 11–13. "[T]he burden of pleading and proving plaintiff[s'] actual or constructive discovery of defendant[s'] wrongdoing falls on the defendant[s]." *Favila v. Katten Muchin Rosenman LLP*, 115 Cal. Rptr. 3d 274, 302 (Cal. Ct. App. 2010).

<u>2.    Plaintiffs Plausibly Alleged They Did Not Have Access to the Defamatory Statements Until October 2024.</u>

As alleged in detail, Plaintiffs had no access to the defamatory statements until after October 8, 2024, and the limitations periods were tolled from October 1–29, 2025. Compl. ¶¶ 121–23, 132. Thus, even if Plaintiffs had notice of the statements on October 8, 2024, their defamation and disparagement claims would not have expired until November 6, 2025, and November 6, 2026, respectively. Plaintiffs' claims, filed on October 30, 2025, are timely.

Defendants' limitations argument hinges on rejecting Plaintiffs' allegations about when they obtained access to the transcripts. Mot. 12. This Court may not do so. *See Johnson v. Altamirano*, 418 F. Supp. 3d 530, 560 (S.D. Cal. 2019) (court "must accept … as true" "Plaintiff[s'] allegations that [they were] prevented from accessing [the defamatory statements]"). Defendants urge the Court to credit their version of when Plaintiffs "should have known" based on extrinsic evidence—a factual dispute

---

[1] *See Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dep't*, 387 F. Supp. 2d 1084, 1103 n.7 (N.D. Cal. 2005) (California Rule of Court 8.1115 "is not binding in the federal courts").

that requires discovery. *See, e.g.*, *Urbano v. Timberlake*, 2023 WL 2628232, at *1–2 (C.D. Cal. 2023) (allowing discovery after defendant's "factual attack" on tolling).

3.    <u>Counsel's Access to Transcripts in November 2023 Has No Effect on the Business Disparagement Claim and Cannot Be Imputed.</u>

Defendants argue Plaintiffs were on inquiry notice of the statements as early as November 2023, when Defendants' lawyer sent ███████████████ transcripts to Plaintiffs' former counsel. Mot. 12.

*First*, the argument has no bearing on Plaintiffs' business-disparagement claim, which was filed less than two years after November 2023.

*Second*, as Defendants' own cited authority recognizes, "[t]he basis for imputing knowledge to the principal is that the agent has a ***legal duty to disclose*** information…." *Triple A Mgmt. Co. v. Frisone*, 81 Cal. Rptr. 2d 669, 678 (Cal. Ct. App. 1999) (emphasis added); *accord Bergstrom v. Zions Bancorporation, N.A.*, 293 Cal. Rptr. 3d 458, 466 (Cal. Ct. App. 2022). Accordingly, a client is only "held to know what his attorney knows ***and should communicate to him***," *i.e.*, had a legal "duty" to disclose. *Roche v. Hyde*, 265 Cal. Rptr. 3d 301, 332–33 (Cal. Ct. App. 2020) (emphasis added) (citation omitted).

Here, Plaintiffs' counsel was duty-bound ***not*** to share the transcripts with Plaintiffs. "[T]he knowledge of a lawyer (the agent) should not be imputed to his client (the principal) … where the agent is subject to a duty to another not to disclose the fact to the principal." *Ceja v. Scribner*, 2016 WL 4035665, at *7 (C.D. Cal. 2016) (citation omitted). Defendants cannot argue Plaintiffs' counsel had a legal duty to disclose the transcripts to Plaintiffs because ***Defendants contractually prohibited*** counsel from doing so. Compl. ¶¶ 122–23. The information in the transcripts cannot be imputed to Plaintiffs. *Cf. MouseBelt Labs Pte. Ltd. v. Armstrong*, 674 F. Supp. 3d 728, 736 (N.D. Cal. 2023) (attorney's knowledge not imputed to client where "[t]he Agreements are marked as confidential"); *Johnson*, 418 F. Supp. 3d at 560 (denying

- 12 -

motion to dismiss claim as time-barred where "defendants [] directed [Plaintiff's]
attorneys to prevent Plaintiff from accessing financial records").

> 4.    The Discovery Rule and Equitable Tolling Operate to Toll
>       Plaintiffs' Claims Through October 8, 2024.

The discovery rule and equitable tolling toll the limitation periods on Plaintiffs'
claims through October 8, 2024. As Defendants' cited authority notes, "[t]he
discovery rule does not trigger accrual of a cause of action unless the plaintiff has
some reason to suspect *wrongdoing*"; if he "discovers only that he has been injured
but not that the injury may have a wrongful cause, then the clock has not yet begun to
run." *Bennett v. C. R. Bard, Inc.*, 2025 WL 1132825, at *1 (9th Cir. 2025) (emphasis
in original); *accord Ward v. Westinghouse Canada, Inc.*, 32 F.3d 1405, 1407 (9th Cir.
1994); *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920 (Cal. 2005).

"Equitable tolling may be applied if, despite all due diligence, a plaintiff is
unable to obtain vital information bearing on the existence of his claim." *Garcia v.
Brockway*, 526 F.3d 456, 465 (9th Cir. 2008) (citation omitted). That is true when a
plaintiff "cannot obtain information necessary to decide whether [his] injury is due to
wrongdoing and, if so, wrongdoing by the defendant." *Id.* (same).

Here, Plaintiffs had no reason to suspect the government's allegations derived
from █████, as opposed to incorrect inferences the government drew from the invoices
or parties' communications. After reading the charging documents, Left did not
suspect wrongdoing but "thought it must be a mistake." Compl. ¶ 120. It was only
"when reviewing discovery for the first time" in 2025 that Left "discovered … Anson
and its principals had ████████████████████████." *Id.* ¶ 124. "Accepting those
factual allegations as true," Plaintiffs "neither knew nor had any reason to suspect that
[their] condition was attributable to" lies "until [2025]." *Bekins v. AstraZeneca
Pharms. LP*, 739 F. App'x 884, 886 (9th Cir. 2018); *see Jolly v. Eli Lilly & Co.*, 751

- 13 -

P.2d 923, 927 (Cal. 1988); *see, e.g., Bennett*, 2025 WL 1132825, at *1 ("plaintiff could have believed it was injured as a result of 'innocent mistakes'").

Defendants argue Plaintiffs "should have known about" the defamation by June–July 2024 through the Indictment, SEC Complaint, and SEC-Anson settlement. Mot. 13–14. But these documents only state the government's conclusion that Plaintiffs directed the use of false invoices, not *how* the government arrived at it. Defendants do not explain why Left should have suspected his "friend" of ███ ███. Compl. ¶ 4. Further, the only ones who knew the government based its allegations on ███ were the government and Defendants. Plaintiffs sought that information from the government in discovery, but it was not produced until October 2024. *Id.* ¶¶ 121–23. And Defendants repeatedly made clear to Plaintiffs that they *never* ███ ███ (*id.* ¶ 133), and refused to let Plaintiffs access Defendants' actual statements proving otherwise. *Id.* ¶ 122.

5.    ███lished the Defamatory Statements in Their ███

Defendant do not dispute Plaintiffs first received Defendants' ███ ███ in September 2025, nor argue Plaintiffs should have known about the statements therein sooner. Recognizing that "republishing the same defamatory information gives rise to a new cause of action," *Moser v. Triarc Co.*, 2007 WL 1111245, at *3 (S.D. Cal. 2007), Defendants argue that the defamatory statements in those submissions were not republications of the defamatory testimony because they "cite to and quote Defendants' ███" and were to the same audience (███). Mot. 14.

Defendants rely on *Yeager v. Bowlin*, 693 F.3d 1076 (9th Cir. 2012). *Yeager* applied the "single-publication rule," which "limits tort claims premised on *mass communications* to a single cause of action that accrues upon the first publication of

- 14 -

the communication." *Id.* at 1081 (emphasis added) (citation omitted). Unless it is an
"aggregate communication that reaches a large number of persons at the same time,"
"each of several communications to a third person by the same defamer is a separate
publication." Rest. 2d Torts § 577A & cmts. 2–3 (1977). The rule has no relevance to
Defendants' statements in ██████████ to a single entity.

Even if the rule applied, Defendants misconstrue it. For print publications, a
statement is republished when it appears in a new *edition* but is a single publication
when it appears in *copies* of that edition. *Yeager*, 693 F.3d at 1082. Because applying
that principle "to nontraditional publications can be tricky," courts developed "[o]ne
general rule [] that a statement is republished when it is repeated … to a new
audience." *Id.* (cleaned up). That rule is permissive, not restrictive. Republication also
occurs when the statement is published to the same audience but "is substantively
altered or added to." *Id.* Accordingly, the rule "does not stand for the principle that a
republication ***must*** reach a substantially new audience or contain different statements
in order to give rise to a new cause of action." *Moser*, 2007 WL 1111245, at *3
(emphasis added).

Regardless, Defendants *did* "alter or add to" their testimony. They did not
simply attach copies of or cite their transcripts but repackaged and reformulated their
██████, and for the first time expressly accused Citron of ██████████
██████. Compl. ¶¶ 107–12. Defendants recognize this; they only argue
their ██████████ was ██████ not their ██████████. Mot. 15.
"[T]his rule cannot render Plaintiff[s'] claims time-barred." *Moser*, 2007 WL
1111245, at *3.

6.    Defendants' Arguments Demonstrate Why Discovery Is Needed.

Defendants' statute-of-limitations arguments and reliance on extrinsic material
illustrate why "a statute of limitations defense is typically a factual question." *San*

- 15 -

*Francisco Unified School Dist. v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318, 1325 (Cal. Ct. App. 1995). That includes "the question of when [Plaintiffs] [were] on inquiry notice of potential wrongdoing." *Ward*, 32 F.3d at 1408. Ruling on Defendants' limitations defense would be premature.

**C.    The Complaint More Than Plausibly Alleges Defamation and Business Disparagement.**

Defendants lastly argue Plaintiffs fail to state a claim. Mot. 14–20.

1.    Plaintiffs Plausibly Alleged Falsifiable Statements.

The Complaint alleges Defendants falsely told ███████████████

████████████████████████████████████████████████████████

███████████. Defendants do not dispute Plaintiffs alleged this was false but argue Defendants only █████████████ made that assertion, so it's not "provably false." Mot. 15.

These are not ambiguous, but clear, factual assertions: ████████████████

████████████ Compl. ¶ 94. ██████████████████████ *Id.* ¶ 97. ███████████████████████████████████████████████████

██████████████ *Id.* ¶ 108; *see also id.* ¶¶ 112, 117, 119. Each statement is falsifiable. *See ZL Techs., Inc. v. Does 1–7*, 220 Cal. Rptr. 3d 569, 592 (Cal. Ct. App. 2017).

Defendants cherry-pick a statement by Puri in which he purportedly ██████ when he said it was his █████████████████████████████████

████████ Mot. 15. Defendants ignore, and in their evidentiary submissions omit, numerous instances in which their statements were *unqualified. See, e.g.*, Ex. 6 at ██████████████████████████████. Nor do they dispute, as noted, that the statements in their █████████████ were unequivocal.

Defendants cite no authority for their argument. No wonder. "[It] would be destructive of the law of libel if a writer could escape liability for accusations of

- 16 -

[defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.'" *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 19 (1990) (alterations in original) (citation omitted). As the Supreme Court explained, "[i]f a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth." *Id.* at 18–19. California courts have also "reject[ed] the notion that merely couching an assertion of a defamatory fact in cautionary language … necessarily defuses the impression that the speaker is communicating an actual fact." *Weller v. Am. Broad. Companies, Inc.*, 283 Cal. Rptr. 644, 652 (Cal. Ct. App. 1991); *accord Overstock.com, Inc. v. Gradient Analytics, Inc.*, 161 Cal. Rptr. 3d 29, 42 (Cal. Ct. App. 2007).

No amount of "it's my understanding" or "I believe" can spare Defendants from having to answer for their express and implied factual assertions. *Cf. Visant Corp. v. Barrett*, 2013 WL 3450512, at *7 (S.D. Cal. 2013) (jury could find emails "declared or implied provably false statements of fact," despite being qualified with "***it is my understanding***" (emphasis added)); *Bently Rsrv. LP v. Papaliolios*, 160 Cal. Rptr. 3d 423, 430 (Cal. Ct. App. 2013) ("Hedging his statements … does not insulate them from examination.").

2.    Plaintiffs Plausibly Alleged Defendants' Statements Were
      Defamatory and Defamatory *Per Se.*

Defendants concede that alleging someone engaged in criminal activity is defamation *per se* but argue the statements at issue are not defamatory at all, because they are based on ███████████████ allege no "criminal conduct," and require "context" to establish their defamatory meaning. Mot. 15–16. As Plaintiffs have just shown, Defendants' occasional "qualifiers" do not make them immune from liability, and they plainly asserted criminal conduct. *Supra* Parts I.A.4, I.C.1. And Defendants do not, and could not, dispute that indicating someone ████████ ██████████████ is defamatory. *See, e.g., Appel v. Wolf*, 839 F. App'x 78, 81 (9th

- 17 -

Cir. 2020) ("insinuation that [plaintiff] had been involved in securities fraud" was defamatory); *see also Pentalpha Macau Com. Offshore Ltd. v. Reddy*, 2004 WL 2738925, at *2 (N.D. Cal. 2004) ("[A]ccusations that an individual has committed a crime or is personally dishonest are properly the subject of a defamation action." (citation omitted)). Such statements are also defamation *per se* because they "imput[e] dishonesty" and "questionable business methods" to Plaintiffs. *Balla v. Hall*, 273 Cal. Rptr. 3d 695, 724–25 (Cal. Ct. App. 2021) (citation omitted).

As for Defendants' final argument, Defendants are wrong that "extrinsic facts" (Mot. 16) are needed to understand the defamatory content of the statements; the concern about false invoices is apparent from the surrounding context. *See, e.g.*, Compl. ¶¶ 112, 115 (statement in ███████████ came immediately after noting ████████████████████████████████████); Ex. 6 at ██████ ██████ (statement in response to questions ██████████████████████████ ████████████████████████████████████████████████████████ ███████████). Defendants also overlook Plaintiffs' republication theory whereby the DOJ and SEC republished ████████████████ in the Indictment and SEC Complaint. Compl. ¶¶ 136–37, 144–45. The defamation in those republications is straightforward and direct: Left directed payment through an "intermediary" using "false invoices" to "conceal" wrongdoing. *Id.* ¶¶ 117, 119.

Regardless, "a defamatory statement can either be 'expressly stated or implied.'" *Bauer v. Athletic Media Co.*, 2022 WL 18586268, at *14 (C.D. Cal. 2022) (quoting *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 889 (9th Cir. 2016)). For implied defamation, the statement need only "be reasonably understood to imply the allegedly defamatory content" in "***context***." *Id.* (emphasis added). Defendants argue that "[o]nly by layering on extensive background … can Plaintiffs construct a defamatory interpretation." Mot. 16. But they ignore that the target audience of their

defamatory statements *was* ████████, which possessed this "background." *See Bently Reserve*, 160 Cal. Rptr. 3d at 429–30 ("contextual analysis" includes "knowledge and understanding of *the audience targeted by the publication*" (emphasis added)).

### 3.    Plaintiffs Plausibly Alleged Defendants' Statements Derogated the Character of Plaintiffs' Business.

The Complaint alleges Defendants accused Plaintiffs of ██████████ ████████████. Defendants argue that for business disparagement, the statements needed to derogate not just the business but its "services or product." Mot. 17.

Yet, Defendants acknowledge, a disparaging statement "specifically refers to" and "clearly derogates" a plaintiff's "product *or business*." *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 326 P.3d 253, 256 (Cal. 2014) (emphasis added). Thus, "the salient objects of the disparagement are 'the goods a plaintiff sells *or the character of his … business.*'" *Kovesdy v. Kovesdy*, 2010 WL 3619826, at *4 (N.D. Cal. 2010) (emphasis in original) (citation omitted); *see also Thee Aguila, Inc. v. Penn Star Ins. Co.*, 2020 WL 6743594, at *4 (C.D. Cal. 2020) ("disparagement[] may consist of" derogating plaintiff's "***business in general***" (emphasis added)). "[D]erogation and specific reference" may "be satisfied by express mention or by clear implication." *Hartford Casualty Insurance*, 326 P.3d at 256, 263.

Here, "Defendants' allegedly defamatory statements … certainly bear[] upon the character of [Plaintiffs'] business." *Kovesdy*, 2010 WL 3619826, at *4. Accusing a business of engaging in ████████ clearly disparages its character. *See, e.g.*, *Yelp Inc. v. Superior Ct.*, 224 Cal. Rptr. 3d 887, 901 (Cal. Ct. App. 2017) (comment "impl[ying]" tax return "was prepared *improperly and inaccurately*" "could support" trade-libel claim); *Gwire v. Blumberg*, 2013 WL 5493399, at *9–13 (Cal. Ct. App. 2013) (affirming denial of anti-SLAPP motion to strike defamation *per se* and trade-

- 19 -

libel claims where plaintiff was accused of "billing fraud"). Defendants specifically
targeted Citron in their ███████████, and Citron is charged in the SEC case (and
repeatedly mentioned throughout the DOJ's Indictment). Compl. ¶ 112. And their
statements about Left were also about his business because Citron is a "sole
proprietorship." *Kovesdy*, 2010 WL 3619826, at *4; *see* Compl. ¶¶ 3–5.

### 4.    Defendants Failed to Establish Their Statements Were Privileged.

Defendants incorporate their litigation-privilege argument. Mot. 17. As earlier
explained, Defendants failed to carry their burden on this defense. *Supra* Part I.A.

### 5.    Plaintiffs Plausibly Alleged Defendants Acted with Malice.

Defendants argue business disparagement requires malice and because Left is
a public figure, Plaintiffs' defamation claim does too. Mot. 17. But Defendants do not
argue Citron is a public figure and inappropriately rely on hearsay news articles about
Left. Regardless, "[t]he mere fact that [Left] was mentioned in news articles … is
insufficient to transform him into a 'public figure.'" *Henley v. Jacobs*, 2019 WL
8333524, at *13 (N.D. Cal. 2019).

Even assuming Plaintiffs are public figures, the Complaint plausibly alleges
Defendants made their statements with malice, *i.e.*, "with knowledge of their false
implications or with reckless disregard of their truth." *Capelouto*, 2025 WL 3898875,
at *4 (quoting *Manzari*, 830 F.3d at 891). "As to the *complaint*, the Federal Rules of
Civil Procedure require only that '[m]alice … be averred generally.'" *Flowers v.
Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002) (emphasis in original) (citation
omitted); *see* Fed. R. Civ. P. 9(b). While Plaintiffs did not have to "alleg[e]
corroborating evidence," they have "done more than simply allege that [they] w[ere]
'libeled with malice.'" *Flowers*, 310 F.3d at 1131. Plaintiffs set forth in excruciating
detail why Defendants knew their statements were false when made and why they had
every incentive to lie. Compl. ¶¶ 8–12, 58–86, 104–15, 140, 148.

- 20 -

Defendants' arguments demonstrate why "'actual malice' presents a question of fact." *Manzari*, 830 F.3d at 891. "Actual malice is a subjective standard that turns on the defendant's state of mind," and "cannot be properly disposed of by a motion to dismiss." *Flowers*, 310 F.3d at 1131 (citation omitted); *see, e.g.*, *Gressett v. Contra Costa Cnty.*, 2013 WL 6671795, at *6 (N.D. Cal. 2013).

### 6.    Plaintiffs Plausibly Alleged They Suffered Special Damages.

Defendants concede Plaintiffs need not show special damages for defamation *per se* (Mot. 18), which Plaintiffs adequately allege. *Supra* Part I.C.2. Defendants also recognize Plaintiffs can show special damages through "general business loss," and do not even dispute Plaintiffs alleged they suffered special damages. Mot. 20. Defendants' ***only*** argument is that Plaintiffs have not alleged a sufficient causal connection between the defamatory statements and Plaintiffs' special damages but have only alleged damages from the enforcement actions generally. Mot. 18–20. But Defendants admit Plaintiffs had to spend more in attorneys' fees and costs defending against the specific allegations in the Indictment and SEC Complaint stemming from the defamatory statements. Mot. 19 (Left's Motion to Strike Surplusage). This ends the inquiry. *See Storm Mfg. Grp. Inc. v. Weather Tec Corp.*, 2013 WL 5352698, at *9 (C.D. Cal. 2013) ("attorney's fees and costs" are "a form of special damages" if "not as a result of plaintiff's own prosecution of a lawsuit").

Regardless, the Complaint alleges "Left has been indicted by the DOJ, and Plaintiffs have been sued by the SEC, at least in part ***because of Defendants'*** █████ ██████████████," and, as a result, "Plaintiffs had to cut back on trading"— "how Left makes his living"—"and divert their efforts to defending themselves," causing Plaintiffs "millions of dollars in probable earnings," "defense costs, including attorneys' fees and legal expenses … exceed[ing] $1,000,000," "humiliation, damage to reputation, lost business opportunities, and other pecuniary damage." Compl.

- 21 -

1    ¶¶ 127–30, 142, 150 (emphasis added). That suffices at the pleading stage. *Cf.*

2    *Ramirez v. Midland Credit Mgmt., Inc.*, 2023 WL 2277108, at *2 (N.D. Cal. 2023)

3    ("lost earnings" "resulting from … a lawsuit" alleged special damages); *Gallagher v.*

4    *Philipps*, 563 F. Supp. 3d 1048, 1082 (S.D. Cal. 2021) ("additional time away from

5    work … during the extended time for trial resulting from the 'investigation' into the

6    leaked information being disclosed by Defendant" alleged special damages); *Botosan*

7    *v. Fitzhugh*, 13 F. Supp. 2d 1047, 1053 (S.D. Cal. 1998) ("attorney's fees" and

8    "humiliat[ion]" were special damages); *Pulver v. Avco Fin. Servs.*, 227 Cal. Rptr. 491,

9    500 (Cal. Ct. App. 1986) ("loss of … earning capacity" "as a result of defendant's

10   report to credit reporting agencies" alleged special damages).

11       Defendants note that Plaintiffs' attorneys, in briefs filed in the DOJ case,

12   summarized the charges against Left without highlighting the false-invoices issue and

13   moved to strike the invoice-related allegations as irrelevant, and argue this somehow

14   estops Left and (oddly) Citron from arguing here that the defamatory statements

15   contributed to the charges and caused Plaintiffs damages. Mot. 19.

16       *First*, attorneys' litigation positions are not evidence and do not bind their

17   clients in other proceedings. *See Comstock v. Humphries*, 786 F.3d 701, 709 (9th Cir.

18   2015) ("[A]rguments in briefs are not evidence").

19       *Second*, Defendants omit that the DOJ opposed Plaintiffs' motion to strike,

20   arguing the allegations that Left tried to "cover up" his relationship with Anson by

21   directing the use of false invoices was "***central to [Left]'s market manipulation***

22   ***scheme***" (*i.e.*, Counts 1–18 of 19)—and the DOJ won. *United States v. Left*, No. 24-

23   cr-00456-TJH (C.D. Cal.), ECF No. 100 at 4–5 (emphasis added) (arguing it showed

24   "Defendant took concerted efforts to hide the truth" that he was being compensated

25   not just by Anson, but by "hedge funds" generally, and thus was not as "independent"

26

27

28

as he had claimed to the public); *see also Left*, 2025 WL 2684201, at *2 (discussing the invoices).

At best, Defendants raise a fact issue. "Causation is generally a question of fact for the jury, unless reasonable minds could not dispute" its absence. *RingCentral, Inc. v. Nextiva, Inc.*, 2021 WL 2476879, at *7 (N.D. Cal. 2021) (discussing trade-libel special damages) (citation omitted).

## II.    DEFENDANTS' RULE 12(B)(6) MOTION FAILS ALONG WITH THEIR ANTI-SLAPP MOTION.

Because Defendants base their Rule 12(b)(6) motion on the same meritless arguments raised in their anti-SLAPP motion (Mot. 20–21), it too fails.

## III.    PLAINTIFFS SHOULD BE ALLOWED TO AMEND IF NECESSARY.

Plaintiffs should be permitted to amend if necessary. *See Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (granting anti-SLAPP motion without leave to amend would violate Rule 15(a)); *Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1140 (C.D. Cal. 2015) ("it is generally error" to do this), *aff'd*, 853 F.3d 1004 (9th Cir. 2017).

## CONCLUSION

The Could should deny the Motion.

Dated: January 26, 2026

/s/ Eric S. Rosen
Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani

**DYNAMIS LLP**

*Attorneys for Plaintiffs Andrew Left and Citron Capital, LLC*

- 23 -

## **CERTIFICATE OF COMPLIANCE**

I certify, as counsel for Plaintiffs Andrew Left and Citron Capital, LLC, that this memorandum of points and authorities contains 7,000 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 26, 2026                    */s/ Yusef Al-Jarani*
                                            Yusef Al-Jarani