QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Robert M. Schwartz (Bar No. 117166)
    robertschwartz@quinnemanuel.com
  Bomie Lee (Bar No. 356618)
    bomielee@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

  William Burck (*pro hac vice*)
    williamburck@quinnemanuel.com
  Kurt Wolfe (*pro hac pending*)
    kurtwolfe@quinnemanuel.com
  Kristin Casey (*pro hac vice*)
    kristincasey@quinnemanuel.com
555 13th Street, NW
Washington, DC 20004
Telephone: (202) 538-8000
Facsimile:  (202) 538-8100

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

ANDREW LEFT and CITRON
CAPITAL, LLC,

           Plaintiffs,

      vs.

ANSON FUNDS MANAGEMENT LP,
ANSON ADVISORS, INC., MOEZ
KASSAM, and SUNNY PURI,

           Defendants.

Case No. 2:25-cv-10432−SPG-AYP

**DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO
(1) STRIKE THE COMPLAINT
PURSUANT TO CALIFORNIA'S
ANTI-SLAPP STATUTE (C.C.P.
§ 425.16), OR IN THE
ALTERNATIVE, (2) DISMISS THE
COMPLAINT PURSUANT TO
RULE 12(b)(6)**

**<span style="color:red">REDACTED VERSION OF
DOCUMENT PROPOSED TO BE
FILED UNDER SEAL</span>**

Judge: Hon. Sherilyn Peace Garnett

Hearing Date:    February 25, 2026
Hearing Time:    1:30 pm
Location:           Courtroom 5C

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................... 1

I.    PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THEIR CLAIMS HAVE LEGAL MERIT ............................................ 1

    A.    Even After the 2021 Amendment, Defendants' Statements Fall Under the Litigation Privilege. ................................ 1

        1.    The Text and History Confirm That § 47(b)(5) Does Not Apply. ................................................................. 1

        2.    Defendants' Caselaw Is Not "Outdated." ...................... 4

    B.    Plaintiffs Cannot Overcome the Statute of Limitations. .......... 4

        1.    The Discovery Rule Does Not Save the Defamation Claim. ......................................................................... 4

        2.    Plaintiffs' Defamation and Trade Libel Claims Cannot Be Saved by the Equitable Tolling Doctrine. ................... 7

        3.    Defendants' ███████████████ Are Not Republications. ........... 8

    C.    Plaintiffs Cannot Plausibly Allege Elements of Their Claims. ............ 10

        1.    Plaintiffs Failed to Plausibly Allege That Defendants' Statements Are Defamatory *Per Se*. ............................. 10

        2.    Plaintiffs Failed to Plausibly Allege Derogation to Their Product or Business. .................................................. 11

        3.    Plaintiffs Failed to Plausibly Allege Actual Malice. ................ 12

        4.    laintiffs Failed to Plausibly Allege Causation. ........................ 13

II.    IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE COMPLAINT UNDER RULE 12(B)(6) ...................................... 14

III.    THE COURT SHOULD DENY LEAVE TO AMEND .................... 15

CONCLUSION.......................................................................... 15

1

# TABLE OF AUTHORITIES

2

**Cases**                                                                                     **Page**

3

*Annette F. v. Sharon S.*,
   119 Cal. App. 4th 1146 (2004) ............................................................. 12

4

*Appel v. Wolf*,
   839 F. App'x 78 (9th Cir. 2020) .......................................................... 10

5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................... 13

6

*Balla v. Hall*,
   59 Cal. App. 5th 652 (2021) ............................................................... 11

7

8

*Barker v. Fox & Assoc.*,
   240 Cal. App. 4th 333 (2015) ............................................................. 10

9

*Bates v. Poway Unified Sch. Dist.*,
   83 Cal. App. 5th 907 (2022) ................................................................. 3

10

11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................... 13

12

*Botosan v. Fitzhugh*,
   13 F. Supp. 2d 1047 (S.D. Cal. 1998) ................................................. 14

13

14

*Bullard v. City of New York*,
   2004 WL 875730 (S.D.N.Y. Apr. 23, 2004) ......................................... 2

15

*ComputerXpress, Inc. v. Jackson*,
   93 Cal. App. 4th 993 (2001) ........................................................... 1, 11

16

17

*FastVDO LLC v. AT&T Mobility LLC*,
   2016 WL 9049521 (S.D. Cal. July 25, 2016) ........................................ 5

18

*Flowers v. Carville*,
   310 F.3d 1118 (9th Cir. 2002) ............................................................ 13

19

20

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) .......................................................................... 7

21

*Future Ads LLC v. Gillman*,
   2013 WL 12306479 (C.D. Cal. Dec. 23, 2013) ................................... 14

22

*Gallagher v. Philipps*,
   563 F. Supp. 3d 1048 (S.D. Cal. 2021) .............................................. 14

23

24

*Garcia v. Brockway*,
   526 F.3d 456 (9th Cir. 2008) ................................................................ 7

25

26

*Gopher Media LLC v. Melone*,
   2023 WL 8790266 (S.D. Cal. Dec. 19, 2023) ..................................... 14

27

*Gralow v. City of Palos Verdes Ests.*,
   2024 WL 3001475 (C.D. Cal. May 22, 2024) ....................................... 3

28

*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*,
  59 Cal. 4th 277 (2014) ...................................................................... 11

*Hebrew Acad. of San Francisco v. Goldman*,
  42 Cal. 4th 883 (2007) ...................................................................... 9

*Henreid v. Haynes*,
  2025 WL 1116696 (E.D. Cal. Apr. 15, 2025) ................................... 4

*Horwich v. Superior Ct.*,
  21 Cal. 4th 272 (1999) ...................................................................... 3

*Hughes v. Bd. of Architectural Examiners*,
  17 Cal. 4th 763 (1998) ...................................................................... 3

*Implicit Conversions, Inc. v. Stine*,
  2025 WL 360744 (N.D. Cal. Jan. 30, 2025) ...................................... 4

*In re First T.D. & Inv., Inc.*,
  253 F.3d 520 (9th Cir. 2001) ............................................................ 3

*Jolly v. Eli Lilly & Co.*,
  44 Cal. 3d 1103 (1988) ................................................................... 6, 7

*Kovesdy v. Kovesdy*,
  2010 WL 3619826 (N.D. Cal. Sept. 13, 2010) ................................ 11

*Lantzy v. Centex Homes*,
  31 Cal. 4th 363 (2003) ...................................................................... 7

*Litinsky v. Kaplan*,
  40 Cal. App. 5th 970 (2019) ............................................................. 1

*Mace v. JPMorgan Chase Bank, N.A.*,
  2022 WL 3013173 (C.D. Cal. July 21, 2022) .................................... 4

*Mangini v. Aerojet-Gen. Corp.*,
  230 Cal. App. 3d 1125 (1991) ........................................................... 4

*Mascorro v. City of Nat'l City*,
  2025 WL 3205520 (S.D. Cal. Nov. 17, 2025) ................................... 3

*Med. Marijuana, Inc. v. ProjectCBD.com*,
  46 Cal. App. 5th 865 (2020) ........................................................... 15

*Muddy Waters, LLC v. Superior Ct.*,
  62 Cal. App. 5th 905 (2021) ........................................................... 14

*Norgart v. Upjohn Co.*,
  21 Cal. 4th 383 (1999) ...................................................................... 7

*Oja v. U.S. Army Corps of Eng'rs*,
  440 F.3d 1122 (9th Cir. 2006) ...................................................... 9, 10

*O'Hara v. Storer Commc'ns, Inc.*,
  231 Cal. App. 3d 1101 (1991) ......................................................... 14

*Palm Springs Tennis Club v. Rangel*,
  73 Cal. App. 4th 1 (1999) ............................................................... 10

*Penrose Hill, Ltd. v. Mabray,*
  479 F. Supp. 3d 840 (N.D. Cal. 2020) ...................................................... 9

*Pentalpha Macau Com. Offshore Ltd. v. Reddy,*
  2004 WL 2738925 (N.D. Cal. Dec. 1, 2004) ....................................... 11

*Ramirez v. Midland Credit Mgmt., Inc.,*
  2023 WL 2277108 (N.D. Cal. Feb. 27, 2023) ..................................... 14

*Raymond v. Am. Airlines Grp., Inc.,*
  2025 WL 1415332 (C.D. Cal. Mar. 17, 2025) ...................................... 3

*Reader's Dig. Assn. v. Superior Ct.,*
  37 Cal. 3d 244 (1984) ...................................................................... 12

*Resolute Forest Prods., Inc. v. Greenpeace Int'l,*
  302 F. Supp. 3d 1005 (N.D. Cal. 2017) .......................................... 12, 13

*Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health,*
  9 Cal. 5th 710 (2020) ......................................................................... 7

*Shively v. Bozanich,*
  31 Cal. 4th 1230 (2003) ..................................................................... 5

*Simmons v. Allstate Ins. Co.,*
  92 Cal. App. 4th 1068 (2001) ........................................................... 15

*Wynn v. Chanos,*
  75 F. Supp. 3d 1228 (N.D. Cal. 2014) ........................................... 12, 13

*Yeager v. Bowlin,*
  693 F.3d 1076 (9th Cir. 2012) ............................................................ 9

*Yelp Inc. v. Superior Ct.,*
  17 Cal. App. 5th 1 (2017) .................................................................. 11

**Statutes**

Cal. Civ. Code § 3425.3 ........................................................................ 9

Cal. Civ. Code § 47 .................................................................... 1, 2, 3, 4

Cal. Code Civ. P. § 425.16 ..................................................................... 1

**Other**

Rule 12(b)(6) ............................................................................... 14, 15

Cal. Rule of Prof. Conduct 1.4 ............................................................... 5

## PRELIMINARY STATEMENT

Plaintiffs Andrew Left and Citron Research do not contest that Defendants satisfy the first step of California's anti-SLAPP statute: that Plaintiffs' claims arise from Defendants' exercise of their right of free speech on a matter of public interest. Here, that speech takes the form of ██████████████████████████ ████, each of which is a "written or oral statement or writing made before … any other official proceeding authorized by law." Cal. Code Civ. P. § 425.16(e)(1); *see also ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1009 (2001) (SEC proceedings are "official proceeding[s] for purposes of section 425.16").

Accordingly, the burden has shifted to Plaintiffs to demonstrate that their claims have legal merit. *See Litinsky v. Kaplan*, 40 Cal. App. 5th 970, 979–80 (2019); Cal. Code Civ. P. § 425.16(b)(1). As detailed below, they have failed to do so: (1) Defendants' ████████████████████████ do not fall within the narrow carveout to California's litigation privilege for false reports of a crime; (2) Plaintiffs' claims are time-barred; and (3) Plaintiffs cannot plead elements of their claims. The Court should grant Defendants' Motion and strike the Complaint.

## ARGUMENT

I. **PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THEIR CLAIMS HAVE LEGAL MERIT**

    A. <u>**Even After the 2021 Amendment, Defendants' Statements Fall Under the Litigation Privilege.**</u>

        1. **The Text and History Confirm That § 47(b)(5) Does Not Apply.**

Cal. Civ. Code § 47(b)(5) excludes from the litigation privilege "any communication between a person and a law enforcement agency in which the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement

intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report."

Plaintiffs argue that the carveout should be read to cover "any *communication* … in which the person makes a false report." Opp., at 8 (emphasis and ellipsis in original). But Plaintiffs have left out critical language. They ignore the part of the statute directed to requests "requiring law enforcement intervention," *i.e.*, prompt deployment of law enforcement personnel to stop a crime from being committed or to apprehend the perpetrator. Cal. Civ. Code § 47(b)(5). This is not such a case.

*First*, Messrs. Kassam and Puri did not reach out to and contact the government. The government had already launched an investigation into short sellers like Andrew Left in 2018. Compl. ¶ 87. Defendants' statements did not trigger the government's intervention.

*Second*, Defendants did not report that a crime, such as securities or wire fraud, had been or was being committed. Instead, taking the Complaint as true, they provided information in response to the government's inquiries—specifically, that it was ███████████████████████████████████████████████████████

███████████████████████████████████████ *Id.* ¶¶ 94, 97, 108–9.

*Third*, far from *seeking* "law enforcement intervention," Defendants sought to convince the government *not* to take action. Cal. Civ. Code § 47(b)(5); *see also* Compl. ¶ 107 (Defendants sought "to convince the agency to forgo charges."); *Bullard v. City of New York*, 2004 WL 875730, at *3 (S.D.N.Y. Apr. 23, 2004) (noting that *Wells* submissions seek to persuade the SEC that no violation has occurred or that it is not serious).

Defendants' conduct is not what the Legislature intended to address when it amended Cal. Civ. Code § 47. Plaintiffs do not and cannot dispute that the Legislature added the carveout to stop the 911 emergency system from being used to violate the rights of protected class members by summoning the police to their homes to be harassed. *See* Ex. 1 to Reply (A.B. 1775, 2020 Cal. Legis. Serv. Ch.

2

327). As the A.B. 1775 report from the Senate Committee on Public Safety explains, the Legislature amended § 47 to tackle false reports of a crime against members of a protected class and mitigate harm to the police. *See* Ex. 8 to Mot., at 3.

Plaintiffs ask the Court to ignore the legislative history, including the Senate Committee's report (Ex. 8 to Mot.), on the grounds that the statute's text is unambiguous. *See* Opp., at 5. But in urging a contrary interpretation of that text, Plaintiffs are necessarily claiming that it is ambiguous and, thus, that it is proper for the Court to consider the legislative history. *See, e.g.*, *Hughes v. Bd. of Architectural Examiners*, 17 Cal. 4th 763, 776 (1998) ("In view of the statutory language itself and the contrasting but reasonable interpretations the parties have derived from that language, it appears that the statutes must be considered to be ambiguous."); *Horwich v. Superior Ct.*, 21 Cal. 4th 272, 277 (1999) (courts may consult legislative history where terms "are subject to different interpretations"). Even if unambiguous, courts may look at extrinsic materials to ensure that "'the literal meaning of the statute comports with its purpose.'" *Bates v. Poway Unified Sch. Dist.*, 83 Cal. App. 5th 907, 928–29 (2022). After all, the "'ultimate task' in statutory interpretation 'is to ascertain the legislature's intent.'" *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001) (quoting *People v. Massie*, 19 Cal. 4th 550, 569 (1998)).

Indeed, each of Plaintiffs' cited cases applied § 47(b)(5)'s exception to requests for the police to intervene to stop an ongoing crime or other exigency. *See* Opp., at 5, 10; *Gralow v. City of Palos Verdes Ests.*, 2024 WL 3001475, at *1–2, *5 (C.D. Cal. May 22, 2024), *report and recommendation adopted*, 2024 WL 3088666 (C.D. Cal. June 20, 2024) (applying § 47(b)(5) to request that police arrest someone based on false accusation of attempted murder); *Raymond v. Am. Airlines Grp., Inc.*, 2025 WL 1415332, at *1–2 (C.D. Cal. Mar. 17, 2025) (applying § 47(b)(5) to request that police remove passenger from plane based on false accusation of theft); *Mascorro v. City of Nat'l City*, 2025 WL 3205520, at *3, *14 (S.D. Cal. Nov. 17, 2025) (applying § 47(b)(5) to request that police arrest someone falsely accused of

1    brandishing a knife); *Implicit Conversions, Inc. v. Stine*, 2025 WL 360744, at *6

2    (N.D. Cal. Jan. 30, 2025) (applying § 47(b)(5) to 911 call for police to intervene

3    based on false accusation of domestic violence); *Mace v. JPMorgan Chase Bank,*

4    *N.A.*, 2022 WL 3013173, at *3 (C.D. Cal. July 21, 2022) (applying § 47(b)(5) to

5    request that police intervene based on false accusation of self-harm).

6                    **2.        Defendants' Caselaw Is Not "Outdated."**

7            Plaintiffs argue that Defendants improperly rely on cases decided before

8    January 1, 2021, when the amendment to § 47(b) took effect. Opp., at 4–5. But

9    where, as here, the facts do not involve false statements to obtain law enforcement

10   intervention, § 47(b)(5) does not apply, and reliance on pre-amendment caselaw is

11   appropriate. *See, e.g.*, *Henreid v. Haynes*, 2025 WL 1116696, at *10 (E.D. Cal. Apr.

12   15, 2025), *report and recommendation adopted*, 2025 WL 2345973 (E.D. Cal. Aug.

13   13, 2025) (citing pre-amendment caselaw and declining to apply § 47(b)(5) because

14   defendants' statements did not qualify).

15            **B.        Plaintiffs Cannot Overcome the Statute of Limitations.**

16                    **1.        The Discovery Rule Does Not Save the Defamation Claim.**

17           Plaintiffs do not dispute that the at-issue statements were made years before

18   they filed this action. Plaintiffs agree that the relevant statutes of limitation are one

19   year for defamation and two years for business disparagement. Opp., at 11. They ask

20   the Court to excuse their untimely lawsuit under the discovery rule. Opp., at 13. As

21   such, the burden shifts to Plaintiffs to plead: "'(1) the time and manner of discovery

22   and (2) the circumstances excusing delayed discovery.'" *Mangini v. Aerojet-Gen.*

23   *Corp.*, 230 Cal. App. 3d 1125, 1150 (1991). They fail to do so.

24           Plaintiffs claim that they did not have access to ███████████████

25   ███████ until October 8, 2024. Opp., at 11, 13. But this assertion is not supported

26   by the allegations in the Complaint, which state that Left's attorney received these

27   materials in November 2023. Compl. ¶ 122.

28

1      Plaintiffs cannot plausibly claim ignorance of these statements. Attorneys

2  must keep clients reasonably informed about all matters relevant to the

3  representation, including potentially harmful information or evidence suggesting

4  client wrongdoing. *See* Cal. Rule of Prof. Conduct 1.4(a). Courts in the Ninth

5  Circuit routinely enter protective orders allowing attorneys to advise clients based

6  on Attorneys' Eyes Only ("AEO") materials without disclosing the underlying

7  documents. *See, e.g.*, *FastVDO LLC v. AT&T Mobility LLC*, 2016 WL 9049521, at

8  *4 (S.D. Cal. July 25, 2016). Here, the parties' joint defense agreement

9  contemplates broad information sharing, including with clients where necessary for

10  legal advice. Plaintiffs' attorneys—who had knowledge of the ███████

11  ███████—could have (and were obligated to) tell Plaintiffs that the ████████ raised

12  concerns, without violating any restriction. If they thought that any restriction

13  prevented such advice, they could have requested Defendants waive it. Any refusal

14  would have aroused Plaintiffs' suspicions and put them on further inquiry notice.

15      Since November 2023, Plaintiffs have been continuously represented by

16  counsel with actual knowledge. Attorney James Spertus received the ████████

17  ████████████████████████████████████ and continued after

18  they were charged in July 2024, and current counsel—who prosecute these

19  defamation claims—assumed representation in May 2025. *See SEC v. Andrew Left*

20  *et al*., No. 2:24-cv-06311-SPG (C.D. Cal.), ECF No. 33 (Order granting Rosen *pro*

21  *hac vice* status); *USA v. Left*, No. 2:24-cr-00456-VAP (C.D. Cal.), ECF No. 54

22  (same). Counsel's knowledge is attributable to Plaintiffs for claim accrual and

23  limitations purposes.

24      In addition, courts decline to apply the discovery rule where "the basis for a

25  claim has been published in the public record or has been the subject of publicity."

26  *Shively v. Bozanich*, 31 Cal. 4th 1230, 1248 (2003), *as modified* (Dec. 22, 2003).

27  Even assuming that Plaintiffs' attorney's awareness by November 2023 of ██████

28  ████████████████ cannot be imputed to Plaintiffs, they should have

1   suspected Defendants' alleged wrongdoing by at least July 2024. At that point, the

2   DOJ had indicted Left in a public filing that stated: "Defendant LEFT directed

3   Hedge Fund A to send defendant LEFT's share of the trading profits through a third-

4   party intermediary to conceal the true beneficiary and purpose of the payments from

5   Hedge Fund A to defendant LEFT." Ex. 3 to Mot. ¶ 102; *see also* Compl. ¶ 117.

6   Likewise, in July 2024 the SEC served him with a public complaint that alleged,

7   among other things: "Left took steps to conceal that he was being compensated by

8   Anson in connection with using his Citron Research platform by asking Anson to

9   send him his share of trading profits through Third-Party Intermediary, to which

10  Anson agreed." Ex. 4 to Mot. ¶ 175; *see also* Compl. ¶ 119. These materials put

11  Plaintiffs on at least inquiry notice more than one year before they filed this lawsuit.

12       Nonetheless, Plaintiffs insist that it was not until some point in 2025 when

13  Left first read the ▮▮▮▮▮▮▮ and learned about Defendants' statements. Compl.

14  ¶ 124. If true, that admission reflects his lack of diligence "to reasonably

15  investigate" throughout the government's multi-year investigation. *Jolly v. Eli Lilly*

16  *& Co.*, 44 Cal. 3d 1103, 1112 (1988) (failure to investigate upon suspicion of

17  wrongdoing bars invocation of discovery rule).

18       Plaintiffs argue that the SEC's public settlement with Anson in June 2024 and

19  initiation of both the criminal and civil enforcement against Left in July 2024 did

20  not put them on inquiry notice. They say those "documents only state the

21  government's conclusion that Plaintiffs ▮▮▮▮▮▮▮▮▮▮▮▮, not *how*

22  the government arrived at it." Opp., at 14. It is implausible to allege that Plaintiffs

23  did not have a "*suspicion* of wrongdoing" by this point. *Jolly*, 44 Cal. 3d at 1112

24  (emphasis in original). The Complaint alleges that Left was "shocked" by the July

25  2024 allegations and "thought it must be a mistake." Compl. ¶ 120. At minimum,

26  Plaintiffs were on inquiry notice by summer 2024.

27       Moreover, "failure to discover, or have reason to discover, the identity of the

28  defendant does not postpone the accrual of a cause of action, whereas a like failure

concerning the cause of action itself does." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 399 (1999). Once Plaintiffs suspected from the June and July 2024 public records that someone may have defamed them, the limitations period began. But rather than exercise "reasonable diligence" upon reading an indictment and complaint in summer 2024 that Plaintiffs thought was "so backwards" about their conduct, Plaintiffs just "'wait[ed] for the facts.'" *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 815 (2005); Compl. ¶ 120. That is inexcusable. *Jolly*, 44 Cal. 3d at 1111 ("So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.").

### 2.    Plaintiffs' Defamation and Trade Libel Claims Cannot Be Saved by the Equitable Tolling Doctrine.

Plaintiffs confuse equitable tolling with the discovery rule. The discovery rule determines when the accrual period starts, while equitable tolling "suspend[s] or extend[s] a statute of limitations as necessary to ensure fundamental practicality and fairness." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (2003), *as modified* (Aug. 27, 2003). Equitable tolling "'differs from the [discovery rule] in that the plaintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant.'" *Garcia v. Brockway*, 526 F.3d 456, 465 (9th Cir. 2008).

Here, Plaintiffs insist that they did not know that they were injured until October 8, 2024. Opp., at 11, 13. They do not claim to have known they were injured at an earlier date but were unable to ascertain "vital information concerning the existence of … [their] claim until the [limitations] period expired." *Garcia*, 526 F.3d at 465. Nor is this a situation in which Plaintiffs, in good faith, had earlier sought relief through an alternative remedy that was "'found to be defective.'" *Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*, 9 Cal. 5th 710, 725 (2020); *see also Lantzy*, 31 Cal. 4th at 370 (listing cases that applied equitable tolling "to

prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice"). As such, equitable tolling does not apply.

Plaintiffs briefly suggest that Defendants are responsible for Plaintiffs' delay in filing suit. Opp., at 14. They identify two reasons. First, Plaintiffs insinuate that the AEO designation of ███████████████████ somehow constituted a "refus[al] to let Plaintiffs access Defendants' actual statements." Opp., at 14. But Plaintiffs have pled no facts indicating that this confidentiality designation was an affirmative act by Defendants to conceal their statements from Plaintiffs.

Second, Plaintiffs argue that Defendants "repeatedly made clear to Plaintiffs that they *never* told the government ██████████████████████ ████████ Opp., at 14 (emphasis in original) (citing Compl. ¶ 133). That is not what the Complaint says. It refers to conversations that Plaintiffs had with Defendants in ***October 2025***—just days before they filed the Complaint on October 30, 2025. *See* Compl. ¶¶ 131–32. Even accepting Plaintiffs' characterization of what the parties discussed, it has no bearing on the limitations period. Nothing Defendants said to Plaintiffs in October 2025 could have caused Plaintiffs to have held off filing this lawsuit at any point in the ***prior*** two years, based on the information that they already possessed.

### 3. Defendants' ██████████████ Are Not Republications.

Defendants made their ████████████ in November 2023 and February 2024. Compl. ¶¶ 108, 111. Plaintiffs allege that they first saw Defendants' ████ ████████ in September 2025. Compl. ¶ 125. But none of these dates matter because Defendants' ██████████████ do not constitute a republication of Defendants' December 2022 April 2023 █████████, such that the clock restarted.

Plaintiffs argue that the single-publication rule does not apply here because it applies only to mass communications, not statements to a single entity like the SEC. Opp., at 14–15. That is incorrect. "[T]he single-publication rule applies to all publications, including those that receive only limited circulation" or are "not

8

1   generally distributed to the public." *Hebrew Acad. of San Francisco v. Goldman*, 42

2   Cal. 4th 883, 890, 893 (2007); *see also* Cal. Civ. Code § 3425.3 (codifying the rule).

3   Defendants' ████████████ do not constitute a republication.

4        ***First***, Plaintiffs do not dispute that Defendants' ██████████████

5   ████████ were made to the same audience, the SEC (and as part of the same

6   investigation). *See Yeager v. Bowlin*, 693 F.3d 1076, 1082 (9th Cir. 2012) ("[U]nder

7   California law, a statement on a website is not republished unless … the website is

8   directed ***to a new audience***.") (emphasis added); *Penrose Hill, Ltd. v. Mabray*, 479

9   F. Supp. 3d 840, 851 (N.D. Cal. 2020) (same); *Hebrew Acad.*, 42 Cal. 4th at 891

10  ("Under the general rule, a new cause of action for defamation arises each time the

11  defamer 'repeats or recirculates his or her original remarks ***to a new audience***.'")

12  (emphasis added).

13       ***Second***, Plaintiffs are incorrect in asserting that the █████████████

14  significantly altered or added to Defendants' earlier ████████. Plaintiffs claim that

15  the ███████████ are substantively different from earlier ████████ because

16  they "expressly accused Citron of ████████████████████," in contrast to

17  earlier ██████████████. Opp., at 15. But such alleged difference in the

18  confidence with which Defendants stated their belief as to Plaintiffs' role in the ███

19  ████████████ is not a material alteration or addition. A statement "is not

20  republished unless the statement itself is substantively altered or added to." *Yeager*,

21  693 F.3d at 1082; *see also Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1132

22  n.14 (9th Cir. 2006) (noting that there need to be "substantive changes or updates …

23  [that] sufficiently modify the content" to suffice as a republication).

24       Here, the Complaint alleges that Defendants' █████████████ either

25  directly quoted or cited earlier ██████████████████████.

26  Plaintiffs admit that in Anson's November 2023 █████████████, "Anson quoted,

27  *verbatim*, the ██████████████████." Compl. ¶ 108 (emphasis in

28  original). Plaintiffs also acknowledge that "████████████████████

9

1  ███████████████████████████." *Id.* ¶ 109. The allegations thus fail to constitute

2  republications that restarted the limitations period.

**C.    Plaintiffs Cannot Plausibly Allege Elements of Their Claims.**

**1.    Plaintiffs Failed to Plausibly Allege That Defendants' Statements Are Defamatory *Per Se*.**

6  Defamation *per se* requires that "a defamatory meaning appears from the

7  language itself without the necessity of explanation or the pleading of extrinsic

8  facts." *Palm Springs Tennis Club v. Rangel*, 73 Cal. App. 4th 1, 5 (1999). The test is

9  whether a statement is defamatory "'without extrinsic aid beyond … [the reader's]

10  own intelligence and common sense.'" *Barker v. Fox & Assoc.*, 240 Cal. App. 4th

11  333, 351 (2015).

12  Plaintiffs cannot meet this standard. Their Opposition admits that "the

13  concern about ████████ is apparent from the surrounding context." Opp., at 18.

14  But the "surrounding context" necessarily consists of extrinsic facts that defeat

15  defamation *per se*. The reader must (1) know that ███████████████████

16  ██████████████; and (2) understand why Anson would use ████

17  ████████████████████████████████████

18  ███████ *Id.* (internal quotation marks omitted). The allegation that ████████

19  ███████████████ Opp., at 16 (quoting Compl. ¶ 94), does not,

20  without extensive, additional facts, constitute an accusation of criminal conduct and,

21  thus, fails to constitute defamation *per se*. *See Crowe v. Cnty. of San Diego*, 608

22  F.3d 406, 444–45 (9th Cir. 2010) (holding as a matter of law, in affirming summary

23  judgment, that statements that plaintiff was "'exhibiting sociopathic tendencies' and

24  'being highly manipulative and controlling' cannot constitute defamation *per se*"

25  because they did not accuse plaintiff of criminal conduct).

26  Plaintiffs' cases are inapposite. Each involved speakers who accused the

27  plaintiff of actual criminal wrongdoing. *See* Opp., at 17–18; *Appel v. Wolf,* 839 F.

28  App'x 78, 81 (9th Cir. 2020) (defendant stated plaintiff "'had legal issues (securities

fraud)'"); *Pentalpha Macau Com. Offshore Ltd. v. Reddy,* 2004 WL 2738925, at *2 (N.D. Cal. Dec. 1, 2004) (defendant accused plaintiff of lying, acting dishonestly, and fraud); *Balla v. Hall,* 59 Cal. App. 5th 652, 662, 664, 667 (2021) (defendants accused city council members of corrupt "'backdoor deal[s],'" being "'phony criminals,'" and "lobbying" for a developer in exchange for jobs and donations). Here, Defendants never accused Plaintiffs of fraud or misconduct. The government drew that conclusion through its own investigation and legal analysis.

### 2.    Plaintiffs Failed to Plausibly Allege Derogation to Their Product or Business.

Business disparagement requires that a defendant's "false or misleading statement (1) … specifically refer to the plaintiff's product or business, and (2) … clearly derogate that product or business." *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 291 (2014). The tort protects against statements derogating "'the goods a plaintiff sells or *the character of his … business*.'" *Kovesdy v. Kovesdy*, 2010 WL 3619826, at *4 (N.D. Cal. Sept. 13, 2010) (emphasis and ellipsis in original). Defendants' statements do not meet this standard. They concern a ▮▮▮▮▮▮▮▮▮▮▮—not the quality, accuracy, reliability, or character of Citron's research services.

In their Opposition, Plaintiffs cite *Yelp Inc. v. Superior Ct.*, 17 Cal. App. 5th 1 (2017). Opp., at 19. But that case involved statements that attacked the quality of the plaintiff's services. The defendant publicly stated that the plaintiff, an accountant, had prepared a tax return that "'was so sloppy I had another firm redo it and my return more than doubled.'" *Id.* at 18. Here, statements about ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ do not "'concern[] the quality of services or product of a business.'" *Computer Xpress*, 93 Cal. App. 4th at 1010, 1012 (dismissing trade libel claim because the vague "statements could not have had the alleged defamatory effect of causing the company's stock to lose value").

### 3. Plaintiffs Failed to Plausibly Allege Actual Malice.

Plaintiffs are at least limited purpose public figures. Writing under the name "Citron Research," Left published reports, flooded social media with strategically timed posts, launched websites, and coordinated with news outlets to influence investors, including about Namaste. *See* Compl. ¶¶ 44–48; *see, e.g.*, *Reader's Dig. Assn. v. Superior Ct.*, 37 Cal. 3d 244, 256 (1984) (holding that defamation plaintiffs were public figures who "sponsored massive publicity and self-promotion efforts over a period of many years and apparently *increased* these efforts with regard to the present controversy.") (emphasis in original). As such, Plaintiffs must demonstrate a likelihood of proving actual malice, *i.e.*, that Defendants knew the statements were false or made the statements with reckless disregard of their truth.

Plaintiffs contend they met their burden by alleging that Defendants lied about the ███████ because they had motive to avoid liability by pinning the fault on Plaintiffs. Compl. ¶ 10; Opp., at 10, 20. Such facts alone are insufficient. *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1169 (2004) ("Actual malice may not be inferred solely from evidence of personal spite, ill will, or bad motive."). The "excruciating detail" Plaintiffs reference (Opp., at 20; Compl. ¶¶ 8–12, 58–86, 104–15) concerns why the statements are allegedly false and why Defendants faced enforcement exposure—not Defendants' subjective state of mind when testifying.

"'States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible.'" *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017). Fatal to their ability to show actual malice, Plaintiffs "do[] not provide any specific allegations that would support a finding that … [the Defendants] harbored serious subjective doubts as to the validity of … [their] assertions." *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014). "The complaint's allegation that … [Defendants] 'published [the statements] with reckless disregard for the truth,' … is conclusory, as it merely recites an element of slander and does not present any potential supporting facts."

1    *Id.* This is insufficient to satisfy the "'demanding burden' for pleading actual malice

2    in defamation actions." *Id.*[1]

3                    **4.    Plaintiffs Failed to Plausibly Allege Causation.**

4            Plaintiffs allege damages "at least in part *because of Defendants' lies*." Opp.,

5    at 21 (emphasis in original). But their allegations establish that the DOJ and SEC

6    enforcement actions—not Defendants' ██████—caused their injuries.

7            ***First***, the investigations began in 2018, years before Defendants' 2022 and

8    2023 ██████. Compl. ¶ 87. By July 2023, Left was publicly discussing charges

9    the government might file against him. *See* Ex. 12 to Mot. Any reputational harm or

10   business losses from the investigations were occurring before Defendants testified.

11           ***Second***, Left has repeatedly admitted in judicial proceedings that the

12   government's case arises from his public comments and undisclosed trading—not

13   the ██████████████████. *See* Ex. 1 to Mot., at 1; Ex. 2 to Mot., at 7.

14   Left moved to strike the ██████████ allegations as irrelevant to the charges. Ex.

15   13 to Mot., at 6–8.

16           ***Third***, the DOJ confirmed the ████████ allegations were tangential—relevant

17   only to show Left took steps to conceal relationships with hedge funds generally, not

18   as the foundation for the 18 securities fraud counts. *See* Ex. 3 to Mot., at 8, 11–12.

19   Only one of the DOJ's 19 counts mentions the ████████████, and it charges

20   securities fraud based on Left's public statements, not the ██████████ itself.

21           Plaintiffs cannot identify whether any portion of their legal fees, probable

22   earnings, or reputational harm is attributable to Defendants' █████████████

23

24   [1]  Plaintiffs cite *Flowers v. Carville*, 310 F.3d 1118, 1131 (9th Cir. 2002), to argue

25   that malice may be averred generally "without alleging corroborating evidence."
     Opp., at 20–21. But *Flowers* was decided before *Bell Atlantic Corp. v. Twombly*,

26   550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Post-*Iqbal*, courts
     in this Circuit have applied the heightened plausibility standard to actual malice

27   pleading. *See, e.g.*, *Wynn*, 75 F. Supp. 3d at 1233, 1239; *Resolute Forest Prods.*, 302

28   F. Supp. 3d at 1018.

1  ████████████ versus the 18 fraud counts having nothing to do with it. *See,*

2  *e.g.*, *Muddy Waters, LLC v. Superior Ct.*, 62 Cal. App. 5th 905, 925 (2021).

3       Unlike here, Plaintiffs' cases—*Ramirez v. Midland Credit Mgmt., Inc.*, 2023

4  WL 2277108 (N.D. Cal. Feb. 27, 2023); *Gallagher v. Philipps*, 563 F. Supp. 3d

5  1048 (S.D. Cal. 2021); *Botosan v. Fitzhugh*, 13 F. Supp. 2d 1047 (S.D. Cal. 1998)—

6  involved damages ***directly*** traceable to specific defamatory statements. Opp., at 22.

7       As shown above, Defendants' alleged statements are not defamation *per se.*

8  Therefore, to allege defamation *per quod*, Plaintiffs must plead special damages. *See*

9  *O'Hara v. Storer Commc'ns, Inc.*, 231 Cal. App. 3d 1101, 1113 (1991). Business

10  disparagement likewise requires pleading "general business loss … with reasonable

11  certainty and eliminat[ing] other causes." *Gopher Media LLC v. Melone*, 2023 WL

12  8790266, at *10 (S.D. Cal. Dec. 19, 2023). Plaintiffs' vague allegations that they

13  "had to cut back on trading" and "lost millions of dollars in probable earnings as a

14  result," Compl. ¶ 129, fail on all counts. They identify no specific losses, such as

15  which clients withdrew, which trading opportunities were lost, and what contracts

16  were canceled. *See Future Ads LLC v. Gillman*, 2013 WL 12306479, at *8 (C.D.

17  Cal. Dec. 23, 2013) (dismissing defamation *per quod* claim based on complaint's

18  "vague and general allegations as to special damages."). Plaintiffs cannot eliminate

19  other causes or segregate losses attributable to Defendants' statements from losses

20  caused by: (1) the 2018 investigation commencement; (2) July 2024 public

21  knowledge of pending charges; (3) the 18 unrelated counts; or (4) Left's strategic

22  decision to reduce trading. And they cannot establish lost earnings with reasonable

23  certainty when those earnings are speculative trading profits. Because Plaintiffs

24  have failed to plead special damages with the required specificity, both claims fail.

25  **II.    IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE**

26  **COMPLAINT UNDER RULE 12(B)(6)**

27       The same arguments Defendants raised in their anti-SLAPP motion apply to

28  their Rule 12(b)(6) motion. The Court should dismiss the Complaint because:

(1) Defendants' ██████████████ are privileged (Section I.A); (2) Plaintiffs' defamation claim is time-barred based on, at the latest, the July 2024 DOJ indictment and SEC complaint (Section I.B); and (3) Plaintiffs cannot state a claim for defamation or trade libel (Section I.C).

## III.    THE COURT SHOULD DENY LEAVE TO AMEND

There is no basis to grant leave to amend. To obtain leave to amend, a plaintiff must identify in its Rule 12(b)(6) opposition the additional facts it would plead to cure the defects in its complaint. Plaintiffs have not done so. In the anti-SLAPP context, California state courts are required to deny leave to amend to enable a prompt resolution of claims. *See, e.g.*, *Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068, 1073 (2001); *Med. Marijuana, Inc. v. ProjectCBD.com*, 46 Cal. App. 5th 869, 899–900 (2020).

Critically, Plaintiffs knowingly refused to amend their Complaint. During the parties' meet and confer, Plaintiffs said that they might amend in response to the issues that Defendants had identified. Supp. Schwartz Decl. ¶ 4. They insisted that the briefing schedule include an alternative set of deadlines to accommodate their filing of an amended complaint. That was reflected in the stipulation and the Court's scheduling Order. ECF Nos. 32–33. But Plaintiffs chose not to amend. That is an admission that they have nothing to cure the Complaint's legal defects and that leave to amend would be futile.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion.

DATED:  February 9, 2026           QUINN EMANUEL URQUHART
                                    & SULLIVAN, LLP


                                  By    */s/ Robert M. Schwartz*
                                        Robert M. Schwartz
                                        Attorneys for Defendants

## **CERTIFICATE OF L.R. 11-6.2 COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that this brief contains 5,048 words, which complies with the word limit of L.R. 11-6.1.

DATED:  February 9, 2026            QUINN EMANUEL URQUHART
                                          & SULLIVAN, LLP


By   _/s/ Robert M. Schwartz_____
                     Robert M. Schwartz
                  Attorneys for Defendants