**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ANDREW LEFT; and CITRON CAPITAL, LLC,

Plaintiffs,

v.

ANSON FUNDS MANAGEMENT LP; ANSON ADVISORS INC.; MOEZ KASSAM; and SUNNY PURI,

Defendants.

Case No. 2:25-cv-10432-SPG-JC

**REDACTED ORDER DENYING PLAINTIFFS' MOTION TO STRIKE DECLARATION OF ROBERT M. SCHWARTZ AND GRANTING, IN PART, AND DENYING, IN PART, DEFENDANTS' MOTION TO STRIKE THE COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE OR, IN THE ALTERNATIVE, DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6) [ECF NOS. 36, 50]**

Before the Court is the Motion to Strike the Complaint Pursuant to California's Anti-SLAPP Statute or, in the Alternative, Dismiss the Complaint Pursuant to Rule 12(b)(6), (ECF No. 36 ("Defendants' Motion")),[1] filed by Defendants Anson Funds Management LP ("Anson"), Anson Advisors Inc. ("Anson Advisors"), Moez Kassam ("Kassam"), and

---

[1] While the Court cites to the redacted versions of the parties' filings, the Court has reviewed the unredacted versions filed under seal and will refer to redacted portions of the briefing and exhibits where necessary.

-1-

Sunny Puri ("Puri," or, together with Anson, Anson Advisors, and Kassam, "Defendants"). Also before the Court is the Motion to Strike Declaration of Robert M. Schwartz in Support of Defendants' Motion to Dismiss and Special Motion to Strike, (ECF No. 50 ("Plaintiffs' Motion")), filed by Plaintiffs Andrew Left ("Left") and Citron Capital, LLC ("Citron," or, together with Left, "Plaintiffs").

Having considered the parties' submissions, oral arguments, the relevant law, and the record in this case, the Court DENIES Plaintiffs' Motion and GRANTS, in part, and DENIES, in part, Defendants' Motion as follows: (1) Defendants' Motion is denied, without prejudice to re-raising these arguments following a period of discovery, insofar as it seeks to strike Plaintiffs' Complaint under the anti-SLAPP statute and dismiss Plaintiffs' defamation claim under the statute of limitations; (2) Defendants' Motion is denied insofar as it seeks dismissal of Plaintiffs' defamation claim for failure to state a claim; and (3) Defendants' Motion is granted insofar as it seeks dismissal of Plaintiffs' business disparagement claim for failure to state a claim.

## I.     BACKGROUND

The following allegations are taken from Plaintiffs' Complaint. (ECF No. 2 ("Complaint")). Left is a short seller who attempts to identify companies engaged in corporate fraud and bet against those companies' overvalued stocks. (*Id.* ¶ 1). In September 2018, Left uncovered evidence that Namaste Technologies, Inc. ("Namaste") was engaged in fraud, and he predicted that its stock would eventually go to zero. (*Id.* ¶¶ 2, 36-38). Based on his research, Left sought to short Namaste's stock; however, because Namaste was a Canadian company, Left could not borrow more than a minimal number of shares in the United States. (*Id.* ¶¶ 3, 36). At around the same time, Kassam, a friend of Left and the Chairman of Anson, contacted Left and offered to short Namaste's stock on Plaintiffs' behalf. (*Id.* ¶¶ 4, 40).

In September and October 2018, Anson shorted Namaste's stock on Plaintiffs' behalf, and Left published a report exposing Namaste's fraud. (*Id.* ¶¶ 5, 48). After the price of the stock plummeted, Anson covered the short position, resulting in $5 million in

profits, of which $840,000 was owed to Left.  (*Id.* ¶¶ 5, 50).  While Left did not care how Anson paid him, Anson was particular about the form of payment and arranged for Left to be paid through a third-party research company, Falcon Research, Inc.  (*Id.* ¶¶ 6, 51). Anson was motivated to do this for two reasons.  First, Anson managed money for outside investors and earned profits by shorting company stock and buying it back at a lower price, so it wanted to avoid the appearance that it was improperly diverting profits from its investors.  (*Id.* ¶ 7).  Second, Anson had a conflict of interest because ██████████ ████████████████████████████, which meant that it stood to benefit if Namaste's stock price dropped.  (*Id.* ¶ 8).  As such, Anson sought to avoid the appearance that it had coordinated with a short seller to drive down Namaste's stock price.  (*Id.*).  To avoid these issues, Anson's executives, including Kassam and Puri, devised a scheme to mask the transaction, under which Anson would first funnel the profits to Falcon Research under the guise of paying for research services.  (*Id.* ¶ 9).  Falcon Research then paid the funds to Plaintiffs.  (*Id.*).

   A few years later, Anson was investigated by the Securities and Exchange Commission ("SEC") for misleading its investors about its arrangements with Left and other short sellers.  (*Id.* ¶ 10).  Plaintiffs allege that, rather than confess to the SEC that they had initiated this payment scheme, Defendants ██████████████████████████ ██████████████████████████████████ (*Id.* ¶¶ 10, 94-100).  In October 2023, in response to a "*Wells* notice"[2] from the SEC, Defendants continued to affirm their ████████████████████████ ████████████████████████████ (*Id.* ¶¶ 11, 107-09).  ████████ ████████████████████████████████████ ████████████████████ (*Id.* ¶ 111).  In June 2024, Anson resolved the SEC

---

[2] "A Wells Notice informs subjects of SEC investigations that the SEC staff has made 'a preliminary determination to recommend that the Commission file an action or institute a proceeding against them.'" *United States v. Feathers*, No. 14-CR-00531-LHK, 2016 WL 7337518, at *9 (N.D. Cal. Dec. 19, 2016) (citing Securities and Exchange Commission Division of Enforcement, Enforcement Manual § 2.4).

investigation with a fine and an administrative cease-and-desist order, which ▇▇▇▇ ▇▇▇▇▇▇▇▇ that Left had asked to be paid through Falcon Research. (*Id.* ¶¶ 12, 104, 114).

In July 2024, Plaintiffs were charged in a civil complaint by the SEC and Left was indicted by the U.S. Department of Justice ("DOJ"). (*Id.* ¶ 13). Both charging documents included allegations that Left initiated the payment scheme with ▇▇▇▇▇▇▇ (*Id.*). Plaintiffs allege that Defendants' purportedly false statements to ▇▇▇ are key to the charges against them and therefore caused them injury. (*Id.* ¶¶ 14-15). Plaintiffs further allege that Defendants were aware that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and therefore knew, or consciously disregarded, that their false statements would result in charges against Plaintiffs. (*Id.* ¶ 115).

Following the SEC and DOJ charges, Left was surprised to see that he was being accused of arranging the payment scheme, and he assumed that it must be a mistake. (*Id.* ¶ 120). Left did not learn of Defendants' statements until October 8, 2024, when the DOJ produced the ▇▇▇▇▇▇▇▇▇▇▇▇ in discovery. (*Id.* ¶¶ 121-23). Although Defendants had previously produced the transcripts to Left's former counsel in November 2023, the documents were designated "Attorneys' Eyes Only," meaning that Left did not learn of the statements. (*Id.* ¶ 122). In 2025, when reviewing discovery for the first time, Left discovered that Defendants ▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇ (*Id.* ¶ 124). Plaintiffs also did not receive ▇▇▇▇▇▇▇▇ until late September 2025. (*Id.* ¶ 125). The parties entered into a tolling agreement that tolled the statute of limitations period for Plaintiffs' claims from October 1, 2025, to October 29, 2025. (*Id.* ¶ 132).

Plaintiffs initiated this action on October 30, 2025, asserting claims for defamation, defamation *per se*, and business disparagement. (*Id.* at 26-29). Among other forms of relief, Plaintiffs seek general, special, and punitive damages, reimbursement of expenses associated with defending against Defendants' defamatory statements, and an injunction

prohibiting Defendants from repeating any statements found to be defamatory.[3] (*Id.* at 29-30).

Defendants filed their Motion on December 30, 2025, seeking dismissal of the claims under California's anti-SLAPP statute or, in the alternative, dismissal under the statute of limitations and Rule 12(b)(6). (Defendants' Mot.). Defendants' Motion is accompanied by a declaration from Defense Counsel, (ECF No. 36-1 ("Schwartz Declaration")), fourteen supporting exhibits, (ECF Nos. 36-2 – 36-15), and a request for judicial notice, (ECF No. 36-16 ("RJN")). On January 26, 2026, Plaintiffs filed a Motion to Strike the Schwartz Declaration and the supporting exhibits. (Plaintiffs' Mot.). Plaintiffs filed an opposition to Defendants' Motion on January 26, 2026, (ECF No. 49 ("Plaintiffs' Opposition")), and Defendants replied in support of their Motion on February 11, 2026, (ECF No. 67 ("Defendants' Reply")). Defendants filed an opposition to Plaintiffs' Motion on February 4, 2026, (ECF No. 57 ("Defendants' Opposition")), and Plaintiffs replied in support of their Motion on February 11, 2026, (ECF No. 73 ("Plaintiffs'

---

[3] During the March 4, 2026, hearing on these Motions, the Court questioned the parties as to whether the DOJ was aware of this action and whether the Court should seek its input regarding the need for a stay. The Court's questioning was guided by (1) the DOJ's separate intervention and request for a stay of the parallel SEC Action; and (2) the request in the Complaint for injunctive relief, which appeared to create the possibility of interference with the ongoing criminal prosecution. At the close of the hearing, the Court ordered Plaintiffs' Counsel to meet-and-confer with DOJ Counsel and provide the Court with notice of the DOJ's position. On March 10, 2026, Plaintiffs provided a letter from the DOJ, in which the DOJ states that it does not intend to seek a stay of this action at this time. (ECF No. 85-1). This position is contingent on Plaintiffs' agreement that (1) no third-party depositions will be taken in this action before the commencement of the criminal trial; and (2) should the civil case proceed to depositions beyond the named Defendants before the commencement of the criminal trial, Plaintiffs will not contest a subsequent motion to intervene and stay on the basis of the Government's delay in intervening. (*Id.* at 1-2). Additionally, Plaintiffs state in the filed notice that they intend to amend their Complaint to abandon the request for an injunction prohibiting Defendants from repeating any statements found to be defamatory. (ECF No. 80 at 2). Based on the DOJ's position and Plaintiffs' representations, the Court concludes that a stay of this action is not warranted at this time.

Reply")).  Pursuant to a stipulation, the parties have also filed supplemental briefing regarding the Supreme Court's recent decision in *Berk v. Choy*, 607 U.S. __, 2026 WL 135974 (Jan. 20, 2026).  (ECF No. 76 ("Plaintiffs' Supp. Brief"); ECF No. 77 ("Defendants' Supp. Brief")).

## II. LEGAL STANDARD

### A. Anti-SLAPP Motion

California's anti-SLAPP statute allows a defendant to file a "special motion to strike" any "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech."  Cal. Civ. Proc. Code § 425.16(b)(1).  Acts in furtherance of the right of petition include "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," or a statement "made in connection with an issue under consideration by" such a body.  *Id.* § 425.16(e)(1), (2).  The purpose of the anti-SLAPP statute is "to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (citation omitted).  Defendants in federal court "can bring anti-SLAPP motions to strike state law claims and are entitled to attorney's fees and costs when they prevail."  *Verizon Del., Inc. v. Covad Comm'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

Courts review such motions under a two-step framework.  First, the moving defendant "must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech."  *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021) (citation omitted).  Second, if a defendant makes this initial showing, "[t]he burden then shifts to the plaintiff . . . to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal."  *Id.* (citation omitted).  In reviewing such a motion, courts should not "weigh the credibility or comparative probative strength of competing evidence," but "should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats

the plaintiff's attempt to establish evidentiary support for the claim." *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002) (emphasis omitted).

### B.    Motion to Dismiss

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted).

When ruling on a Rule 12(b)(6) motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice," nor must it accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (internal quotation marks and citation omitted). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## III.    DISCUSSION

### A.    Plaintiffs' Motion to Strike

As a threshold evidentiary matter, the Court must decide Plaintiffs' Motion to Strike the Schwartz Declaration and all supporting exhibits.  *See* (Plaintiffs' Mot.).  Through the Schwartz Declaration, Defendants seek to introduce fourteen Exhibits: (1) Left's reply in support of his motion to dismiss in *United States v. Left*, 2:24-cr-00456-VAP (the "DOJ Action"); (2) Left's motion to dismiss for selective prosecution in the DOJ Action; (3) the indictment in the DOJ Action; (4) the SEC's complaint in *SEC v. Left*, 2:24-cv-06311-SPG-JC (the "SEC Action"); (5) Plaintiffs' reply in support of the motion to dismiss in the SEC Action; (6) an excerpt of ███████████████████████████████ (7) an excerpt of ██████████████████████████████ (8) a July 31, 2020, report from the California Senate Committee on Public Safety related to AB 1775; (9) a June 11, 2024, press release from the SEC regarding the investigation into Anson; (10) a June 11, 2024, order issued by the SEC regarding its investigation of Anson; (11) a May 27, 2018, article from Business Insider discussing Left; (12) a July 11, 2023, article by Bloomberg about Left; (13) Left's motion to strike surplusage in the DOJ Action; and (14) the protective order issued in the DOJ Action.  (Schwartz Decl. ¶¶ 5-18).

In their Motion, Plaintiffs argue that these exhibits are either not subject to judicial notice or are being offered for improper purposes that cannot be judicially noticed. (Plaintiffs' Mot. at 9-14).  Plaintiffs also argue that the deposition transcripts are not incorporated by reference into the Complaint.  (*Id.* at 14-16).  Plaintiffs argue that the remedy for the improper request for judicial notice is to strike the Schwartz Declaration altogether and disregard related arguments.  (*Id.* at 16-17).  If the Court does consider this evidence, Plaintiffs argue that they must be permitted to take discovery, and Defendants' Motion must be converted to a motion for summary judgment.  (*Id.* at 17-18).

Generally, at the motion to dismiss stage, courts may not consider any material beyond the pleadings when assessing the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6).  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)

("[R]eview is limited to the complaint." (citation omitted)).  If a court considers such extrinsic evidence, "the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  However, pursuant to two recognized exceptions, courts may consider the contents of certain extrinsic documents "without converting the motion to dismiss into a motion for summary judgment." *Lee*, 250 F.3d at 688.

First, Federal Rule of Evidence 201 authorizes courts to take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b).  A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1), (2).  Accordingly, "[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Lee*, 250 F.3d at 689 (internal quotation marks and citation omitted).  A court, however, may not "take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Second, pursuant to the "judicially created" incorporation-by-reference doctrine, courts may consider an external document to be "part of the complaint itself" if "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* at 1002 (citation omitted).  The doctrine seeks to prevent "plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.*  A court may also "assume an incorporated document's contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.* at 1003 (alterations and citation omitted).  However, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.*

The Court will consider the admissibility of each of the fourteen documents attached to the Schwartz Declaration.[4]

### 1.    Court Filings (Exhibits 1-5, 13-14)

First, Plaintiffs object to the Court's consideration of seven documents from the DOJ and SEC Actions against Plaintiffs.  Plaintiffs argue that, while the Court could take judicial notice of the existence of these filings, it cannot use the documents to discount Plaintiffs' allegations and legal theories in the Complaint.  (Plaintiffs' Mot. at 10).  Defendants argue that they seek to admit these documents not for the truth of the matters stated therein but solely as evidence of the charges against Plaintiffs and to show statements made by Plaintiffs in those cases.  (Defendants' Opp. at 10).

To the extent there is any dispute remaining between the parties as to these documents, the Court agrees with Defendants that these documents are judicially noticeable as matters of public record.  However, the Court will take notice only "of the existence of those documents and of the representations having been made therein," not of "the veracity of the representations made in the documents." *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984 (E.D. Cal. 2012) (internal quotation marks and citation omitted); *see also Khoja*, 899 F.3d at 999 ("[A] court may take judicial notice of matters of public record" but may not take notice of "disputed facts contained in such public records" (citation omitted)).

### 2.    Deposition Transcripts (Exhibits 6-7)

Second, Plaintiffs seek to exclude the deposition transcripts of ███████████, arguing that these documents are not incorporated by reference into the Complaint because they are only mentioned briefly.  (Plaintiffs' Mot. at 14-15).  Plaintiffs also argue that

---

[4] Defendants note in their Opposition that Plaintiffs violated Local Rule 7-3 by filing the Motion only five days after the parties' conference, rather than the seven days required by the Rule.  (Defendants' Opp. at 6 n.1).  The Court finds no resulting prejudice from the alleged violation and declines to strike Plaintiffs' Motion on this basis.  The Court emphasizes, however, that repeated violations of the Local Rules may be grounds for sanctions moving forward, even in the absence of demonstrated prejudice.

Defendants' request should be denied because they have put forth only a few pages of the nearly 300-page deposition transcripts. (*Id.*; Plaintiffs' Reply at 13-14). In their Opposition, Defendants argue that these documents may be incorporated by reference because they form the basis for Plaintiffs' defamation and business disparagement claims. (Defendants' Opp. at 8).

The Court agrees with Defendants that these documents may be incorporated by reference into Plaintiffs' Complaint. While Plaintiffs dispute whether the volume of direct references to the depositions is sufficient to incorporate these documents by reference, they offer little discussion of whether these documents "form[] the basis of" Plaintiffs' claims. *Khoja*, 899 F.3d at 1002. The Complaint makes clear, however, that ████████ ████████████████████████████████████████████████████████████████, form the basis of the defamation and business disparagement claims. For example, as the basis for their defamation claim, Plaintiffs allege that Defendants made defamatory statements ████████████████████████████████████████████████████████████████████████ ██████████████████ (Compl. ¶ 136). As alleged in the Complaint, the ████████████ ████████████████████████████████████████████████ *See* (*id.* ¶ 90). Thus, the Court will consider these documents to be incorporated by reference into the Complaint.

While the Court has some concerns about Defendants providing only an excerpt of the deposition transcripts, in the absence of any identified authority prohibiting incorporation of portions of records, the Court will not decline incorporation on this basis. The Court notes that the purpose of the incorporation-by-reference doctrine is to "prevent[] *plaintiffs* from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002 (emphasis added). Because Plaintiffs have already had the opportunity to reference any favorable portions of the deposition transcripts in their Complaint, the Court does not see any countervailing concern that would prohibit Defendants from seeking to incorporate only a portion of the transcript. Plaintiffs have not identified any

additional portions of the transcript that are relevant here, and the Court will therefore accept Defendants' representation that an excerpt was provided to "avoid burdening the Court with voluminous irrelevant material." (Defendants' Opp. at 8).

While the Court will incorporate the deposition transcripts into the record for purposes of these Motions, the Court notes that the "inferences a court may draw from an incorporated document should also be approached with caution." *Khoja*, 899 F.3d at 1003. Thus, consistent with Plaintiffs' arguments, to the extent the deposition transcripts "only serve to dispute facts stated in a well-pleaded complaint," the Court will not assume the truth of these statements. *Id.* As the Ninth Circuit warns, such "unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Id.* at 998.

### 3. Committee Report (Exhibit 8)

Plaintiffs next argue that the Court should deny judicial notice as to a report about AB 1775 prepared by a California State Senate Committee. (Plaintiffs' Mot. at 11). Plaintiffs argue that the content of the report is subject to reasonable dispute because Defendants seek to use the report to highlight the purpose of a bill based on comments of a single author. (*Id.*).

The Court disagrees. "In addition to the facts alleged in the complaint, as a fundamental matter, courts may take judicial notice of legislative history." *We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 136 (2d Cir. 2023) (internal quotation marks and citation omitted); *see also Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 945 n.2 (9th Cir. 2013) (taking judicial notice of legislative history). This report is a matter of public record, and the fact that the statements contained in the report were made is not subject to reasonable dispute. In so concluding, the Court reserves the question of whether the legislative history will prove relevant or useful as a matter of statutory interpretation.

#### 4.    SEC Press Release and Settlement Order (Exhibits 9-10)

Fourth, Plaintiffs seek to exclude the SEC's press release and settlement order regarding the investigation of Anson.  Plaintiffs argue that they never saw the press release, and that it is improper for Defendants to use these documents to contest allegations in the Complaint that Plaintiffs only became aware of the defamatory statements in 2025.  (Plaintiffs' Mot. at 11).

Again, the Court disagrees.  SEC press releases and settlement orders issued publicly are public governmental records that are not subject to reasonable dispute.  *See, e.g.*, *U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014) ("Under Rule 201, the court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." (internal quotation marks, citation, and alterations omitted)); *McDougall v. Cnty. of Ventura, Cal.*, 495 F. Supp. 3d 881, 887 (C.D. Cal. 2020) ("[P]ublications from state and federal agencies are matters of public record that are not subject to reasonable dispute.").  The Court may therefore take judicial notice of the fact that these documents were published, the timing of the publication, and the content of the statements.  The Court will not take notice, however, of the truth of any statements made in the press release and settlement order.

#### 5.    News Articles (Exhibits 11-12)

Finally, Plaintiffs argue that Defendants' request that the Court take judicial notice of two news articles about Plaintiff is improper.  Plaintiffs contend that Defendants seek to use these articles not merely to show that certain statements were made, but to show that the content of these statements was true—namely, that Left is a public figure for purposes of his defamation claim.  (Plaintiffs' Mot. at 13).  Defendants reply that they do not seek for the Court to take notice of the truth of the matters asserted in the news articles, only the fact that these statements were made.  (Defendants' Opp. at 14).

To the extent Defendants request that the Court take notice of these articles to show that Plaintiff was, in fact, a public figure, the Court declines to do so.  However, the Court

-13-

will take judicial notice of the fact that these statements were made, as they are matters of public record not subject to reasonable dispute. *See EVO Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1323 (C.D. Cal. 2023) ("To the extent the court can take judicial notice of press releases and news articles, it can do so only to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.").

In taking notice of the documents discussed above, the Court limits its consideration of this extrinsic evidence only to judicially noticeable facts and the two documents that have been incorporated by reference. Accordingly, the Court need not convert the instant Motion into a motion for summary judgment or afford Plaintiff an opportunity to conduct discovery. *See Lee*, 250 F.3d at 689 ("A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." (internal quotation marks and citation omitted)). The Court will now turn to Defendants' Motion.

**B.      Anti-SLAPP Motion**

        1.      <u>Application to Federal Court</u>

As an initial matter, the parties have filed supplemental briefing regarding the continued applicability of California's anti-SLAPP statute in federal court following the Supreme Court's decision in *Berk v. Choy*, 607 U.S. __, 2026 WL 135974 (Jan. 20, 2026). There, the Supreme Court considered whether a Delaware statute prohibiting medical malpractice suits unless accompanied by an "affidavit of merit" could be applied in a federal diversity suit. *Id.* at *3. The Court concluded that the statute could not be applied in federal court because it "answer[ed] the same question" as <u>Federal Rule of Civil Procedure 8</u>. *Id.* at *6. Specifically, the Court found that Rule 8 already "prescribes the information a plaintiff must present about the merits of his claim at the outset of litigation" and contains no requirement of providing evidence or a supporting affidavit. *Id.* at *3. Because Rule 8 and the Delaware statute answered the same question, and because Rule 8 was a valid procedural rule under the Rules Enabling Act, the Court concluded that the Delaware statute was inapplicable in federal court. *Id.* at *6.

In their Supplemental Brief, Plaintiffs argue that California's anti-SLAPP statute answers the same questions as Rules 8, 12, and 56, and is therefore inapplicable in federal court. (Plaintiffs' Supp. Brief at 2). Plaintiffs argue that the anti-SLAPP statute conflicts with the Federal Rules because (1) the "minimal merit" standard is inconsistent with Rule 8's plausibility pleading standard; (2) the anti-SLAPP statute improperly shifts the burden to Plaintiffs in contravention of Rules 8 and 12; (3) the anti-SLAPP statute permits consideration of extra-pleading materials before discovery, conflicting with Rules 12 and 56; and (4) the anti-SLAPP statute's fee-shifting provisions improperly penalize litigants. (*Id.* at 2-3). Plaintiffs cite to a recent concurrence from Judge Bress in an en banc decision of the Ninth Circuit, in which he argued that "federal courts do not apply state laws or rules if the Federal Rules of Civil Procedure attempt[] to answer the same question." *Gopher Media LLC v. Melone*, 154 F.4th 696, 710-11 (9th Cir. 2025) (en banc) (Bress, J., concurring) (internal quotation marks and citation omitted). Because the Supreme Court subsequently adopted similar reasoning as to the Delaware statute, Plaintiffs argue that this Court should now adopt Judge Bress' position.

*Berk* did not address or discuss California's anti-SLAPP statute, nor did it directly overrule any existing Ninth Circuit precedent permitting the application of the anti-SLAPP statute in federal court. However, as the Ninth Circuit has explained, in determining whether intermediate appellate precedent remains good law, "the issues decided by the higher court need not be identical in order to be controlling." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003). "Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.*

In multiple prior decisions, the Ninth Circuit has grappled with the permissible scope of the anti-SLAPP statute in conjunction with the Federal Rules. For example, in *United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, the Ninth Circuit concluded that the special motion to strike, Cal. Civ. Proc. Code § 425.16(b), and the fee-shifting provisions, *id.* § 425.16(c), could "exist side by side" with Federal Rules 8, 12, and 56.

190 F.3d 963, 972 (9th Cir. 1999) (citation omitted).  Subsequently, in *Metabolife International, Inc. v. Wornick*, the Ninth Circuit concluded that the "discovery-limiting aspects of § 425.16(f) and (g) collide with the discovery-allowing aspects of Rule 56" and cannot apply in federal court.  264 F.3d 832, 846 (9th Cir. 2001) (citation omitted).  Additionally, in *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, the Ninth Circuit concluded that Rules 12 and 56 should supply the standards that courts apply to evaluate anti-SLAPP motions, with the applicable standard varying depending on the basis for the motion.  890 F.3d 828, 833 (9th Cir. 2018).  Most recently, in *Gopher Media LLC*, the Ninth Circuit overruled prior case law that permitted automatic interlocutory review of orders denying anti-SLAPP motions but did not disturb precedent applying the anti-SLAPP statute more generally.  154 F.4th at 702.

The Court is skeptical that *Berk*'s reasoning is clearly irreconcilable with existing Circuit precedent.  *Berk* appears to be simply an application of existing Supreme Court precedent, not a new rule of law.  *See, e.g.*, *Hanna v. Plumer*, 380 U.S. 460, 471 (1965) ("When a situation is covered by one of the Federal Rules . . . the court has been instructed to apply the Federal Rule."); *Burlington N. R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987) ("The initial step is to determine whether, when fairly construed, the scope of [the Federal Rule] is sufficiently broad to cause a direct collision with the state law or, implicitly, to control the issue before the court, thereby leaving no room for the operation of that law." (internal quotation marks and citation omitted)).  In deciding the cases mentioned above, the Ninth Circuit took note of this precedent and repeatedly found that portions of the anti-SLAPP statute are not inconsistent with the Federal Rules.  Recently, presented with the opportunity to overturn this precedent, the en banc court declined to adopt the position advocated by Judge Bress that "California's anti-SLAPP statute is a state procedural device that does not apply in federal court."  *Gopher Media LLC*, 154 F.4th at 709 (Bress, J., concurring).  It does not appear to the Court that anything in *Berk* would change the Ninth Circuit's theory or reasoning on this question.

Ultimately, however, the resolution of this question is immaterial to the outcome of the instant Motion.  For the reasons discussed below, assuming that the anti-SLAPP statute remains applicable in federal court, Plaintiffs' claims here would still not be barred by the anti-SLAPP statute.

### 2. Arising from Protected Activity

At the first step under the anti-SLAPP statute, Defendants bear the burden of "demonstrating that [Plaintiffs'] suit against [them] arises from a protected act." *Mindy's Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010).  An act is protected if it "fits one of the categories spelled out in section 425.16, subdivision (e)." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002) (citation omitted).  These categories include "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." Cal. Civ. Proc. Code § 425.16(e).  A cause of action "arises from" such an act if "the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." *City of Cotati*, 29 Cal. 4th at 78.

Defendants argue that each of Defendants' alleged statements is protected as a statement "made before . . . any other official proceeding authorized by law." Cal. Civ. Proc. Code § 425.16(e).  Defendants identify the following relevant statements: ███████████████████████████ in connection with an ongoing federal investigation, their ████████████████████████████████████████████, and their ████ ███████████████████████████████████████ (Defendants' Mot. at 17).  Plaintiffs offer no argument on this point. *See* (Plaintiffs' Opp. at 13).

In the absence of any contrary argument from Plaintiffs, the Court agrees that Plaintiffs' claims arise from a protected act.  Plaintiffs' defamation and business disparagement claims are based on ████████████████████████████ in connection with a formal investigation.  Such an investigation qualifies as an "official proceeding authorized by law." *See ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1009 (2001) (concluding that "SEC proceedings, whether or not they are public,"

qualify as "official proceeding[s] for purposes of section 425.16"). Thus, Plaintiffs' claims arise from a protected act.

### 3. Reasonable Probability of Prevailing

In California state court, once a defendant has made a prima facie showing that the claims arise from protected activity, the burden shifts to the plaintiff to demonstrate "that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilson*, 28 Cal. 4th at 821 (internal quotation marks and citation omitted). In federal court, however, to avoid conflict with the Federal Rules of Civil Procedure, the Ninth Circuit has held that district courts should apply the standards of Rule 12 and 56. *Planned Parenthood Fed. of Am., Inc.*, 890 F.3d at 834; *see also Herring Networks, Inc.*, 8 F.4th at 1155-56. Where the anti-SLAPP motion "challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed. of Am., Inc.*, 890 F.3d at 834. On the other hand, where the motion "challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply," and the plaintiff must be allowed to take discovery before any decision is made by the court. *Id.*

Here, Defendants challenge only the legal sufficiency of Plaintiffs' claims, arguing that the statements on which Plaintiffs base their claims are protected by an absolute privilege under California law. (Defendants' Mot. at 18). Under California's litigation privilege, a "publication or broadcast" made as part of any "official proceeding authorized by law" is privileged, unless it falls within certain enumerated exceptions. Cal. Civ. Code § 47(b). In opposition, Plaintiffs do not challenge that Defendants' statements fall within the language quoted above. Instead, they argue that a recently enacted law creates an exception to the privilege for "any communication between a person and a law enforcement agency in which the person makes a false report that another has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement

-18-

intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report." Cal. Civ. Code § 47(b)(5).

The parties' dispute is primarily one of statutory interpretation. Plaintiffs argue that the statutory language clearly and unambiguously exempts communications, like those at issue here, that were made to "a law enforcement agency" and that involved "a false report that another has committed . . . a criminal act." (Plaintiffs' Opp. at 14-15). Plaintiffs argue that the Court need not resort to legislative history to interpret this statute. (*Id.* at 15). For their part, Defendants, citing the California State Senate Committee report discussed above, argue that the exception in § 47(b)(5) was intended only to "discourage individuals from using 911 or other communications with law enforcement to harass a person because that person belongs to a protected class." (ECF No. 36-9 at 2). Relying on the statutory text and the legislative history, Defendants argue that the statute applies only to "requests 'requiring law enforcement intervention,' i.e., prompt deployment of law enforcement personnel to stop a crime from being committed or to apprehend the perpetrator." (Defendants' Reply at 7). Defendants argue that the statements here do not qualify for the exception because (1) ███████████ did not reach out to contact the government but were instead contacted as part of a preexisting investigation; (2) Defendants did not report that a crime had been committed, only that it was ████████████████████ ███████████; and (3) Defendants were not seeking "law enforcement intervention" but were instead seeking to convince the government not to take action. (*Id.*).

Taking Plaintiffs' allegations as true, the Court agrees with Plaintiffs that § 47(b)(5) exempts Defendants' statements from the general litigation privilege. Based on its plain language, § 47(b)(5) creates an exception for (1) any communication, (2) between a person and a law enforcement agency, (3) in which the person makes a false report, (4) that another person has committed a criminal act, is in the act of committing a criminal act, or is engaged in an activity requiring law enforcement intervention, (5) knowing that the report is false, or with reckless disregard for the truth or falsity of the report. The Complaint here alleges facts to support each of these elements. On the first two elements, all of Defendants'

alleged defamatory statements were communications made to a law enforcement agency— ██████████████████████ On the third element, the Complaint is replete with allegations that Defendants made a false "statement or account" of ████████████████ ████████████████████████ "Report," Webster's New World College Dictionary at 1216 (4th ed. 2010); *see, e.g.*, (Compl. ¶¶ 10-12, 94-100).  These allegations of falsity are supported by specific factual allegations, including an explanation of Defendants' alleged motive for the scheme, its motive to lie about the scheme to investigators, examples of other occasions in which Defendants set up similar payment schemes, and statements from other individuals supporting Plaintiffs' account of what occurred.  *See, e.g.*, (*id.* ¶¶ 66-86). On the fourth element, the fact that Plaintiffs have been criminally charged based, in part, on Defendants' statements suggests that Defendants' statements qualified as reports "that another person has committed . . . a criminal act," or, at a minimum, "engaged in an activity requiring law enforcement intervention."  Cal. Civ. Code § 47(b)(5).  In charging Left criminally, the DOJ repeatedly referenced ████████████████ the payment scheme. For example, in alleging Plaintiffs' "acts in furtherance of the" scheme to defraud, the criminal complaint details the arrangement with Anson and states that "Left took steps to conceal that he was being compensated by Anson . . . by asking Anson to send him his share of trading profits through Third-Party Intermediary."  *See* DOJ Action, ECF No. 1 ¶ 175.  The complaint also cites this incident to support the allegations of scienter against Left.  *Id.* ¶ 211.  Because these allegations are elements of the criminal charges against Left, Defendants' statements amounted to reports of a "criminal act."[5]  Lastly, the

---

[5] During oral argument on these Motions, the parties informed the Court that the DOJ recently submitted a superseding indictment, which now alleges that Left merely participated in a false payment scheme, rather than directed it.  Thus, it appears that ████████████████████████ are no longer part of the criminal charges against Left. Nevertheless, the fact that ████████████████████ ██████ and offered as evidence of scienter demonstrates that the statements were reports of a "criminal act," even if this portion of the charges was later dropped.

Complaint contains sufficient allegations to suggest that Defendants knew the reports were false based on Defendants' alleged personal participation in the scheme.

The Court finds Defendants' contrary arguments unconvincing. First, Defendants argue that the legislative history of § 47(b)(5) shows that it was intended only to stop false 911 calls from being used to violate the rights of members of protected classes. (Defendants' Mot. at 20; Defendants' Reply at 7-8). However, unless there is ambiguity in the statutory language, "the Legislature is presumed to have meant what it said, and [courts] need not resort to legislative history to determine the statute's true meaning." *People v. Skiles*, 51 Cal. 4th 1178, 1185 (2011) (citation omitted). Defendants do not identify any specific portion of the statutory language that is ambiguous. Instead, Defendants argue that that the statute is necessarily ambiguous because Plaintiffs are "urging a contrary interpretation of th[e] text." (Reply at 8). But "the mere fact that the parties disagree about the meaning of the provision in question does not indicate that it is ambiguous." *Ailanto Props., Inc. v. City of Half Moon Bay*, 142 Cal. App. 4th 572, 597 (2006). As discussed above, the statute clearly exempts from the litigation privilege knowing or reckless false reports to law enforcement "that another person has committed . . . a criminal act." This is precisely what is alleged here.

However, even if the Court were to resort to looking at the legislative history, the Court's opinion would be unchanged. The Committee Report that Defendants cite to states that the purpose of the enacting bill was "to make a number of changes in criminal and civil law to discourage individuals from using 911 or other communications with law enforcement to harass a person because that person belongs to a protected class." (ECF No. 36-9 at 2). Given the reference to "other communications with law enforcement," Defendants' focus on 911 calls and immediate law enforcement intervention finds no support in this statement of purpose. To the extent Defendants argue that the exemption is limited by the reference to members of a "protected class," such a limitation finds no support in the statutory text. *See Nw. Env't Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d

668, 682 (9th Cir. 2007) ("[L]egislative history, untethered to text in an enacted statute, has no compulsive legal effect.").

Second, Defendants argue that the statute is limited to requests "requiring law enforcement intervention." (Defendants' Reply at 7). Defendants argue that the statements alleged here do not meet the exception because the government had already launched an investigation and Defendants' statements did not trigger the government intervention. (*Id.*). These arguments ignore the fact that the statute is written in the disjunctive: "a false report that another person has committed, or is in the act of committing, a criminal act *or* is engaged in an activity requiring law enforcement intervention." Cal. Civ. Code § 47(b)(5). To qualify, Plaintiffs can show that Defendants made (1) a false report that another person has committed a crime, (2) a false report that a person is committing a crime, or (3) a false report that another is engaged in an activity requiring law enforcement intervention. Even assuming the phrase "requiring law enforcement intervention" implies immediate intervention, Plaintiffs are under no obligation to make this showing. As discussed above, Plaintiffs have instead made out a showing under the first theory.

Third, Defendants argue that they were not "seeking 'law enforcement intervention,'" but were instead seeking to convince the government not to take action. (Defendants' Reply at 7). Again, this distinction is immaterial. The statute applies to any knowing or reckless false report. There is no motive requirement that the person must be intending to obtain law enforcement intervention. Even if the reason Defendants made the alleged false report was to avoid personal liability, the statute would still apply so long as Defendants knowingly made a "false report that another person has committed . . . a criminal act."

Lastly, Defendants argue that the Complaint alleges only that they reported that it was ███████████████████████████████, not that a crime had been committed. But as discussed above, this report amounted to a report of a "criminal act" given that Plaintiffs have been criminally and civilly charged based in part on these allegations. Based on the above, the Court DENIES Defendants' anti-SLAPP motion,

without prejudice to re-raising these arguments as an affirmative defense at summary judgment or trial.

### C. Motion to Dismiss

#### 1. Statute of Limitations

Having concluded that Plaintiffs' claims are not barred by the litigation privilege, the Court now turns to Defendants' Motion to Dismiss. First, Defendants argue that Plaintiffs' defamation claim is barred by the statute of limitations. (Defendants' Mot. at 21). As the parties agree, the defamation claim is subject to a one-year statute of limitations. Cal. Civ. Proc. Code § 340(c); *see Shively v. Bozanich*, 31 Cal. 4th 1230, 1246 (2003).

As alleged in the Complaint, the defamatory statements at issue here are: (1) statements made by Puri during ██████████████████████ (2) statements made by Puri and Kassam during ██████████████████████ ██████████████ and (3) statements made by Defendants in ███████████ ████████████████████████ (Compl. ¶¶ 90, 108, 111). Plaintiffs allege that transcripts of ██████████████ deposition were first provided to Plaintiffs' Counsel in November 2023 but were designated "Attorneys' Eyes Only." (*Id.* ¶ 122). As such, Plaintiffs claim that they did not receive access to the transcripts until October 8, 2024, when they were produced in discovery in the DOJ Action. (*Id.* ¶ 123). As to the ███████████ Plaintiffs allege that the DOJ did not release these documents until September 2025. (*Id.* ¶ 125). The parties agreed to toll the statute of limitations from October 1, 2025, to October 29, 2025, and Plaintiffs filed the Complaint on October 30, 2025. (*Id.* ¶ 132).

"When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). While "federal law governs the statute of limitations for federal causes of action," *Peikin v. Kenner*, No. CV 08-04399 SJO (Ex),

2008 WL 11411358, at *2 (C.D. Cal. Oct. 24, 2008), "[f]ederal courts addressing state law claims must apply state law statutes of limitation" and associated tolling rules, *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 878 F. Supp. 2d 1009, 1015 (C.D. Cal. 2011).

Turning to the parties' arguments, Defendants first argue that the statute of limitations should run from November 2023 when Plaintiffs' Counsel was first provided copies of ████████ deposition transcripts. (Defendants' Mot. at 21). Defendants argue that, under principles of agency, Plaintiffs' Counsel's knowledge can be imputed to Plaintiffs even where "the agent does not actually communicate with the principal, who thus lacks actual knowledge of the imputed fact." (*Id.* (quoting *Roche v. Hyde*, 51 Cal. App. 5th 757, 797 (2020)). In opposition, Plaintiffs argue that the Court cannot impute knowledge to Plaintiffs based on Plaintiffs' Counsel's possession of the deposition transcripts because the documents were subject to an Attorney's Eyes Only designation. (Plaintiffs' Opp. at 21).

The Court agrees with Plaintiffs. It is generally true that "an agent's knowledge of certain facts will be imputed to a principal when determining when a statute of limitations begins to run." *Santillan v. Roman Cath. Bishop of Fresno*, 163 Cal. App. 4th 4, 11 (2008). However, this principle applies only "[s]o long as the agent was under a duty to disclose certain information." *Id.* at 10; *see also Lazzarevich v. Lazzarevich*, 39 Cal. 2d 48, 50 (1952) ("Ordinarily a person is held to know what his attorney knows *and should communicate to him*." (emphasis added)). Here, Plaintiffs' Counsel was under an affirmative duty *not* to disclose the information to Plaintiffs because it was produced by Defendants under an Attorneys' Eyes Only designation. Accordingly, Counsel's knowledge of these documents cannot be imputed to Plaintiffs. *See* Restatement (Third) of Agency § 5.03 cmt. e (2006) ("If an agent knows a fact or has reason to know it, notice of the fact is imputed to the principal . . . unless the agent is subject to a duty not to disclose the fact to the principal.").

-24-

Defendants next argue that Plaintiffs were on inquiry notice of their claims as of at least July 2024. (Defendants' Mot. at 22). Defendants point out that the SEC announced a settlement with Defendants in June 2024 and published an Order Instituting Administrative and Cease-and-Desist Proceedings, which stated that "Individual A asked Anson Advisors to send him his share of trading profits through a third-party intermediary, to which Respondents agreed." (ECF No. 36-11 at 6). Defendants also point to the July 2024 complaints in the SEC and DOJ Actions, each of which referenced the agreement with Anson and alleged that Left directed the third-party payment scheme. (Defendants' Mot. at 22-23). In opposition, Plaintiffs argue that, although they reviewed the charging documents, they had no reason to suspect that the government's allegations derived from false statements made by Defendants. (Plaintiffs' Opp. at 22). Plaintiffs argue that the documents cited by Defendants state only the government's conclusion, not how the conclusion was reached. (*Id.* at 23). Plaintiffs otherwise contend that the discovery rule tolled the statute of limitations until October 8, 2024, when Plaintiffs first received copies of ▮▮▮▮▮▮ deposition transcripts.

Under California's discovery rule, a cause of action does not accrue "until the plaintiff discovers, or has reason to discover, the cause of action," which occurs "when he or she has reason at least to suspect a factual basis for its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (internal quotation marks and citation omitted). Plaintiffs "are charged with presumptive knowledge of an injury if they have information of circumstances to put them on inquiry or if they have the opportunity to obtain knowledge from sources open to their investigation." *Id.* at 807-08 (internal quotation marks, citation, alterations, and emphasis omitted).

The Court concludes that dismissal based on the statute of limitations would be premature at this stage. As noted above, a motion to dismiss based on the statute of limitations may be granted only if "the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon*, 614 F.2d at 682. The Court agrees with Defendants that the filing of the SEC and DOJ

complaints containing allegations that the third-party payment scheme was Left's idea were likely sufficient to put Plaintiffs on inquiry notice "that an injury has been wrongfully caused." *Fox*, 35 Cal. 4th at 808. As Plaintiffs acknowledge in the Complaint, Left was "shocked" when he saw these allegations and "thought it must be a mistake." (Compl. ¶ 120). Based on the SEC and DOJ complaints, Plaintiffs should have suspected that *someone*—perhaps Defendants or perhaps a third-party, such as Falcon Research—made false statements about Plaintiffs. At this point, Plaintiffs were under an obligation to conduct "a reasonable investigation," and they may be "charged with knowledge of the information that would have been revealed by such an investigation." *Fox*, 35 Cal. 4th at 808. However, the statute of limitations begins to run not from the moment that Plaintiffs were on inquiry notice, but from the time that a reasonable investigation "would have disclosed a factual basis for a cause of action." *Id.* at 808-09. As alleged in the Complaint, Plaintiffs *did* conduct an investigation after the filing of the SEC and DOJ complaints, which culminated in Plaintiffs obtaining the deposition transcripts through discovery on October 8, 2024. Thus, the only question is whether this investigation was "reasonable"— that is, whether Plaintiffs acted with sufficient diligence in investigating and determining the cause of their injury or whether Plaintiffs could reasonably have obtained the deposition transcripts earlier. Because this question hinges on factual determinations that are not evident on the face of the Complaint, it is not appropriate for decision on a motion to dismiss. Accordingly, the Court DENIES the Motion, without prejudice to re-raising these arguments after sufficient fact discovery.

## 2. Failure to State a Claim

Finally, Defendants seek dismissal of Plaintiffs' defamation and business disparagement claims for failure to state a claim. (Defendants' Mot. at 23). To state a claim for defamation, Plaintiffs must plausibly allege "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (citation omitted). To allege a claim for business disparagement, a plaintiff must show that the defendant

"(1) made a statement that disparages the quality of the plaintiff's product; (2) that the offending statement was couched as fact, not opinion; (3) that the statement was false; (4) that the statement was made with malice; and (5) that the statement resulted in monetary loss."[6]  *Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F. Supp. 2d 1037, 1048 (N.D. Cal. 2004) (citing *Guess, Inc. v. Superior Ct.*, 176 Cal. App. 3d 473, 479 (1986)). Defendants identify several alleged deficiencies in Plaintiffs' claims, each of which the Court discusses below.

a)    Falsity

First, Defendants argue that Plaintiffs have failed to plausibly allege any statements that are "provably false." (Defendants' Mot. at 23). Defendants argue that the only statements alleged in the Complaint were equivocal expressions of belief or understanding, not false statements of fact. For example, Defendants cite to a statement in ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (*Id.* at 24). Defendants argue that such equivocation cannot qualify as a provably false factual assertion.

The Court disagrees. As the Supreme Court has explained, there is no "wholesale defamation exemption for anything that might be labeled 'opinion.'" *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990). For example, "[i]f a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth." *Id.* "Simply couching such statements in terms of opinion does not dispel these implications; and the statement, 'In my opinion Jones is a liar,' can cause as much

---

[6] The Court notes that the cited sources relate to a claim for "trade libel," not "business disparagement." As other courts have recognized however, a claim for business disparagement is, in effect, a claim "for trade libel under California law because trade libel 'encompasses all false or misleading statements concerning the quality of services or product of a business which are intended to cause the business financial harm and do so.'" *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, No. 2:11-cv-02389-MRP-SS, 2014 WL 12577150, at *2 (C.D. Cal. Feb. 24, 2014) (quoting *ComputerXpress, Inc.*, 93 Cal. App. 4th at 1010).

damage to reputation as the statement, 'Jones is a liar.'" *Id.* at 19. "It would be destructive of the law of libel if a writer could escape liability for accusations of defamatory conduct simply by using, explicitly or implicitly, the words 'I think.'" *Id.* Defendants cite no contrary case law and do not even address this point in their Reply brief.

Moreover, the ███████ excerpts provided by Defendants do not consist solely of equivocal assertions of belief and understanding. Instead, at several points, ████████ ██████████████████████████████████████████████████████████████ ██████ For example, █████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████ (ECF No. 39-2 at 6). Similarly, █████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ (ECF No. 39-3 at 4). Accordingly, even if there were a defamation exception for equivocal statements, Defendants' statements would not necessarily qualify.

b)   *Defamatory*

Second, Defendants argue that the Complaint fails to allege that the statements were either defamatory or defamatory *per se*. Defendants argue that the statements are not defamatory *per se* because they require extensive background and context to convey any possible defamatory meaning. Defendants also argue that their alleged statements are not defamatory at all because they have no "natural tendency to injure." (Defendants' Mot. at 24-25). Plaintiffs respond that Defendants' statements are defamatory because they plainly, even if indirectly, asserted that Left engaged in criminal conduct. Plaintiffs also argue that no "extrinsic facts" are needed to understand the defamatory content of the statements because "the concern about false invoices is apparent from the surrounding context." (Plaintiffs' Opp. at 26-27).

California law provides that defamation may be effected by either libel or slander. Cal. Civ. Code § 44. Libel is defined as "a false and unprivileged publication by writing . . . or other fixed representation to the eye, which exposes any person to hatred,

contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." *Id.* § 45.  Slander, meanwhile, is defined as a "false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means." *Id.* § 46.

California law distinguishes between claims of defamation, which require proof of special damages, and claims of defamation *per se*, which do not.  Libel qualifies as *per se* if it is "defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact."  *Id.* § 45a.  "Where the statement is defamatory *on its face*, it is said to be libelous per se, and actionable without proof of special damage.  But if it is defamation *per quod*, i.e., if the defamatory character is not apparent on its face and requires an explanation of the surrounding circumstances (the 'innuendo') to make its meaning clear, it is not libelous per se, and is not actionable without pleading and proof of special damages." *Barker v. Fox & Assocs.*, 240 Cal. App. 4th 333, 351 (2015) (quoting 5 Witkin, Summary Cal. Law Torts § 541 (10th ed. 2005)).

Meanwhile, slander *per se* requires that the oral statement "(1) charges any person with crime, or with having been indicted, convicted, or punished for crime; (2) imputes in him the present existence of an infectious, contagious, or loathsome disease; (3) tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that had a natural tendency to lessen its profits; [or] (4) imputes to him impotence or a want of chastity." Cal. Civ. Code § 46.  "A slander that falls within the first four subdivisions of Civil Code section 46 is slander per se and requires no proof of actual damages.  A slander that does not fit into those four subdivisions is slander per quod, and special damages are required for there to be any recovery for that slander." *Regalia v. The Nethercutt Collection*, 172 Cal. App. 4th 361, 367 (2009) (internal citations omitted).  All other forms of slander require a showing that the statement "by natural consequence[] cause[d] actual damage." Cal. Civ. Code § 46(5).

The Court agrees with Defendants that Plaintiffs have failed to allege libel *per se* in the form of the ██████████████    To meet this standard, Plaintiffs must show that "a defamatory meaning appears from the language itself without the necessity of explanation or the pleading of extrinsic facts." *Palm Springs Tennis Club v. Rangel*, 73 Cal. App. 4th 1, 5 (1999).  The written statements Defendants are alleged to have made—████████ ███████████████████████████████████████—do not, on their face, defame Left.  Rather, it is only with the added context of the SEC and DOJ investigations into Anson and Left that the defamatory character of these statements becomes clear.  Because the "defamatory meaning would appear only to readers who might be able to recognize it through some knowledge of specific facts and/or circumstances, not discernable from the face of the publication, and which are not matters of common knowledge rationally attributable to all reasonable persons," the ███████████ do not constitute libel *per se*.  *Id.*

However, as to Defendants' statements during the ██████████, the Court is inclined to find that slander *per se* is adequately alleged.  Unlike with libel, California law does not require the Court to ignore the surrounding context in evaluating a *per se* slander claim.  *See Regalia*, 172 Cal. App. 4th at 367 ("[U]nlike libel, which is per se when defamatory on its face, the extrinsic fact issue is irrelevant for slander in connection with the per se and per quod distinction." (internal quotation marks, citations, and alterations omitted)).  Instead, if a statement "falls within the first four subdivisions of Civil Code section 46," a plaintiff can state a *per se* claim without pleading actual damages.  *Id.*  On the record before the Court, it appears that Defendants' statements "[t]end[] directly to injure [Plaintiffs] in respect to [their] office, profession, trade or business . . . by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits."  Cal. Civ. Code § 46(3).  Starting with the latter clause, Defendants' alleged statements ██████████████████████████████████████████████ suggest that Left was attempting to cover up the payments, implying a dishonest purpose.  Taken in the context of an SEC investigation into whether the parties committed fraud, these

statements had a "natural tendency to lessen" the profits of Citron because they substantially contributed to the SEC's and DOJ's decisions to charge Left. *See* (DOJ Action, ECF No. 100 at 7 (opposition brief from the DOJ stating that Left's efforts to "cover [] up" the payments from hedge funds, including Anson, were "central to his market manipulation scheme")). The statements also directly tend to injure Plaintiffs by subjecting them to further civil and criminal liability or at least strengthening the existing charges against them. While the Court is inclined, based on the arguments presented, to find the allegations sufficient to state a claim for slander *per se*, the Court ultimately need not decide this question since, as discussed below, even assuming otherwise, Plaintiffs have adequately pleaded special damages.

c)    <em>Disparaging Plaintiffs' Business</em>

Third, Defendants argue that Plaintiffs' business disparagement claim fails to allege any statements that clearly derogate or disparage Plaintiffs' business. (Defendants' Mot. at 26). Defendants contend that a business disparagement claim must be based on statements derogating the "quality, accuracy, reliability, or character of" a business. (Defendants' Reply at 16). Plaintiffs respond that the disparaging statements may consist of statements derogating Plaintiffs' business in general. (Plaintiffs' Mot. at 28). They argue this standard is met because Defendants' statements suggested that Citron was engaging in accounting fraud. Plaintiffs also suggest that statements about Left are also about his business because Citron is a sole proprietorship.

The Court agrees with Defendants that Plaintiffs have not alleged that Defendants made any statements derogating Left's *business*, as opposed to him personally. The Complaint does not identify any statements by Defendants that disparaged any aspect of Left's business. Instead, the statements identified in the Complaint all suggest that ███ ███████████████████████████████████████████████ *See* (Compl. ¶¶ 94, 97-98). Similarly, the ████████████████ provided by Defendants contain numerous statements about Left, but not a single statement about Citron or any other business associated with Left. *See* (ECF Nos. 39-2, 39-3). Accordingly, Plaintiffs have not alleged

any "false or misleading statement that (1) specifically refers to [Plaintiffs'] product or business and (2) clearly derogates that product or business." *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 59 Cal. 4th 277, 284 (2014).

Plaintiffs argue that, because Citron is a "sole proprietorship," any statements about Left are necessarily statements about Citron. (Plaintiffs' Opp. at 29). Even assuming this is true for sole proprietorships, however, Citron is *not* a sole proprietorship but a limited liability company. Under California law, a "limited liability company is an entity distinct from its members." Cal. Corp. Code § 17701.04(a); *see also Abrahim & Sons Enters. v. Equilon Enters., LLC*, 292 F.3d 958, 962 (9th Cir. 2002) ("Corporations and LLCs are distinct legal entities, separate from their stockholders or members."). Plaintiffs fail to support their argument in favor of some form of reverse veil-piercing with any applicable case law.

Accordingly, the Court GRANTS this portion of Defendants' Motion and DISMISSES the business disparagement claim. Because it is not yet clear that leave to amend would be futile, the Court grants Plaintiffs leave to amend with respect to this claim.

d)      *Unprivileged*

Defendants next argue that Plaintiffs have not alleged any unprivileged statement for the same reasons raised with respect to the anti-SLAPP motion. (Defendants' Mot. at 26). For the reasons discussed above, the Court concludes that Plaintiffs have adequately alleged that an exception to California's litigation privilege applies here.

e)      *Actual Malice*

Defendants next argue that Plaintiffs must prove actual malice to support their claims, contending that Left qualifies as a public figure because he and Citron have been the subject of numerous news articles, including two articles submitted as exhibits with the Motion. Defendants argue that Plaintiffs have not met this standard because the only allegations that the allegedly false statements were made with actual malice are conclusory. (Defendants' Mot. at 26-27). Plaintiffs object to the characterization that they are public figures and argue that they need not show actual malice. However, in the event they qualify

as public figures, Plaintiffs argue that they have met the standard by alleging that Defendants knew their statements were false when made and by identifying Defendants' motive to lie. (Plaintiffs' Mot. at 29-30).

Where a defamation plaintiff is a public figure, the plaintiff must demonstrate "not only the falsity of the challenged statements, but also that [the] defendant acted with actual malice." *Nguyen-Lam v. Cao*, 171 Cal. App. 4th 858, 867 (2009) (internal quotation marks and citation omitted). This requires showing that the statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).

The Supreme Court has identified two types of public figures: "(1) all purpose public figures, who occupy 'positions of such persuasive power and influence that they are deemed public figures for all purposes,' and (2) limited purpose public figures, who achieve their status by 'thrust[ing] themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved.'" *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 265 (9th Cir. 2013) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)). To determine whether an individual is a limited purpose public figure, courts look to three factors: "First, there must be a public controversy, which means the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipants. Second, the plaintiff must have undertaken some voluntary act through which he or she sought to influence resolution of the public issue. In this regard it is sufficient that the plaintiff attempts to thrust him or herself into the public eye. And finally, the alleged defamation must be germane to the plaintiff's participation in the controversy." *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1577 (2005).

For purposes of the instant Motion, the Court need not decide whether Plaintiffs qualify as public figures because, even assuming they do, Plaintiffs have adequately pleaded actual malice. The Complaint is replete with allegations that plausibly suggest that Defendants knew or should have known that the challenged statements were false. Defendants are alleged to have personally participated in setting up the third-party payment

scheme, thus suggesting that they knew the truth about what occurred. ████████ ████████████████████████████████████████ Defendants, knowing that the issue was material to their liability, are alleged to have falsely attributed the plan to Left. Thus, the Complaint identifies both a basis for Defendants' knowledge of the truth and a motive for them to lie about it. This is more than sufficient to establish actual malice at the pleadings stage. As Plaintiffs argue, under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Moreover, the Ninth Circuit has emphasized that actual malice "is a subjective standard that turns on the defendant's state of mind" and "is typically proven by evidence beyond the defamatory publication itself." *Flowers v. Carville*, 310 F.3d 1118, 1131 (9th Cir. 2002). As such, the issue of actual malice "cannot be properly disposed of by a motion to dismiss . . . where there has been no discovery." *Metabolife Int'l, Inc.*, 264 F.3d at 848. Accordingly, the Court DENIES this aspect of the Motion.

*f)        Monetary Loss and Special Damages*

Finally, Defendants argue that Plaintiffs cannot plausibly allege special damages because their injuries flow from the DOJ's and SEC's investigations, which were not proximately caused by Defendants' alleged statements. (Defendants' Mot. at 28). Defendants argue that Plaintiffs cannot show that, but for the statements, Plaintiffs' business would have not diminished, and he would not face criminal charges. (*Id.*). Defendants also argue that Plaintiffs cannot show causation because they have previously admitted in the SEC and DOJ Actions that the cases are based not on the payment arrangement with Anson but on his public comments about companies and his undisclosed trading in their stock. (*Id.*). Finally, Defendants argue that Plaintiffs cannot show general business losses attributable to the statements as opposed to the DOJ and SEC Actions. (*Id.* at 29).

In opposition, Plaintiffs argue that they have alleged that the DOJ and SEC Actions against them were brought at least in part because of Defendants' false statements. (Plaintiffs' Opp. at 30). Plaintiffs assert that, as a result, they have had to cut back on

trading and divert their efforts to defending themselves, which has cost them millions of dollars in potential earnings. (*Id.*). Additionally, Plaintiffs argue that they have had to spend attorney's fees and costs defending against these specific allegations that they otherwise would not have incurred. (*Id.*).

California law defines "special damages" as "all damages that plaintiff alleges and proves that he or she has suffered in respect to his or her property, business, trade, profession, or occupation, including the amounts of money the plaintiff alleges and proves he or she has expended as a result of the alleged libel, and no other." Cal. Civ. Code § 48a(d)(2).

On the record before the Court, it is plausible that Plaintiffs could recover special damages in the form of attorney's fees and other costs incurred in defending against Defendants' allegedly false statements. As discussed above, Defendants' statements that ███████████████████████ are a material element of the SEC and DOJ charges against Left, supporting the allegations of a fraudulent scheme and scienter. While it may be likely that the SEC and DOJ charges would still have been brought absent Defendants' statements, this conclusion would not foreclose Plaintiffs from incurring additional expenses as a direct result of Defendants' statements. For example, in the DOJ Action, Plaintiffs filed a motion to strike surplusage, in which they sought to strike, as irrelevant, the allegations that "Left created and sent false invoices (via a third-party) to a hedge fund to obtain payment for 'Left's share of profits from the hedge fund's trading around Citron's publications and media campaigns.'" (DOJ Action, ECF No. 61 at 10-11). Though this motion was ultimately denied, *see* (*id.*, ECF No. 143), Plaintiffs presumably incurred expenses in filing this motion that are a direct "result of the alleged libel." Similarly, it is plausible that Plaintiffs will incur other direct expenses, such as attorney's fees incurred in preparing subpoenas, conducting depositions, and preparing for and examining witnesses at trial related to Defendants' allegedly false statements. Accordingly, Plaintiffs have plausibly pleaded special damages resulting from Defendants'

alleged defamatory statements. The Court need not decide at this stage whether Plaintiffs could also recover on their other theories of special damages.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS, in part, and DENIES, in part, the Motion as follows:

1.  Defendants' anti-SLAPP motion is DENIED, without prejudice to re-raising these arguments following a period of discovery;

2.  Defendants' motion to dismiss the defamation claim under the statute of limitations is DENIED, without prejudice to re-raising these arguments following a period of discovery;

3.  Defendants' motion to dismiss Plaintiffs' defamation claim for failure to state a claim is DENIED; and

4.  Defendants' motion to dismiss Plaintiffs' business disparagement claim for failure to state a claim is GRANTED, and the business disparagement claim is DISMISSED, with leave to amend.

Within twenty-one (21) days of the issuance of this Order, Plaintiffs may file an amended complaint addressing the deficiencies identified herein. If Plaintiffs fail to file an amended complaint, the Complaint will become the operative complaint, and Defendants shall file an Answer within fourteen (14) days thereafter. Additionally, given the Court's discussion of sealed records in this Order, the Court has filed the instant Order under seal. Within fourteen (14) days of the issuance of this Order, the parties shall meet

and confer and lodge with the Court a proposed redacted version of this Order to be filed publicly on the docket.

**IT IS SO ORDERED.**

DATED: March 31, 2026

_____
Hon. Sherilyn Peace Garnett