QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Robert M. Schwartz (Bar No. 117166)
    robertschwartz@quinnemanuel.com
  Bomie Lee (Bar No. 356618)
    bomielee@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

  William Burck (*pro hac vice*)
    williamburck@quinnemanuel.com
  Kurt Wolfe (*pro hac vice*)
    kurtwolfe@quinnemanuel.com
  Kristin Casey (*pro hac vice*)
    kristincasey@quinnemanuel.com
555 13th Street, NW
Washington, DC 20004
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ANDREW LEFT and CITRON CAPITAL, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>ANSON FUNDS MANAGEMENT LP, ANSON ADVISORS, INC., MOEZ KASSAM, and SUNNY PURI,<br><br>Defendants. | Case No. 2:25-cv-10432−SPG-AYP<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO (1) STRIKE SECOND AMENDED COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE (C.C.P. § 425.16), AND/OR (2) DISMISS PURSUANT TO RULE 12(b)(6)**<br><br><span style="color:red">**REDACTED VERSION**</span><br><br>Judge: Hon. Sherilyn Peace Garnett<br><br>Hearing Date:        June 17, 2026<br>Hearing Time:        1:30 p.m.<br>Location:              Courtroom 5C |

Case No. 2:25-cv-10432−SPG-AYP

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT.........................................................................................................3

I.  THE COURT MAY PROPERLY CONSIDER THIS MOTION ...................3

    A.  To Constrain Defendants' Rights, Plaintiffs Present a Misleading "Summary" Table of the Pleadings and Defendants' Prior Attacks..........................................................................................3

    B.  Reconsideration Rules, Rule 12(g)(2), and the Law of the Case Doctrine Do Not Apply..........................................................................3

II.  PLAINTIFFS' NEW ALLEGATIONS FAIL TO CURE THE LEGAL DEFICIENCIES IN THEIR DEFAMATION CLAIM.................................6

    A.  Plaintiffs Cannot Plausibly Plead Causation.........................................6

    B.  Plaintiffs Fail to Adequately Plead Post-Suit Defamation. ..................6

    C.  The Court May Strike Portions of Plaintiffs' Defamation Claim...........8

III.  THE BUSINESS DISPARAGEMENT CLAIM IS INCURABLE.................9

    A.  The ██████████████ Did Not Derogate *Citron's* Business...............9

    B.  Plaintiffs' Causation and Special Damages Rebuttals Fail. ................11

IV.  PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS ........................13

    A.  The SAC Does Not Plausibly Allege the Claim. ................................13

    B.  The SAC Does Not Plausibly Allege Facts Substantiating Law Enforcement's Decision-Making........................................................14

CONCLUSION ...................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Alvarez v. City of Santa Ana*,
   802 F. Supp. 3d 1186 (C.D. Cal. 2025) ...............................................................8

*In re Apple iPhone Antitrust Litig.*,
   846 F.3d 313 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*,
   587 U.S. 273 (2019)..............................................................................................5

*Askins v. U.S. Dep't of Homeland Sec.*,
   899 F.3d 1035 (9th Cir. 2018) ..............................................................................5

*Baral v. Schnitt*,
   1 Cal. 5th 376 (2016) ............................................................................................9

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*,
   2018 WL 11361335 (N.D. Cal. Nov. 19, 2018)....................................................5

*Ferlauto v. Hamsher*,
   74 Cal. App. 4th 1394 (1999)................................................................................7

*G.U.E. Tech, LLC v. Panasonic Avionics Corp.*,
   2015 WL 12696203 (C.D. Cal. Sept. 15, 2015)..................................................13

*Gerald Peters Gallery, Inc. v. Stremmel*,
   815 F. App'x 138 (9th Cir. 2020).........................................................................11

*GetFugu, Inc. v. Patton Boggs LLP*,
   220 Cal. App. 4th 141 (2013)................................................................................7

*Gopher Media LLC v. Melone*,
   2024 WL 5442826 (S.D. Cal. Apr. 17, 2024)......................................................11

*Guerrero v. Gates*,
   442 F.3d 697 (9th Cir. 2006).................................................................................8

*Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*,
   59 Cal. 4th 277 (2014) ........................................................................................11

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
   2014 WL 6892141 (C.D. Cal. Nov. 5, 2014).......................................................13

Case No. 2:25-cv-10432−SPG-AYP

DEFENDANTS' REPLY ISO SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS SAC

*Info. Control Corp. v. Genesis One Computer Corp.*,
611 F.2d 781 (9th Cir. 1980).................................................................................7

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*,
12 F. Supp. 2d 1035 (C.D. Cal. 1998) ...............................................................12

*Jackson v. Mayweather*,
10 Cal. App. 5th 1240 (2017), *as modified* (Apr. 19, 2017)...............................8

*Kajeet, Inc. v. Qustodio, LLC*,
2019 WL 13149928 (C.D. Cal. Aug. 22, 2019)....................................................7

*Kar v. Lincoln Auto. Fin. Servs.*,
2024 WL 5274620 (C.D. Cal. Nov. 15, 2024).....................................................8

*King v. Facebook, Inc.*,
572 F. Supp. 3d 776 (N.D. Cal. 2021)................................................................15

*Kona Enters., Inc. v. Est. of Bishop*,
229 F.3d 877 (9th Cir. 2000)................................................................................4

*Krouch v. Wal-Mart Stores, Inc.*,
2014 WL 5463333 (N.D. Cal. Oct. 28, 2014).....................................................14

*La Barbera v. Ole Mexican Foods Inc.*,
2023 WL 4162348 (C.D. Cal. May 18, 2023) ......................................................4

*Lopez v. Dang*,
2022 WL 1567452 (C.D. Cal. Apr. 21, 2022), *aff'd*, 2023 WL
2301511 (9th Cir. Mar. 1, 2023) ..........................................................................5

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009)................................................................................4

*McBride v. Boughton*,
123 Cal. App. 4th 379 (2004)..............................................................................14

*Nguyen v. Stephens Inst.*,
529 F. Supp. 3d 1047 (N.D. Cal. 2021)...............................................................14

*Peterson v. Sanghi*,
2019 WL 1715487 (C.D. Cal. Feb. 14, 2019).....................................................11

*Phelps v. Air-GP LLC*,
2025 WL 3190903 (C.D. Cal. Oct. 6, 2025)..........................................................9

iii

*Polygram Recs., Inc. v. Superior Ct.*,
   170 Cal. App. 3d 543 (1985)..................................................................................10

*Rhodeman v. Ocwen Loan Servicing, LLC*,
   2020 WL 1698709 (C.D. Cal. Apr. 3, 2020) .........................................................4

*Riganian v. LiveRamp Holdings, Inc.*,
   791 F. Supp. 3d 1075 (N.D. Cal. 2025)...............................................................14

*S.E.C. v. Left*,
   No. 2:24-cv-6311-SPG (C.D. Cal.) ........................................................................6

*SDV/ACCI, Inc. v. AT & T Corp.*,
   522 F.3d 955 (9th Cir. 2008)................................................................................11

*Sivakova v. Am. Honda Motor Co., Inc.*,
   2025 WL 2324632 (C.D. Cal. July 17, 2025)........................................................3

*Tayts v. Gacutan*,
   2026 WL 1257737 (N.D. Cal. May 7, 2026)....................................................8, 12

*United States v. Left*,
   No. 2:24-cr-456-VAP (C.D. Cal.) ..................................................................1, 2, 12

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   903 F. Supp. 2d 880 (C.D. Cal. 2012) ...................................................................4

*Yockey v. Salesforce*,
   745 F. Supp. 3d 945 (N.D. Cal. 2024)....................................................................4

**Other Authorities**

Fed. R. Civ. P. 9(g) ...............................................................................8, 12, 13

Fed. R. Civ. P. 12(b)(6)....................................................................................1, 8

Fed. R. Civ. P. 12(g) ..........................................................................................3, 5

Case No. 2:25-cv-10432−SPG-AYP

DEFENDANTS' REPLY ISO SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS SAC

### INTRODUCTION

Two days ago, a jury convicted Plaintiff Andrew Left on 13 of 17 felony counts of violating federal securities laws. *See* Ex. A, *United States v. Left*, No. 2:24-cr-456-VAP ("*U.S. v. Left*"), ECF No. 417 (June 1, 2026 Verdict Form). That verdict, the existence of which the Court can take judicial notice, has profound, preclusive, and likely dispositive effects on this civil case. Defendants will be filing additional anti-SLAPP and Rule 12(b)(6) motions based on the guilty verdict once it becomes final. Post-trial motions will be heard on August 17. Meanwhile, this Court may wish to consolidate the hearing on this Motion with those new motions.

As to this Motion, Plaintiffs' Opposition takes indefensible liberties with facts they put at issue in their Second Amended Complaint ("SAC") or that are subject to judicial notice. Plaintiffs cannot spin them, even on a pleading motion. Their distortions permeate their Opposition and require correction at the outset.

The gist of this lawsuit is that Defendants made false statements to ███████ ██████████ about their dealings with Left, which caused the DOJ and SEC to bring criminal and civil charges against him that damaged his reputation and business. Defendants' statements concerned payments Left received from Anson through non-party Falcon Research. Left does not deny that he received them or that they represented his cut of trading profits from his critical statements about Namaste Technologies, which depressed the share price. The SAC alleges that Defendants lied when they told ████████████████████████████████████ ████████ and that those statements are what brought the government's wrath upon him. *See, e.g.*, SAC ¶¶ 10–13, 15, 96–110, 115–20.

But the judicially noticeable record eviscerates that theory in every material respect. Left's original (2024) and superseding (2026) indictments and the DOJ's briefs establish that Left was not indicted over whether it was ████████████ ██████████████████████████████████. Instead, all but one of the 18 counts arise from Left's scheme of falsely presenting himself to the investor

community as an honest voice about public companies when, in fact, he was releasing fabricated statements and trading ahead of them to profit on the change in the share price caused by his self-titled "bombshell" reports.  *See* Ex. B, *U.S. v. Left*, ECF No. 176 ¶¶ 18–134 (Superseding Indictment).  Namaste is only one of those 16 companies.[1]

As for the third-party payment scheme, it was relevant to Left's indictment only insofar as the DOJ alleged that Left lied when he denied receiving compensation for consulting with a hedge fund before he released one of his reports. *See id*. ¶ 136(b) (Count 18).  Left was not charged with ████████████ ████████████████████████; he was charged with denying that he had received any compensation at all.  *See id.*  Lest there be any doubt, in response to one of Left's *in limine* motions, the DOJ confirmed that the question, ████████ █████ is not a part of its case against him.  *See* Ex. C, *U.S. v. Left*, ECF No. 254 at 17 (DOJ's Opposition).

Plaintiffs' Opposition also asserts that the DOJ concluded that Defendants ████████████████ in their statements to ████████.  Opp. at 9, 17.  But that assertion appears nowhere in the record of Left's criminal case.  Left made that up.

Accepting as true only the well-pleaded allegations, Plaintiffs cannot plausibly allege that Defendants' confidential statements to the government about a payment arrangement for one trade were the legal cause of Left's indictment or the damages that he seeks to attribute to Defendants.  That is the controlling legal question, and nothing in Plaintiffs' Opposition changes it.  As detailed below, Plaintiffs' other attempts to defend their allegations are equally untenable.

---

[1] The other companies whose stock the DOJ indicted Left for fraudulently trading are American Airlines, Beyond Meat, Cronos Group, Facebook, General Electric, Luckin Coffee, Novavax, Nvidia, Invitae, Palantir, Polarity, Roku, Tesla, Twitter, and XL Fleet.  Ex. B ¶ 134; *see also* Ex. A at 3.  Defendants had no involvement.

**ARGUMENT**

I.    **THE COURT MAY PROPERLY CONSIDER THIS MOTION**

    A.    **To Constrain Defendants' Rights, Plaintiffs Present a Misleading "Summary" Table of the Pleadings and Defendants' Prior Attacks.**

Plaintiffs offer a table of prior filings to assert that Defendants' arguments are "mere rehashes of arguments this Court already rejected." Opp. at 11–12. The table is misleading, and their characterizations are wrong. Defendants' Motion is directed to the SAC's new allegations. The SAC adds allegations that the DOJ's superseding indictment is conclusive evidence that "Anson and its principals lied to law enforcement under oath." SAC ¶ 14 n.2; *see also* ¶ 156. Plaintiffs also added allegations attempting to bolster causation and special damages for their business disparagement claim. *See id.* ¶¶ 175–87. Defendants are entitled to move against those amendments. That some section headings and legal arguments overlap is unremarkable. In challenging the legal sufficiency of the same claims for relief, some continuity is inevitable.

Plaintiffs' table also misrepresents Defendants' prior arguments. In their reply brief on their initial motion, Defendants argued that ███████████ ██████████ had nothing to do with Left's indictment—not, as Plaintiffs argue, that the DOJ abandoned that theory by filing a superseding indictment. *See* ECF No. 71 at 18 (Reply); Opp. at 11. When Defendants flagged the superseding indictment at the March 4 hearing, they did so to discharge their duty of candor and because it issued after Defendants' initial motion. *See* ECF No. 82 at 25:20–26:1 (Hearing Transcript); Opp. at 11. Defendants never waived their right to address it further, especially after Plaintiffs put it at the core of their amended complaint.

    B.    **Reconsideration Rules, Rule 12(g)(2), and the Law of the Case Doctrine Do Not Apply.**

Based on Plaintiffs' misleading chart, they contend that only three arguments are properly before the Court, citing *Sivakova v. Am. Honda Motor Co., Inc.*, 2025

WL 2324632, at *4 (C.D. Cal. July 17, 2025), for the proposition that a renewed motion may target only amended material. Opp. at 14. But that is exactly what Defendants have done: The Motion identifies the paragraphs added to the SAC and challenges Plaintiffs' new causation and special damages allegations on their merits. *Yockey v. Salesforce*, 745 F. Supp. 3d 945, 950–51 (N.D. Cal. 2024), confirms that the Motion is proper; Defendants have not answered and have raised new arguments directed at the legal sufficiency of an amended pleading. Mot. at 15.

"[W]here a plaintiff files an amended complaint, superseding the original complaint and rendering it without legal effect, courts routinely permit defendants to 'move to challenge the *entire* amended complaint—including those causes of action the court had previously found sufficient.'" *La Barbera v. Ole Mexican Foods Inc.*, 2023 WL 4162348, at *7 (C.D. Cal. May 18, 2023) (emphasis in original); *see also In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 893 (C.D. Cal. 2012) ("permitt[ing] defendants moving to dismiss an amended complaint to make arguments previously made and to raise new arguments that were previously available."). "Such a motion to dismiss is thus not necessarily treated as an impermissible motion for reconsideration, although a district court is free to simply disregard arguments previously rejected and stand by its earlier ruling." *La Barbera*, 2023 WL 4162348, at *7.

Plaintiffs' cited cases, Opp. at 12–14, are inapposite. *See, e.g., Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880–81 (9th Cir. 2009) (court construed a motion to introduce additional evidence as a motion for reconsideration); *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 891 (9th Cir. 2000) ("denying plaintiffs' motion for reconsideration" because they had numerous opportunities to raise their arguments); *Rhodeman v. Ocwen Loan Servicing, LLC*, 2020 WL 1698709, at *3 (C.D. Cal. Apr. 3, 2020) (defendant "explicitly and repeatedly state[d] that it [wa]s requesting reconsideration" and its arguments were "virtually identical to the arguments the Court [previously] rejected").

Plaintiffs' argument that Defendants' Motion is barred by Rule 12(g)(2), which promotes judicial economy by constraining defendants' right to file successive motions to dismiss, is wrong. "Rule 12(g) is designed to avoid repetitive motion practice, delay, and ambush tactics." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019). Defendants' Motion does not ambush Plaintiffs; "they were on notice that … [their] allegations were insufficient to state [a] claim." *Lopez v. Dang*, 2022 WL 1567452, at *3 (C.D. Cal. Apr. 21, 2022), *aff'd*, 2023 WL 2301511 (9th Cir. Mar. 1, 2023). Moreover, Defendants' Motion is "inconsistent with an effort to delay," and "[c]onsidering this motion would expedite disposition of the case on the merits and would thus be proper." *Id.*; *see also Apple iPhone Antitrust Litig.*, 846 F.3d at 319 (collecting cases supporting the Court's exercise of discretion); *Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, 2018 WL 11361335, at *5 (N.D. Cal. Nov. 19, 2018) ("additional allegations and new claims weigh in favor of finding that … [defendants] have not waived their right to challenge those allegations now"). "[C]onsideration of this [M]otion would best serve the purpose of Rule 12(g)." *Lopez*, 2022 WL 1567452, at *3.

Nor does the law of the case doctrine preclude Defendants from making their causation and special damages arguments. Contrary to Plaintiffs' framing, *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018), holds that just as an "amended complaint is a new complaint, entitling the plaintiff to judgment on the complaint's own merits," a new motion to dismiss entitles the defendant to "a new determination." The Court is free to "decide the second motion to dismiss in the same way it decided the first," but it is not bound by the law of the case. *Id.*; *see also Lopez*, 2022 WL 1567452, at *3 ("Just as Plaintiffs may bring new allegations in … [their] amended complaint, … [Defendant] may present new arguments in his motion to dismiss, and the Court may rule on those arguments.").

DEFENDANTS' REPLY ISO SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS SAC

## II.   PLAINTIFFS' NEW ALLEGATIONS FAIL TO CURE THE LEGAL DEFICIENCIES IN THEIR DEFAMATION CLAIM

### A.   Plaintiffs Cannot Plausibly Plead Causation.

Plaintiffs do not dispute the Court's ruling that the "███ statements do not constitute libel *per se*." ECF No. 86 at 30 (Dismissal Order).  As for Defendants' ███████, Plaintiffs acknowledge that the Court ruled only that "it 'is inclined to find that slander *per se* is adequately alleged.'"  Opp. at 16 (quoting ECF No. 86 at 30).  But the Court held that it "ultimately need not decide this question."  ECF No. 86 at 31.  It is thus misleading for Plaintiffs to argue that they are "'entitled to go forward with [their] defamation *per se* cause of action'" without adequately pleading causation.  Opp. at 16.

Plaintiffs argue that "Defendants at best raise a fact issue … [as to] whether the government would have prosecuted Plaintiffs but for Defendants' lies." *Id.* at 17.  But the SAC offers only a conclusory allegation that, absent Defendants' statements, the government would not have pursued Plaintiffs.  The underlying facts are not subject to dispute.  All but two of the 19 criminal counts in the original indictment had nothing to do with the invoice scheme; the superseding indictment then withdrew the allegation that ████████████. *See* Ex. B ¶ 123 (noting only that Left "participated in … [the invoice] scheme").  And in opposing Left's motion to exclude Anson-related evidence, the DOJ confirmed that "[i]t does not intend to get into who 'directed' ████████████."  Ex. C at 17.  Likewise, the SEC complaint asserts that the "action concerns Left's misuse of the Citron Research platform in connection with reports and tweets he published … to generate approximately $20 million in illegal trading profits"—allegations that turn solely on Plaintiffs' conduct. *S.E.C. v. Left*, No. 2:24-cv-6311-SPG, ECF No. 1 ¶ 5.

### B.   Plaintiffs Fail to Adequately Plead Post-Suit Defamation.

As explained in Defendants' Motion, the SAC fails to bolster the defamation claim with allegations that a statement by an Anson spokesperson about this lawsuit

is defamatory *per se* and can be imputed to Defendants.  Mot. at 30–31.  None of Plaintiffs' responses suffice.  Opp. at 19–21.

First, Plaintiffs argue that the spokesperson's statement can be imputed to Kassam and Puri because "[i]t is plausible" that Kassam and Puri "authorized the spokesperson's comments."  Opp. at 19.  This argument is insufficient because "[d]irectors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done."  *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970).  The SAC makes no allegations that plausibly suggest that either Kassam or Puri authorized, directed, or participated in the spokesperson's statement.

Second, Plaintiffs' argument that the press statement does not qualify as nonactionable opinion ignores well-established case law that "[d]eprecatory statements regarding the merits of litigation are 'nothing more than the "predictable opinion" of one side to the lawsuit' and cannot be the basis for a defamation claim."  *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 156 (2013) (quoting *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1403 (1999)); *see also Kajeet, Inc. v. Qustodio, LLC*, 2019 WL 13149928, at *11 (C.D. Cal. Aug. 22, 2019) (press statements labeling the plaintiff as a "'threat to our industry'" and a "'patent troll'" who filed "'predatory patent infringement lawsuits'" are nonactionable opinion).

Plaintiffs argue that the press statement is a provably false statement of fact because "'[e]ither [Left] … manipulated the [Court] … or he did not.'"  Opp. at 20.  But what the SAC alleges is that the press statement characterized "the *Complaint* … [as] 'a desperate and extreme attempt to manipulate the legal system ahead of [Left's] criminal trial.'"  SAC ¶ 153.  This is but a hyperbolic statement reflecting Defendants' view of this lawsuit's lack of merit—nonactionable opinion to be expected in an adversarial setting.  *See Info. Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980) ("[b]usiness litigants frequently

disparage an opponent's suit as a meritless tactical device," and such statements are "highly unlikely to be understood by their audience as statements of fact rather than … predictable opinion").

Third, nowhere does the SAC allege what harm Plaintiffs suffered on account of Defendants' press statement. Yet Plaintiffs demand special damages for their defamation claim, SAC ¶ 204, requiring them to plead their request with specificity. The SAC "lack[s] any particularity, much less the precision required under California law" and Fed. R. Civ. P. 9(g). *Kar v. Lincoln Auto. Fin. Servs.*, 2024 WL 5274620, at *9 (C.D. Cal. Nov. 15, 2024) ("Under California law, 'special damages must be pled and proved precisely.'").

**C.     The Court May Strike Portions of Plaintiffs' Defamation Claim.**

The SAC pleads a single count for defamation and defamation *per se*, SAC ¶¶ 195–204, but that claim is based on several statements: Defendants' ███████ ████████████████ on three different occasions, two ██████████████████, and a post-lawsuit press statement. Under California law, each allegedly defamatory statement constitutes a separate and independent actionable wrong. *See, e.g.*, *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1262 (2017), *as modified* (Apr. 19, 2017) (separately analyzing two sets of allegedly defamatory statements); *Tayts v. Gacutan*, 2026 WL 1257737, at *4–9 (N.D. Cal. May 7, 2026) (separately analyzing four allegedly defamatory statements). Plaintiffs cannot sweep under a single count legally insufficient statements by bundling them with legally sufficient ones. Each statement must stand on its own. On this ground, the ██████████████ and post-lawsuit press statement, at the very least, fall short.

Plaintiffs contend that the Court may "'not dismiss portions of claims pursuant to Rule 12(b)(6).'" Opp. at 16. But courts in this Circuit have held otherwise. *See, e.g.*, *Guerrero v. Gates*, 442 F.3d 697, 706–07 (9th Cir. 2006) (recognizing propriety of dismissing half of claim based on two separate incidents); *Alvarez v. City of Santa Ana*, 802 F. Supp. 3d 1186, 1201 n.8 (C.D. Cal. 2025)

(dismissing part of claim based on estoppel); *Phelps v. Air-GP LLC*, 2025 WL 3190903, at \*2 n.2 (C.D. Cal. Oct. 6, 2025) (holding that a motion to dismiss a claim "'in part'" is not procedurally improper, and dismissing part of claim that relied on "insufficient factual and legal theor[y]").

Defendants' anti-SLAPP motion authorizes the same surgical approach. The California Supreme Court has held that an anti-SLAPP motion "may be used to attack parts of a count as pleaded," not just to dispose of entire causes of action. *Baral v. Schnitt*, 1 Cal. 5th 376, 393 (2016). A plaintiff cannot escape anti-SLAPP scrutiny by combining "allegations of protected and unprotected activity in a single cause of action." *Id.* at 392. The Court may strike statements that are nonactionable, even if part of the claim could survive.

## III.   THE BUSINESS DISPARAGEMENT CLAIM IS INCURABLE

### A.   The ▮▮▮▮▮▮▮ Did Not Derogate *Citron's* Business.

Plaintiffs assert that "Defendants' ▮▮▮▮▮▮▮ accuse Citron *by name* of orchestrating a fraudulent scheme." Opp. at 22. That is not what the SAC says. As pled in the SAC, Defendants' ▮▮▮▮▮▮ merely identified Citron as having received compensation. *See* SAC ¶ 163 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. No one denies that Citron participated in the invoice scheme. A statement concerning Citron's undisputed participation in and compensation through that scheme is neither false nor disparaging of Citron's business.

Plaintiffs' remaining reference is likewise insufficient. According to the SAC, "Defendants argued [in their ▮▮▮▮▮▮▮] that, with respect to ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 164. But this statement only rephrased what the SEC

alleged. *See* Mot. at 19. Nothing in that statement plausibly can be understood as Defendants accusing Citron of ███████████████████.

Plaintiffs conflate distinct concepts: (1) defamation and business disparagement, and (2) Left and Citron. First, Plaintiffs assert that the same statement can result in both personal aspersion and commercial disparagement. Opp. at 22. Second, they contend that Left and Citron's "reputations are so intertwined" that a statement about one necessarily implicates the other. *Id.*

Some "statements may effectuate both harms" of personal aspersion and commercial disparagement. *Polygram Recs., Inc. v. Superior Ct.*, 170 Cal. App. 3d 543, 550 (1985). But "courts have gone to some lengths" to separate the two. *Id.* California's defamation statutes are "concerned with statements that cast aspersions upon the plaintiff directly or by imputation fairly implied, not statements that, though disparaging of the quality of his business or goods, do not call into question the plaintiff's honesty, integrity or competence or reasonably imply any reprehensible personal characteristic." *Id.* A statement such as, "'████████████ ████████████████████████████████████████████████ ████████████'" may call into question Left's personal character. SAC ¶ 163. But it says nothing disparaging about the quality or character of Citron's business—a necessary element of a business disparagement claim.

As to Plaintiffs' conflation of Left and Citron, the Court already rejected this line of reasoning. *See* ECF No. 86 at 32 ("Citron is *not* a sole proprietorship but a limited liability company…. [and is thus] 'an entity distinct from its members.'"). With the Court having held that "Plaintiffs fail to support their argument in favor of some form of reverse veil-piercing," *id.*, Plaintiffs claim that they are "not [making] a veil-piercing argument." Opp. at 23 n.2. They contend that in the context of their inseparable relationship, any aspersion cast on Left is also a disparagement of Citron. But that *is* their rejected veil-piercing argument.

Even if it were not, Plaintiffs' cited cases, Opp. at 22–23, do not help them. *SDV/ACCI, Inc. v. AT & T Corp.*, 522 F.3d 955, 960 (9th Cir. 2008), was an appeal of summary judgment; there, the court ***rejected*** the plaintiffs' argument that statements about their company defamed them as individuals. In *Peterson v. Sanghi*, 2019 WL 1715487, at *9 (C.D. Cal. Feb. 14, 2019), the court agreed with the ***defendants*** "that the allegedly defamatory statements [about a culture of executive extravagance and fraudulent conduct] cannot be the basis for a trade libel claim because the statements did not concern the quality of services or products of Plaintiffs' business." *Gopher Media LLC v. Melone*, 2024 WL 5442826 (S.D. Cal. Apr. 17, 2024), is also inapposite. The statements at issue there concerned not only the owner, but also the quality and character of his business. *Id.* at *5 (false reviews alleged that a business sold burnt pizzas, smelled bad, caused food poisoning, and mistreated customers and pets). Nothing in the ███████████ derogates the character or quality of Citron's business.

Even if statements about Left may have resulted in collateral consequences (*i.e.*, SEC's enforcement action against Citron), that does not mean that Citron has a legal basis to sue for business disparagement. Plaintiffs' reliance on *Gerald Peters Gallery, Inc. v. Stremmel*, 815 F. App'x 138 (9th Cir. 2020), which concerns Nevada defamation law, is unjustified. Opp. at 23. In a Nevada defamation suit, it may "matter[] less 'who was aimed at' than 'who was hit.'" *Gerald Peters Gallery*, 815 F. App'x at 140. But under California law, a business disparagement claim requires the defendant to have aimed specifically at a business. *See Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 284 (2014) ("[D]isparagement requires a plaintiff to show a false or misleading statement that (1) ***specifically refers*** to the plaintiff's product or business and (2) ***clearly derogates*** that product or business.").

**B.    Plaintiffs' Causation and Special Damages Rebuttals Fail.**

Plaintiffs assert that the government's enforcement actions constituted the "vehicle" by which Defendants' ███████████ reached market participants,

causing them to sever ties with Plaintiffs.  Opp. at 24.  But the SAC does not allege that.  Nor would that be plausible, given that the ████████████ are not public.  The SAC alleges that broker-dealers ceased doing business with Plaintiffs because of the DOJ indictment and SEC complaint.  *See* SAC ¶¶ 183, 184, 187 (describing market actors responding to Plaintiffs being "named as defendants in [an] SEC enforcement action[] and DOJ indictment[] charging securities fraud").

Plaintiffs' republication argument fares no better.  Plaintiffs contend that Defendants should have foreseen that the government would republish statements made in their ████████████.  Opp. at 24.  That fails.  Liability for republication arises "when the repetition was reasonably foreseeable."  *Tayts*, 2026 WL 1257737, at *7–8 (dismissing claim as matter of law due to plaintiff's failure to "allege[] facts which plausibly support an inference … [the third party's] alleged republication was foreseeable.").  Even if Defendants' ████████████ asserted that Left came up with the idea of routing his payments through a third party, the government never "repeated" that in the indictments or elsewhere.  As noted above, the DOJ did not charge Left with ████████████, only with lying about his receipt of funds from Anson.  *See U.S. v. Left*, ECF No. 1 (Original Indictment).  Nor is it plausible to allege that one who speaks confidentially to the government could have reasonably expected the government to have publicly republished that statement.

Plaintiffs also fail to adequately plead special damages for a general business loss theory.  *See* Mot. at 22–24; Opp. at 25–26.  They claim that losses amount to "millions of dollars in probable earnings."  SAC ¶ 147; Opp. at 26.  That falls short of the Fed. R. Civ. P. 9(g) pleading standard for special damages.  *See Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998) ("[P]laintiff must specifically plead special damages in accordance with Fed. R. Civ. P. 9(g) in order to state a claim for product disparagement under California law.").

The SAC alleges profits from only a single trade from 2018, which is years before Defendants' statements.  *See* SAC ¶ 51; Opp. at 25.  That fails to meet

12

Plaintiffs' obligation to allege what their trading profits were "'for a substantial period preceding the publication.'" *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, 2014 WL 6892141, at *4 (C.D. Cal. Nov. 5, 2014). Plaintiffs cite *Lyzer v. Caruso Produce, Inc.* for the proposition that "Rule 9 does not require a plaintiff to plead a specific amount." 2018 WL 988109, at *5 (D. Or. Jan. 29, 2018), *report and recommendation adopted*, 2018 WL 988070 (D. Or. Feb. 20, 2018); Opp. at 27. But that court held that Rule 9 "does require a plaintiff to itemize any special damages sought with enough specificity to fulfill the Rule's purpose." *Lyzer*, 2018 WL 988109, at *5. Nowhere does the SAC do that.

Plaintiffs' purported loss of "millions of dollars" is untethered to any transaction. SAC ¶¶ 147, 187; Opp. at 26. That is not a "reasonably specific estimate[] of the damages allegedly stemming from the trade libel." *G.U.E. Tech, LLC v. Panasonic Avionics Corp.*, 2015 WL 12696203, at *5 (C.D. Cal. Sept. 15, 2015); Opp. at 27. Plaintiffs also failed to address their attribution problem—that is, how much of their alleged loss can be traced to their business disparagement claim, as opposed to their defamation claim. This alone dooms the claim. *See* Mot. at 24.

## IV.  PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS

### A.  <u>The SAC Does Not Plausibly Allege the Claim.</u>

The most glaring defect with the unjust enrichment claim is its failure to allege the first prima facie element of the claim—namely, how ***Plaintiffs*** "conferred a benefit" on Defendants by getting indicted. *See* Mot. at 25–26 ("Even if the Court assumes that, by giving false testimony to the government about Left, Defendants avoided indictment and the alleged harms to their business, that 'benefit' was 'conferred' by the government, not by Plaintiffs."). Plaintiffs had no response, thereby conceding the fatal flaw. That alone justifies granting the Motion.

Plaintiffs addressed instead whether a claim for quasi-contract affords them the opportunity to seek nonrestitutionary disgorgement as a remedy. *See* Opp. at 28–30. They argued that a claim for quasi-contract does not require them to allege

that they "conferred a benefit" on Defendants because "[t]hat is 'the law of restitution,' not unjust enrichment." *Id.* at 28. But there is no distinction between the law of restitution and unjust enrichment. Under California law, unjust enrichment "'is synonymous with [the remedy of] restitution.'" *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004).

Courts construe "unjust enrichment … as a quasi-contract claim seeking restitution.'" *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1056 (N.D. Cal. 2021). Accordingly, "a plaintiff must allege the same two elements: 'receipt of a benefit and unjust retention of the benefit at the expense of another.'" *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1094 (N.D. Cal. 2025).

The SAC contains no facts plausibly alleging how Plaintiffs conferred a benefit on Defendants and how Defendants' continued operation of their business was done at Plaintiffs' expense. Plaintiffs' Opposition asserts that Defendants "retained millions in fees and trading profits from a business they could continue operating only by lying to the ███████████ about Plaintiffs—shifting onto Plaintiffs charges that would otherwise have fallen on them." Opp. at 29. Even if that wild conclusion—missing from the pleading—were deemed a part of the SAC, it does not cure the SAC's failure to allege "a sufficient causal nexus between an alleged injury and the conduct of the accused party such that the accused party was unjustly enriched." *Krouch v. Wal-Mart Stores, Inc.*, 2014 WL 5463333, at *8 (N.D. Cal. Oct. 28, 2014). Any supposed connection between Defendants' continued operation of their business and Plaintiffs' expenses and losses from the government's enforcement actions is too attenuated to establish the causal nexus required to state a claim for unjust enrichment. Mot. at 24–28.

**B.    The SAC Does Not Plausibly Allege Facts Substantiating Law Enforcement's Decision-Making.**

Plaintiffs argue that the Court cannot resolve at the pleading stage whether Defendants would have faced greater law enforcement scrutiny "but for pinning the

blame on Plaintiffs" because that is a fact question.  Opp. at 30.  That is not correct. Before arguing that a motion to dismiss cannot dispose of a factual issue, a plaintiff must first "make [the] factual allegations to support the plausibility of … [their] theory."  *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 791 (N.D. Cal. 2021) (requiring plaintiff to first make plausible factual allegations before entertaining a suggestion that certain issues were "questions of fact").  Here, neither the SAC, nor the Opposition, points to any facts that substantiate how or why the DOJ and SEC decided to charge Left.

Plaintiffs also miss the mark by pointing to a snippet of the DOJ's briefing to Left's selective prosecution motion as reasoning for why the SAC's "allegation rests on more than 'information and belief.'"  Opp. at 30; SAC ¶ 130.  It is neither here nor there that the DOJ previously argued in Left's criminal case that "'Left was not similarly situated to other investors who engaged in similar' behavior because none of them 'directed others to create ▓▓▓▓▓▓▓▓' or 'made false statements to law enforcement.'"  Opp. at 30.  This is because, more recently, the DOJ made clear that "who 'directed' the ▓▓▓▓▓▓▓▓▓▓ … is … irrelevant," Ex. C at 13 n.4, and that it did not intend to present evidence at trial as to "who 'directed' [the ▓▓▓▓ ▓▓▓▓]."  *Id.* at 17.

Plaintiffs' contention that the DOJ's exercise of independent judgment is a presumption that applies only in the context of malicious prosecution claims at the summary judgment stage is of no consequence.  Opp. at 30.  The Opposition points to no new facts that plausibly suggest that Defendants' cooperation with law enforcement prevented prosecutors from exercising their independent judgment in deciding whether to charge and prosecute Left.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion.

DATED: June 3, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____

Robert M. Schwartz

Attorney for Defendants

Case No. 2:25-cv-10432−SPG-AYP

DEFENDANTS' REPLY ISO SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS SAC

## CERTIFICATE OF L.R. 11-6.2 COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 5,077 words, which complies with the word limit of L.R. 11-6.1.

DATED:  June 3, 2026

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By _____
      Robert M. Schwartz
   Attorney for Defendants