# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

ANDREW LEFT; CITRON CAPITAL LLC,

Plaintiffs,

v.

ANSON FUNDS MANAGEMENT LP; ANSON ADVISORS INC.; MOEZ KASSAM; and SUNNY PURI,

Defendants.

Case No. 2:25-cv-10432-SPG-AYP

**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANTS' MOTION TO (1) STRIKE SECOND AMENDED COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE (C.C.P. § 425.16), AND/OR (2) DISMISS PURSUANT TO RULE 12(b)(6) [ECF NO. 138]**

Before the Court is the Motion to (1) Strike Second Amended Complaint Pursuant to California's Anti-SLAPP Statute (C.C.P. § 425.16), and/or (2) Dismiss Pursuant to Rule 12(b)(6), (ECF No. 138 ("Motion")), filed by Defendants Anson Funds Management LP ("Anson Funds"), Anson Advisors, Inc. ("Anson Advisors" or, together with Ansun Funds, "Anson"), Moez Kassam ("Kassam"), and Sunny Puri ("Puri" or, together with Anson and Kassam, "Defendants").  The Court has read and considered the Motion and concluded that it is suitable for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the Motion as to the business disparagement and unjust enrichment claims and DENIES the Motion as to the defamation claim.

-1-

## I.   BACKGROUND

### A.   Previous Motion to Dismiss

On March 12, 2026, the Court issued an Order Granting, in Part, and Denying, in Part, Defendants' Motion to Strike the Complaint Pursuant to California's Anti-SLAPP Statute or, in the Alternative, Dismiss the Complaint Pursuant to Rule 12(b)(6). (ECF No. 86 ("MTD Order")).  In that Order, the Court concluded that Plaintiffs' claims arose from a protected act but denied the motion to strike because Plaintiffs had plausibly pleaded facts establishing the applicability of an exception to California's litigation privilege. (*Id.* at 18-22).  Next, the Court rejected Defendants' statute of limitations challenge as premature, concluding that the availability of tolling under California's discovery rule hinged on factual questions not evident on the face of the complaint. (*Id.* at 23-26).  On the merits of Plaintiffs' claims, the Court denied the motion to dismiss as to the defamation claim, finding that Plaintiffs had plausibly pleaded the requisite elements. (*Id.* at 27-35). However, the Court granted the motion as to the business disparagement claim, finding that Plaintiffs had not plausibly alleged any false or misleading statement derogating Left's business. (*Id.* at 31-32).  The Court permitted Plaintiffs leave to file an amended complaint "addressing the deficiencies identified herein." (*Id.* at 36).

On April 2, 2026, Plaintiffs filed their First Amended Complaint ("FAC"), adding an unjust enrichment claim and attempting to cure the deficiencies in the business disparagement claim. (ECF No. 91).  Defendants moved to dismiss and/or strike the FAC on April 16, 2026. (ECF No. 110).  On April 29, 2026, Plaintiffs timely filed their Second Amended Complaint ("SAC") as of right, mooting Defendants' pending motion. (ECF No. 124 ("SAC")).

### B.   The Second Amended Complaint

The core factual allegations in the SAC are largely unchanged from the initial complaint.  In September 2018, Left, a short seller engaged in the business of identifying corporate fraud and exposing the fraud to the marketplace, uncovered evidence that Namaste Technologies, Inc. ("Namaste") was engaged in fraud and "ripe for shorting."

(*Id.* ¶¶ 1, 2, 38).  While Left sought to short Namaste's stock, he could not do so at the volume he desired because Namaste was a Canadian company, and Left did not have a brokerage account that allowed him to hold Canadian shares.  (*Id.* ¶¶ 3, 36).  At around the same time, Kassam, a friend of Left and the Chairman of the Canadian hedge fund Anson, contacted Left and offered to short Namaste's stock on Plaintiffs' behalf.  (*Id.* ¶¶ 4, 35, 37-40).  In September and October 2018, Anson shorted Namaste's stock, and Left published a report exposing Namaste's fraud, tanking the stock and generating profits for Anson, some of which were owed to Plaintiffs.  (*Id.* ¶¶ 5, 49-51).

While Left did not care how Anson paid him, Anson was concerned about the appearance that it was improperly diverting profits from its investors and coordinating with a short seller to drive down Namaste's stock price, even as Anson was actively engaged in a bought deal offering for Namaste.  (*Id.* ¶¶ 7-8, 71, 73).  As such, Anson's executives, including Kassam and Puri, devised a scheme to mask the transaction, under which Anson would funnel the profits through a third-party research company called Falcon Research, Inc. ("Falcon Research"), which would relay the funds to Plaintiffs.  (*Id.* ¶ 9).  At Anson's direction, Falcon Research prepared false invoices for research services, referencing unrelated companies.  (*Id.* ¶¶ 60-66).  Plaintiffs allege that Defendants engaged in several other similar schemes with other short sellers, repeatedly arranging payments through third-party intermediaries to cover up conflicts of interest.  (*Id.* ¶¶ 82-92).

A few years later, Anson was investigated by the Securities and Exchange Commission ("SEC") for misleading its investors about its arrangements with Left and other short sellers.  (*Id.* ¶ 10).  Rather than confess to the SEC that they initiated the payment scheme, Defendants falsely testified that it was Left's idea to pay Plaintiffs through an intermediary using sham invoices.  (*Id.* ¶ 10).  Defendants later reaffirmed this false testimony in response to an SEC *Wells* notice,[1] asserting that it was Plaintiffs and not

---

[1] "A Wells Notice informs subjects of SEC investigations that the SEC staff has made 'a preliminary determination to recommend that the Commission file an action or institute a proceeding against them.'" *United States v. Feathers*, No. 14-CR-00531-LHK, 2016 WL

Anson who routed the payments through Falcon Research. (*Id.* ¶ 11). Plaintiffs allege that Defendants were aware that the SEC was focused on the payments to Left and therefore knew, or consciously disregarded, that their false statements would result in charges against Plaintiffs. (*Id.* ¶ 115).

In June 2024, Anson resolved the SEC investigation by paying a fine and submitting to an administrative cease-and-desist order, which repeated Defendants' testimony that Left initiated the payment scheme. (*Id.* ¶¶ 12, 124-25). Meanwhile, in July 2024, Plaintiffs were charged in a civil complaint by the SEC, and Left was indicted by the U.S. Department of Justice ("DOJ"). Both charging documents included allegations that Left initiated the payment scheme with Falcon Research. (*Id.* ¶ 13); *see United States v. Left*, No. 2:24-cr-00456-VAP (C.D. Cal.) (the "DOJ Action"); *SEC v. Left*, No. 2:24-cv-06311-SPG-AYP (C.D. Cal.) (the "SEC Action"). Plaintiffs allege that Defendants' purportedly false statements to the SEC are key to the DOJ and SEC cases. (SAC ¶ 14). Specifically, Plaintiffs point to comments from federal prosecutors emphasizing Left's "use of false invoices to conceal his compensation" and stating that Left was not similarly situated to other investors because none "of these individuals created or directed others to create fake invoices." (*Id.* ¶¶ 14, 130). Ultimately, however, the DOJ filed a superseding indictment, which withdrew the accusation that it was Left who concocted the false invoice scheme. (*Id.* at 6 n.2). Plaintiffs allege that Defendants' false statements have resulted in grave injuries by contributing to the SEC and DOJ cases, tarnishing Plaintiffs' reputations, necessitating expensive legal fees, and depriving Plaintiffs of funds they would otherwise have earned through full participation in the capital markets. (*Id.* ¶¶ 15, 145-48).

New to the SAC, Plaintiffs now allege that Defendants have engaged in further defamation through public remarks made after the filing of this action. On October 30, 2025, a spokesman for Anson told the press that "Kassam and Puri testified truthfully under oath," that Plaintiffs' claims were "absurd," and that Left was "willing to say anything to

---

7337518, at *9 (N.D. Cal. Dec. 19, 2016) (citing Securities and Exchange Commission Division of Enforcement, Enforcement Manual § 2.4).

try to escape accountability." (*Id.* ¶ 153). Plaintiffs allege that this statement amounts to a public accusation that Left lied to the Court with corrupt intent to influence the proceedings in Left's criminal matter. (*Id.* ¶ 154).

Additionally, the SAC includes several new factual allegations to support the business disparagement claim. Plaintiffs now allege that, although Citron is organized as an LLC, it is a single-person business that does not function as a separate legal entity. (*Id.* ¶¶ 157-59). Thus, Plaintiffs allege that statements impugning the manner in which Left conducts his business activities necessarily constitute statements about Citron's business. (*Id.* ¶ 162). Plaintiffs further allege that Defendants' *Wells* submissions specifically attributed the direction and use of the invoices to Citron itself. (*Id.* ¶¶ 163-64). Plaintiffs point to statements in the SEC and DOJ actions referring to actions by Citron as proof that a reasonable observer would have understood Defendants' comments to target Citron. (*Id.* ¶¶ 165-67). Plaintiffs allege that Defendants' statements derogated the integrity and legitimacy of Citron's business by portraying it as a vehicle for fraudulent invoices and deceptive practices. (*Id.* ¶ 171). Plaintiffs also allege that the statements harmed Citron's business by reducing its credibility, making market participants less willing to share information. (*Id.* ¶¶ 175-78). Further, the statements disrupted Citron's business relationships with U.S. broker-dealers, which terminated their relationships with Plaintiffs after the filing of the SEC and DOJ actions. (*Id.* ¶ 183).

Finally, Plaintiffs have added allegations that Defendants profited from their alleged misconduct. By falsely attributing the invoice scheme to Plaintiffs, Defendants avoided being charged with fraud-based violations that would have resulted in substantial penalties. (*Id.* ¶ 189). As a result of their misconduct, Defendants have been able to continue their business uninterrupted, earning tens or hundreds of millions of dollars in profits and fees. (*Id.* ¶¶ 190, 194).

The SAC asserts claims for defamation and defamation *per se*, business disparagement, and quasi-contract/unjust enrichment. (*Id.* at 41-45). As relief, Plaintiffs seek general damages, special damages, punitive damages, disgorgement, and recovery of

expenses incurred to mitigate the harm caused by Defendants' allegedly tortious conduct. (*Id.* at 45-46).

### C.   The Instant Motion

Defendants brought the instant Motion on May 13, 2026, seeking to strike the SAC pursuant to California's anti-SLAPP statute or, in the alternative, to dismiss Plaintiffs' claims for failure to state a claim. (Mot.). Plaintiffs filed an opposition to the Motion on May 27, 2026, (ECF No. 144 ("Opposition")), and Defendants replied in support of the Motion on June 3, 2026, (ECF No. 155 ("Reply")).

Defendants' Reply is accompanied by a request for judicial notice of three documents: (1) a copy of the verdict form in the DOJ Action, showing that Left was criminally convicted on June 1, 2026; (2) a copy of the superseding indictment filed on February 4, 2026, in the DOJ Action; and (3) a copy of the government's opposition to a motion *in limine* filed by Left in the DOJ Action. (ECF No. 155-5); *see* (ECF Nos. 155-2, 155-3, 155-4). As it did in the prior MTD Order, the Court will take judicial notice of these records as matters of public record not subject to reasonable dispute. However, the Court will take notice only of "the existence of those documents and of the representations having been made therein," not of "the veracity of the representations made in the documents." *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984 (E.D. Cal. 2012) (internal quotation marks and citation omitted).

## II.   LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted).

When ruling on a Rule 12(b)(6) motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice," nor must it accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (internal quotation marks and citation omitted). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## III. DISCUSSION

### A. Business Disparagement Claim

Defendants first argue that Plaintiffs have failed to cure the deficiencies in their business disparagement claim because they do not plausibly allege that Defendants' statements derogated Citron's business.[2] (Mot. at 17). Defendants argue that the

---

[2] Defendants briefly argue that the Court already determined in the MTD Order that Plaintiffs' claims arise from a protected act, such that the burden shifts to Plaintiffs under California's anti-SLAPP statute to demonstrate a probability of prevailing on this claim. (Mot. at 17). However, as the Court noted in its MTD Order, in federal court, where an anti-SLAPP motion "challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). Because Defendants challenge only the legal sufficiency of the claim, the Court will apply Rule 12(b)(6) rather than the burden-shifting approach applicable in California state court.

statements made in *Wells* submissions do not impugn the quality or character of Citron's services and merely rehash the SEC's allegations, rather than independently disparaging Citron. (*Id.* at 18-19). Defendants also argue that statements about Left do not automatically impugn Citron because Citron is a separate legal entity. (*Id.* at 20). Separately, Defendants challenge the sufficiency of Plaintiffs' allegations of causation and damages. (*Id.* at 21-24).

In their Opposition, Plaintiffs argue that they have cured the sole deficiency identified in the MTD Order by identifying statements made in the *Wells* submissions that directly impugn Citron. (Opp. at 22). Plaintiffs also contend that the reputations of Left and Citron are so intertwined that defamatory statements about Left necessarily impugn Citron's business.

The Court previously dismissed this claim for failure to allege any statements that disparaged Left's business, as opposed to statements defaming him personally. (MTD Order at 31). Because Plaintiffs failed to identify any statements targeting either Citron or any other business associated with Left, Plaintiffs did not meet the requirement to allege a "false or misleading statement that (1) specifically refers to the plaintiff's product or business and (2) clearly derogates that product or business." *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 59 Cal. 4th 277, 284 (2014). The Court rejected the argument that Citron was a "sole proprietorship," such that statements about Left are necessarily statements about Citron. (MTD Order at 32).

The additional allegations in the SAC do not change the Court's conclusion. Plaintiffs now allege that Defendants disparaged Plaintiffs' business in their *Wells* submissions with the following statements: (1) "Citron would be compensated for its research"; (2) "at Mr. Left's request, [Anson] satisfied its obligation to Citron through payments to another research firm (Falcon Research)"; and (3) with respect to "the alleged Namaste scheme," the SEC was "recasting the misstatement allegations against Citron as a scheme by Citron and AAI to have Citron make misstatements." (SAC ¶¶ 163-64). None of these statements is actionable as business disparagement. Plaintiffs do not challenge the

truth of the first statement and therefore have not identified a "false or misleading statement." *Hartford Cas. Ins. Co.*, 59 Cal. 4th at 284. The second statement alleges misconduct by Left, not Citron or his business, and the reference to Citron is again not alleged to be false or misleading. As to the third statement, as Defendants argue, Defendants were merely repeating the SEC's allegations and did not make an independent statement "clearly derogat[ing]" Plaintiffs' business. *Id.* The SAC does not otherwise identify any statements that could qualify as business disparagement. While Plaintiffs reiterate their argument that statements about Left also impugn Citron because their reputations are intertwined, the Court previously rejected that argument on the grounds that California law requires respecting the separate corporate personhood of limited liability companies. Despite the new allegations in the SAC, Plaintiffs have not shown that the Court should disregard Citron's status as "an entity distinct from its members." Cal. Corp. Code § 17701.04(a).

The Court further notes that defamation and business disparagement are distinct torts that "protect different interests and have entirely different origins in history." *Polygram Records, Inc. v. Superior Ct.*, 170 Cal. App. 3d 543, 548-49 (1985) (quoting Rest. (Second) of Torts § 623A cmt. g (1977)). Business disparagement targets statements that "disparag[e] the quality of [the plaintiff's] business or goods," while defamation targets statements that "call into question the plaintiff's honesty, integrity or competence or reasonably imply any reprehensible personal characteristic." *Id.* at 550; *see also Hartford Cas. Ins. Co.*, 59 Cal. 4th at 289 ("Whereas defamation, which includes libel and slander, concerns damage to the reputation of a person or business, disparagement concerns damage to the reputation of products, goods, or services."). While "the distinction between personal aspersion and commercial disparagement will sometimes be difficult to draw . . . courts have gone to some lengths" in maintaining the distinction. *Polygram Records, Inc.*, 170 Cal. App. 3d at 550. The alleged harm here is that "Citron's reputation [was] impugned through false statements about Left's honesty, integrity, or trading practices," making market participants less willing to engage with Plaintiffs. (SAC ¶ 177).

-9-

Because the statements are alleged to impugn Plaintiffs' reputation for honesty and integrity, rather than the quality of Plaintiffs' goods or services, defamation, not business disparagement, is the proper claim. Accordingly, the Court DISMISSES the business disparagement claim without further leave to amend.

### B.    Quasi-Contract/Unjust Enrichment Claim

Defendants next challenge Plaintiffs' unjust enrichment claim. First, Defendants argue that Plaintiffs have not alleged that they "conferred a benefit" on Defendants. (Mot. at 25). Even accepting Plaintiffs' allegation that, by giving false testimony, Defendants avoided indictment and resulting harms to their business, this "benefit" was conferred by the government, not by Plaintiffs. Defendants also argue that any connection between Defendants' continued business and Plaintiffs' expenses and losses from the government's enforcement actions is too remote and attenuated to state a claim. (*Id.* at 26). Second, Defendants argue that Plaintiffs' allegations of a causal connection are based solely on information and belief and are too conclusory to plausibly state a claim. (*Id.* at 27). Defendants contend that plausibly stating this claim would require factual allegations demonstrating that, but for Defendants' statements, Defendants would have been charged and Plaintiffs would not have been. (*Id.*).

In their Opposition, Plaintiffs argue that unjust enrichment does not require a showing that Plaintiffs conferred a benefit on Defendants. (Opp. at 28). Instead, they argue that, under a theory of disgorgement, the focus is on the wrongdoer's enrichment, regardless of whether the other party suffers actual damages. (*Id.* at 29). Plaintiffs assert that they have met this standard by pleading that Defendants retained profits from a business that they could continue operating only by lying to the SEC and DOJ about Plaintiffs, thereby shifting charges onto Plaintiffs that would otherwise have fallen on Defendants. (*Id.*). Plaintiffs argue that Defendants' causation challenges raise factual issues not appropriate for a motion to dismiss, and they claim that it is plausible that Plaintiffs would have faced fewer, and Defendants more severe, regulatory consequences but for their false statements. (*Id.* at 30).

In California, "there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010)). However, where a plaintiff asserts a claim for unjust enrichment, courts may "construe the cause of action as a quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Ray*, 223 Cal. App. 4th 221, 231 (2014). Since Plaintiffs label their claim "quasi-contract/unjust enrichment," the Court will so construe the claim. There are "several potential bases" for a quasi-contract action, including that "the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct." *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004). Under such circumstances, a defendant who "receives a benefit at another's expense" may be required to pay restitution. *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1662 (1992). However, "[t]he fact that one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it." *Id.* at 1663.

The Court agrees with Defendants that recovery on a theory of quasi-contract would be improper under the facts of this case. As Defendants argue, recovery on such a theory typically requires a showing that the claimant conferred a benefit onto the defendant. *See, e.g.*, *Cruz v. United States*, 219 F. Supp. 2d 1027, 1041 (N.D. Cal. 2002) ("[U]njust enrichment involves a benefit conferred on defendant by plaintiff."); *see also* 66 N. Gordon & B. Van Arsdale, Am. Jur. 2d Restitution & Implied Contracts § 12 (2d ed. 2026) ("An essential element in recovering under a theory of unjust enrichment is the receipt of a benefit by the defendant *from the plaintiff* that would be inequitable to retain without paying for its value." (emphasis added)). Here, there is no allegation of any "two-party transaction[]" between Plaintiffs and Defendants in which some form of "property or services . . . move[d] from the claimant to the defendant." Rest. (Third) of Restitution &

-11-

Unjust Enrichment, Part II, Ch. 6 Intro. Note (2011).  Instead, the only alleged "benefit" was conferred on Defendants by a third-party: the government.

The Restatement recognizes two exceptions to this general rule: (1) where "the defendant's enrichment at the claimant's expense results from the claimant's performance of an obligation owed by the defendant to someone else"; and (2) where "the defendant's enrichment at the claimant's expense results from the defendant's receipt of a benefit" from a third party, and "the benefit in question is one to which the claimant has a superior entitlement." *Id.*  This situation does not cleanly fit into either exception.  The first exception is plainly inapplicable, as Defendants are not alleged to have been enriched as the result of Plaintiffs' performance of an obligation to a third-party.  At first blush, the second exception poses a closer question.  Construed broadly, Plaintiffs can be understood to allege that, by making false claims about Plaintiffs, Defendants received a "benefit" by not being charged and ultimately profited by being allowed to continue their business.  Accepting Plaintiffs' allegation that Defendants would have been charged but for their false statements, Defendants' retention of any resulting profits might be considered unjust.  However, there is a layer of disconnect in Plaintiffs' claim, in that Plaintiffs raise a superior entitlement not as to the "benefit" that Defendants received—the lack of civil or criminal charges—but as to Defendants' profits.  Yet it is superior entitlement to the "benefit" that Plaintiffs must show to state a claim.  *See id.* ("If the benefit in question is one to which the claimant has a superior entitlement, the defendant is unjustly enriched.").  Plaintiffs cannot claim that they have a superior entitlement to the "benefit" that Defendants received because, at least under the facts of this case, the charges are not a zero-sum game.  The charges against Plaintiffs are broader than any potential charges against Defendants, and prosecutors did not face a decision to charge *either* Plaintiffs or Defendants.  Indeed, as Plaintiffs admit in the SAC, the DOJ ultimately dropped the allegations based on Defendants' statements, and Left was still convicted of the underlying charges. (SAC at 6 n.2).  Thus, this exception is inapplicable because Plaintiffs cannot allege a superior entitlement to the benefit that Defendants allegedly received.

The discussion above also raises a second issue with Plaintiffs' claim: unlike a typical claim for unjust enrichment, the alleged "benefit" here is not something that can be reduced to a monetary value. The word "benefit" in the unjust enrichment context is used broadly to denote "any form of advantage." Rest. (Third) of Restitution § 1 cmt. b; *see also Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996). However, restitution is "concerned only with profitable wrongs." Rest. (Third) of Restitution, Part II, Ch. 5, Topic 1 Intro. Note. As such, while restitution may be available as a remedy for certain tort claims, "the violations that may serve as the basis of a claim to recover unjust enrichment consist for the most part of wrongful interferences with rights to property." *Id.* The Restatement enumerates various tort claims for which restitution might be proper, including trespass, conversion, misappropriation of financial assets, interference with intellectual property, breaches of fiduciary duty, and other similar actions, none of which resemble the facts of this case. *Id.* §§ 40-43. While the Restatement does contain a final catchall provision, it makes clear that restitution for non-enumerated tort claims will be limited or denied "if the benefit derived from the interference cannot be adequately measured." *Id.* § 44. This is precisely the case here. There is no way to determine whether Defendants would have been charged but for these statements, nor is there any way to determine what those charges would have been, whether they would have been successful, and how they would have affected Defendants' profits. As such, the Court cannot assess what percentage, if any, of Defendants' profits were earned unjustly as the result of their alleged false statements.

The Court finds the D.C. Court of Appeals' decision in *Salem Media Group, Inc. v. Awan*, 301 A.3d 633 (D.C. 2023), to be instructive. There, the plaintiffs raised an unjust enrichment claim against a publishing company, seeking disgorgement of profits that the company earned by publishing defamatory statements about the plaintiffs. *Id.* at 658. The court first concluded that the claim failed "because the plaintiff never conferred a benefit on the defendant in the way that unjust enrichment claims typically require." *Id.* at 659. The court found that the plaintiffs' alleged injury was reputational, for which "damages are typically an adequate mechanism" for relief. *Id.* Restitution, meanwhile is intended to

remedy "a very different problem," involving "a voluntary transaction that unfairly enriched one party at the expense of the other." *Id.* While the court acknowledged that restitution may be a proper remedy for certain tortious harms, it found this remedy to be unavailable under these circumstances because the plaintiffs "identified nine statements in the 311-page book that they claim are defamatory," and "[a]llocating the defamatory statements to the profits earned relative the other statements and topics in the book would pose serious difficulties." *Id.* at 660 (citing Rest. (Third) of Restitution § 44).

Here, allocating damages would be even more difficult than in *Salem Media Group* because of the attenuation between Defendants' alleged defamatory conduct and any resulting profits. Neither party has identified any cases even remotely similar to this one in which a party successfully stated such a claim. In the Court's view, this is because this situation is not of the type that restitution is intended to address. Accordingly, the Court GRANTS the Motion and DISMISSES the unjust enrichment claim, without leave to amend.

## C.     Defamation Claim

Lastly, Defendants renew their challenge to the defamation claim, arguing that Plaintiffs have failed to plausibly allege causation. (Mot. at 28). Citing *Askins v. U.S. Department of Homeland Security*, 899 F.3d 1035 (9th Cir. 2018), Defendants argue that, because the SAC is a new complaint, Defendants are entitled to challenge the claims raised therein without seeking reconsideration or violating Rule 12(g)(2) or the law of the case doctrine. (*Id.* at 14-17). Defendants also challenge the allegations of post-suit defamation, arguing that the statement cannot be imputed to Kassam and Puri, that the SAC provides insufficient detail about the statement, that the statement is non-actionable opinion, that Plaintiffs have not alleged malice, and that Plaintiffs have no alleged special damages.

Because the Court previously considered, and rejected, Defendants' 12(b)(6) challenges to the defamation claim, the Court will not consider the merits of Defendants' renewed causation challenge. Under Rule 12(g), "[a] party is not precluded from making a second motion [to dismiss] based on a defense that he or she did not have reasonable

-14-

notice of at the time that party first filed a motion to dismiss or on a defense that became available only after a motion had been made under Rule 12." 5C C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1388 (3d ed. 2026). However, "[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading." *Id.* Here, Defendants' causation challenges were available at the time of its earlier motion to dismiss. Indeed, as Plaintiffs point out, several of Defendants' arguments are nearly identical to those raised in the prior briefing. *See* (Opp. at 11). While Plaintiffs have added several factual allegations to the SAC, these do not "reopen[]" the claim to challenges that could have been raised or that were previously considered and rejected. *See Sivakova v. Am. Honda Motor Co., Inc.*, No. CV 24-03354-MWF (MAAx), 2025 WL 2324632, at *4 (C.D. Cal. July 17, 2025) (collecting cases for the proposition that a limited amendment does not permit a defendant to "either assert for the first time or reassert arguments against all material in the amended complaint").

Askins does not hold otherwise. There, the district court dismissed the plaintiffs' amended complaint as barred by the law of the case doctrine because the plaintiffs "brought 'the identical issue,' but failed to 'identify any clear error, intervening change in law, new evidence, changed circumstances, or manifest injustice resulting from the previous decision.'" 899 F.3d at 1041. On appeal, the Ninth Circuit reversed because "[t]he law of the case doctrine does not . . . bar a court from reconsidering its own orders before judgment is entered or the court is otherwise divested of jurisdiction over the order." *Id.* at 1042. The facts of *Askins* are the opposite of this case; the district court initially granted a motion to dismiss and later refused to consider the amended complaint because it raised substantially the same claims as the previous order. Here, the Court previously denied Defendants' motion to dismiss as to the defamation claim, and Defendants now seek to raise the same challenges to the same claim in the SAC. Even if Rule 12(g) did not apply here, the Ninth Circuit explained that "[i]f the district court determines the amended complaint is substantially the same as the initial complaint, the district court is free to

follow the same reasoning and hold that the amended claims suffer from the same legal insufficiencies." *Id.* at 1043.  Here, Plaintiffs' defamation claim is substantially the same as the one that the Court previously found stated a claim.  Therefore, the Court will follow the same reasoning articulated in its MTD Order and find that Plaintiffs have stated a defamation claim.

As to the post-suit defamation allegations, because these allegations were not included in the initial complaint, Rule 12(g) does not bar Defendants' arguments.  However, because the Court has already found that Plaintiffs have stated a viable defamation claim, the Court declines to decide at this time whether the additional allegations would also state a viable claim.  *See, e.g.*, *Westways World Travel v. AMR Corp.*, 182 F. Supp. 2d 952, 957 (C.D. Cal. 2001) ("Where a plaintiff within a single claim for relief sets forth several legal theories upon which he claims relief is warranted, it is not for the district court to assess the [viability] of each theory at the pleading stage where plaintiff has made sufficient allegations to support one of the theories."); *Paniagua v. Cnty. of Orange*, No. SACV 22-00767-CJC(DFMx), 2022 WL 19793901, at *2 (C.D. Cal. May 4, 2022) ("The Court's job when evaluating a motion to dismiss is to decide whether the plaintiff has stated a cause of action under any theory even if some theories might be deficiently pled and could not alone support the cause of action."); *see also Bernheim v. Litt*, 79 F.3d 318, 326 (2d Cir. 1996) ("[I]t would be burdensome to have the district court 'prune' a complaint at the pleading stage by making a determination with regard to each allegation within a cause of action that is legally cognizable when viewed in its totality.").

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS, in part, and DENIES, in part, the Motion as follows:

1.   The Motion is GRANTED as to the business disparagement and unjust enrichment claims, and these claims are DISMISSED without leave to amend; and

2.   The Motion is DENIED as to the defamation claim.

The SAC, as modified by this Order, shall be the operative complaint. Within fourteen (14) days of the issuance of this Order, Defendants shall file their answer to the SAC.

**IT IS SO ORDERED.**

DATED: July 27, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE